UNITED STATES BANKRUPTCY COURT FOR THE
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| IN RE: | § | BANKRUPTCY CASE NO. |
| | § | |
| SUPPLEMENTSPOT, LLC, | § | 06-35903 |
| DEBTOR | § | Chapter 11 |
| | § | |
| YOUNG AGAIN PRODUCTS, INC. | § | |
| | § | ADVERSARY NO. 07-3019 |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| SUPPLEMENT SPOT, LLC, | § | |
| MARCELLA ORTEGA, and | § | |
| JOHN ACORD a/k/a JOHN LIVINGSTON | § | |
| | § | |
| Defendants. | § | |

**PLAINIFF YOUNG AGAIN PRODCUTS INC.'S
PROPOSED FINDINGS OF FACT, CONCLUSIONS OF LAW
AND MEMORANDUM OF CITATIONS IN SUPPORT**

TO THE HONORABLE JEFF BOHM, UNITED STATES BANKRUPTCY JUDGE:

Plaintiff Young Again Products, Inc. ("YAP"), by its attorneys, hereby files its Proposed Findings of Fact, Conclusions of Law and Memorandum of Citations in Support as follows:

### I. Proposed Findings of Fact

1. The Plaintiff, YOUNG AGAIN PRODUCTS, INC. ("YAP"), has been in the business of selling nutritional supplements and health related products bearing the YOUNG AGAIN trademark since 1992.

2. The Debtor, SUPPLEMENT SPOT, LLC, formerly known as YOUNG AGAIN NUTRITION, LLC, is a limited liability company engaged in a multi-million dollar operation selling nutritional supplements and health related products over the internet.

3. In 2002, Defendant Marcella Ortega organized the Debtor as the successor to a sole proprietorship she had owned and operated since 1996. Marcella Ortega is the

1

mother Defendant John Acord (aka John Livingston), a convicted felon. Mr. Acord is the manager of the Debtor, and until a Chapter 11 Trustee was appointed in March, 2007, Mr. Acord controlled the operations of the Debtor alongside his mother since his release from prison in 1999.[1]

4. Two years and eight months prior to Debtor's filing for bankruptcy protection, on March 5, 2004, Young Again Products, Inc. ("YAP") brought legal claims against the Debtor in the United States District Court for the District of Utah pursuant to 15 U.S.C. § 1125(a)(1) (false designation of origin), 15 U.S.C. § 1125(c)(1) (dilution), and common law unfair competition under both Utah and Maryland law, all in connection with the Debtor's unlawful use of our trademark "Young Again".

5. In late January, 2006, the case went to trial on the liability issues (damages would be determined at a later trial) before the Honorable Paul G. Cassell, a federal judge in the United States District Court for the District of Utah, and the parties submitted extensive post-trial briefs (both Opening Briefs and Response Briefs) in the weeks thereafter. On September 29, 2006, the Court issued its Findings of Facts and Conclusions of Law in a 63 page Opinion.

6. In its Opinion, the Court concluded that Plaintiff prevailed on its false designation of origin claim against the Debtor under 15 U.S.C. § 1125(a)(1), prevailed on its dilution claim against the Debtor under 15 U.S.C. § 1125(c)(1), and prevailed on its common law unfair competition claims against the Debtor under the law of both Maryland and Utah. At the same time, the Court denied the Debtor's claim of ownership of the Young Again mark as "<u>without merit</u>." Accordingly, the Court concluded that Yap "<u>owns and has the exclusive right to use the trademark 'Young Again' and that . . . Nutrition [the Debtor] infringed the trademark</u>.

7. Based on its conclusions of law, the Utah Court ordered the parties to appear before the Court on November 8, 2006, for a status conference to address proposed orders of Declaratory and Injunctive Relief and to set a date to determine monetary damages at a bench trial before February 15, 2007.

8. Just three business days before the November 8 hearing, the Debtor filed its Suggestion of Bankruptcy under Chapter 11. Both Ms. Ortega and Mr. Acord were actively involved in the preparation of the Voluntary Petition for Bankruptcy and attached Schedules, and Ms. Ortega signed the Petition and the Declaration concerning the attached Schedules under penalty of perjury.

9. Because of the bankruptcy petition filed by the Debtor, no Order of Declaratory and Injunctive Relief was issued against the Debtor during the November 8, 2006

---

[1] In 1990, Mr. Acord set up and controlled the California-chartered Business and Taxpayers Coalition for Affordable Housing. Through that business, Mr. Acord defrauded investors out of $944,000, for which he was charged with securities fraud in 1995 and pled guilty. He was sentenced to 48 months in federal prison, for which he served about 39 months, until early 1999. After his release, Mr. Accord took over control of operations of the Debtor.

hearing. Rather, the Utah Court stayed the entire proceedings in accordance with the automatic stay provision of the U.S. Bankruptcy Code.

10. Because the Utah Court had previously bifurcated liability and damages, and had yet to set a trial date for the damage phase, the question of whether and to what extent the Debtor would owe the Plaintiff any money damages was far from settled at the time of the Defendants' bankruptcy filing.

11. On November 20, 2006, the Debtor filed its Statement of Financial Affairs. Both Ms. Ortega and Mr. Acord assisted in the preparation of the Statement of Financial Affairs, which was signed under penalty of perjury by Ms. Ortega.

12. On December 11, 2006, the Debtor filed Amended Schedules and an Amended Statement of Financial Affairs, both of which were signed by Ms. Ortega under penalty of perjury.

13. On its original Bankruptcy Schedules, the Debtor listed assets totaling $304,578.63, and liquidated unsecured claims totaling $330,131.45. As a result, the Debtor was claiming insolvency by $25,552.82. On its amended Bankruptcy Schedules filed five weeks later, the Debtor adjusted its unsecured claims by $139,322 to $469,453.52, a 42% increase in liabilities. As a result, the Debtor was claiming that its liabilities exceeded its assets by 40%.

14. Despite the declarations in the original and amended bankruptcy schedules, the Debtor's Monthly Operating Report (MOR) for November (prepared by the Debtor's CPA) reveals that at the time of the Debtor's bankruptcy filing, its assets exceeded its liabilities by more than 5 to 1. The Debtor also had $330,000 in cash receipts in undisclosed accounts. In fact, the debtor was averaging about $345,000 a month in revenues as reflected in its own records.

15. At the time of the bankruptcy filing, 90% of the monthly sales revenues of the Debtor were deposited in the Debtor's general operating account. The Defendants failed to disclose the account on either the original or amended Schedules.

16. At the time of the bankruptcy filing, most of the Debtor's remaining monthly sales revenues were deposited in the Debtor's online PayPal account. The account reflected revenues of $30,180 in the month preceding the bankruptcy. The Defendants failed to disclose the account on either the original or amended Schedules.

17. At the time of the bankruptcy filing, the Debtor also had another account which was not disclosed on either the original or amended Schedules.

18. Within 6 months preceding the bankruptcy filing, the Defendants had withdrawn approximately $70,000 from the undisclosed accounts and deposited the monies in a foreign account. The Defendants had set up a foreign Irish company called Young Again, LTD under the ownership of Defendant Marcella Ortega and her son Sean Ortega

3

and opened a business account at the Allied Irish Bank.  The Defendants bank account application designated the Debtor's email and the Debtor's website in the primary contact information.  The Defendants failed to disclose the account on either the original or amended Schedules and failed to disclose the transfer of funds on either the original or amended Statement of Financial Affairs.

19.     Within the 30 days immediately preceding the bankruptcy filing, the Defendants made multiple funds transfers totaling $44,000 from the Debtor's undisclosed account into the private account of Marcella Ortega.  The Defendants failed to disclose these transfers on either the original or amended Statement of Financial Affairs.

20.     On its original Statement of Financial Affairs, signed under penalty of perjury by Marcella Ortega, the Debtor declared that its owner and President Marcella Ortega "did not take regular paychecks or even draws, but paid her limited expenses from the business account."

21.     Within the year preceding the bankruptcy filing, Defendant Ortega took distributions from the Debtor in excess of $425,000.   The Defendants failed to disclose any of these distributions on the original or amended Statement of Financial Affairs.

22.     As of the date of the bankruptcy filing, the Debtor had a $168,278 receivable due from insiders.  The Defendants failed to disclose these loans receivable on the original or amended Schedules or Statement of Financial Affairs.

23.     As of the date of the bankruptcy filing, the Debtor had an outstanding balance owed to Intetics, its website technology service provider, of $15,079.75.  Instead of listing the pre-petition debt on the Debtor's Schedules and listing Intetics as an unsecured creditor, Defendant Acord instructed Intetics to shift the outstanding invoices and post-date them after November 3, 2006 so the Debtor would be able to pay down the arrears as a post-petition debt.

24.     At the time of the bankruptcy filing, the Debtor had an outstanding balance owed to Natural Labs of approximately $35,000.  Instead of listing this pre-petition debt on the Debtor's Schedules, the Defendants omitted Natural Labs as an unsecured creditor and simply paid the pre-petition debts from post-petition revenues.  Further, just prior to the filing, the Defendants paid off most of the debts of companies with which they wanted to continue to do business and also paid off substantial credit card balances.    The Defendants, however, failed to disclose any of these payments in their original or amended Statement of Financial Affairs.

25.     At the time of the bankruptcy, the Debtor's most valuable assets were its full-service interactive on-line retail and wholesale websites, including copyrighted website content (product lines, product advertising and descriptions, and extensive research library) and customized programming, which utilized cutting edge technology, software and languages such as Yahoo Store RTML, mySQL 3.2, Linux Red Hat 9, Perl, PHP, XML, Flash, and eCommerce.  Nonetheless, the Defendants misrepresented the value of

Debtor's websites at $0 in the Debtor's original and amended Schedules and failed to list the copyrights.

26.     At the time of the bankruptcy, the Debtor maintained an extensive customer list, which Defendant Acord admitted is one of the Debtor's most valued assets. Nonetheless, the Defendant's misrepresented the value of the customer lists at $0 in the Debtor's original and amended Schedules.

27.     In preparation for the November 8 hearing in Utah, Plaintiff submitted its Proposed Order of Declaratory and Injunctive Relief based on the Court's 63 page Opinion, requesting the Utah Court to transfer from the Debtor to the Plaintiff the URLs (internet domain names) youngagain.com, youngagainnutrients.com, youngagain.info, and youngagain2000.com. Just one week prior to filing the bankruptcy, on October 27, 2006, the Debtor filed objections to Products' Proposed Order of Declaratory and Injunctive Relief, in which it asserted that "the Young Again URLs have significant economic value in and of themselves," that "YAN should not be precluded from *selling* the Young Again URLs to a third party", that "YAN or its successors could put the Young Again URLs to a non-infringing use," and that Nutrition has an "interest in maintaining *its* valuable property."

28.     In fact, since the federal litigation in Utah began, the Debtor has been claiming legal ownership and control of the Young Again URLs.

29.     Network Solutions documents reveal that the youngagain.com URL was registered for a "business" purpose in November 1996 to the predecessor of the Debtor.

30.     Further, the Debtor's own records reveal ownership and control of the URL youngagain.com.

31.     The email address used for the registration of the youngagain.com URL is kim@wt.net.

32.     The Debtor also judicially admitted ownership of the Young Again URL to the United States District Court in Utah.

33.     John Acord confirmed to the United States District Court in Utah that the Debtor owned the URLs youngagain.info and youngagainnutrients.com.

34.     In fact, Network solutions documents show that the Debtor is the registrant of youngagainnutrients.com and youngagain2000.com.

35.     Despite all of the foregoing, the Defendants <u>failed</u> to list any of these highly valuable URLs in its November 3, 2006 Bankruptcy Schedules or its December 11, 2006 amended Schedules.

36. Instead of including the Young Again URLs and the Debtor's websites as part of the bankruptcy estate, the Defendants were transferring ownership of the Young Again URLs out of the country to the newly created foreign company Young Again, LTD in Ireland, and moving the websites to servers outside the U.S.

37. In an effort to stop the transfer of the Young Again URLs outside the country, on December 3, 2006, Plaintiff filed an expedited complaint for a temporary restraining order to immediately prevent and/or void any efforts by the Defendants to transfer the URL's youngagain.com, youngagain.info, youngagain2000.com, and youngagainnutrients.com to any third parties. On December 4, 2006, during the hearing on the temporary restraining order ("TRO"), Debtor agreed to the terms of a TRO restraining the "Debtor and its owners, *managers*, agents, and *employees*," among others, from "*transferring*, selling, canceling, or otherwise *taking any action* relating to the Young Again URLs youngagain.com, youngagain.info, youngagainnutrients.com, youngagain2000.com, and any other Young Again URLs." With consent of the Debtor, the language of the TRO was read into the hearing record by Plaintiff's counsel on December 4, 2006, and the corresponding Temporary Restraining Order was issued by the Court the following day.

38. Notwithstanding the TRO, on December 5, 2006, Defendants transferred the youngagain2000.com URL from Young Again Nutrients 2000 to Young Again, LTD. A similar transfer occurred with the youngagain.info URL within the same time period.

39. In an effort to shift responsibility elsewhere, John Acord sent an email to Malcolm Tuckey on December 6, 2006 (with a copy to his attorneys), insisting that Defendant Acord has no control over the URL. Only two weeks prior, on November 23, 2006, Mr. Acord wrote to Mr. Tuckey: "I still have to change the registrar and ownership of youngagain.info."

40. Allthewhile, Defendants were negotiating an Assignment and Royalty agreement with Robert Gubbi of the Netherlands to transfer all of the Young Again URLs and the Young Again business to Mr. Gubbi in return for $50,000 Euros and a 20 year royalty agreement at 7% of gross revenues.

41. To ensure that the URLs would not be included in the bankruptcy estate, the Defendants insisted in two pleadings filed in the United States Bankruptcy Court that the Debtor "does not own any URLs and has never owned any URLs."

42. Accordingly, the Bankruptcy Court found the Debtor's pleadings to constitute judicial admissions, and based on those admissions, on December 21, 2006, this Court expressly found that the Debtor does not own any URLs and informed Plaintiff's counsel that if the Debtor is ever in any forum saying that it owns the URLs, Plaintiff's counsel can take this judicial finding, stand up and say, "Your Honor, fraud. They speak out of both sides of their mouth."

43. Notwithstanding the Defendants judicial admission in the bankruptcy court and the Bankruptcy Court's express finding that the Debtor does not own any URLs, the Debtor filed a brief in the United States District Court for the District of Utah on January 5, 2007, <u>just two weeks later</u>, claiming that the Debtor maintains beneficial ownership interests in the URLs youngagain.com, youngagainnutrients.com, youngagain2000.com, and youngagain.info.

44. Further, under the protection of bankruptcy and the automatic stay, the Defendants continued unabated to use the Young Again trademark in Debtor's business operations, on its websites, on its products, in its URLs, and throughout its advertising campaigns. In fact, over a month after the bankruptcy filing and 2 months after the Utah Court's decision, Defendants continued to publish to the world that they still owned, and held exclusive rights, to the trademark Young Again.

45. As a result of the use of the Young Again trademark on all of its advertising, marketing, and product lines, the Debtor generated over $585,000 in revenues in November and December, 2006.

46. Allthewhile, the Defendants had prepared and filed a liquidating plan of reorganization (only 5 weeks after the filing of its Voluntary Petition and before the initial Meeting of Creditors), in which the Debtor sought to sell all of its assets to its sole owner Defendant Ortega in exchange for a 3-year promissory note in the principal amount of $335,078 (about the same amount of the Debtor's alleged liquidated liabilities, which would help to ensure sufficient votes for confirmation). Confirmation of that plan would have resulted in a resolution with prejudice of all legal claims by the Plaintiff, which was without voting rights because its claims were unliquidated. Accordingly, if the Defendants could get the plan approved quickly, the Defendants would have been able to emerge from the Bankruptcy Court with all of its present business assets (disclosed and undisclosed), the Young Again operation and URLs safely overseas beyond the reach of Plaintiff or the U.S. Courts, and a complete discharge of all claims against it, including a resolution <u>with prejudice</u>, of all pending legal proceedings by Plaintiff.

47. No longer able to secure the rights to the Young Again trademark in the Utah federal court because of bankruptcy protections and the automatic stay, Plaintiff had no option but to incur over $153,000 in fees and costs to stop the Debtor from transferring the Young Again URLs and the Young Again business overseas beyond the reach of the U.S. courts, stop the Debtor from their continued unlawful use of its trademark, and protect its own property in the bankruptcy proceeding. Had Plaintiff not incurred these costs and expenses, the Debtor would have succeeded in moving the URLs and Young Again business overseas beyond the jurisdiction of the U.S. courts and Plaintiff would have lost the Young Again URLs and its exclusive use of its trademark forever.

48. Defendant's own documents and testimony evidence their intention to use the bankruptcy process and its protections to enable them to continue to infringe on Plaintiff's famous trademark and to buy themselves the time to move the Young Again

7

URLs and the Young Again brand overseas beyond the reach of the U.S. Courts and the Plaintiff.

## II.  Conclusions of Law and Memorandum of Citations in Support

1.  This Court has core jurisdiction to adjudicate state law causes of action (sounding in fraud, breach of fiduciary duty, and/or intentional misrepresentation) resulting from alleged wrongdoing in connection with bankruptcy proceedings and the administration of the bankruptcy estate.  The fact that Plaintiff's claims against Defendants Acord and Ortega turn on state law does not prevent them from involving core jurisdiction.

   *Citation:  Southmark Corp. v. Coopers & Lybrand,* 163 F.3d 925 (5th Cir. 1999); 28 U.S.C. § 157(b)(3).

2.  This court, through a core proceeding subject to adjudication in the bankruptcy court, has the ability to police the fiduciaries, including Mr. Acord and Ms. Ortega, who were responsible for managing the debtor's estate in the best interest of the creditors.

   *Citation*: *In re Coral Petroleum Inc.*, 249 B.R. 721, 726 (Bankr. S.D. Tex. 2000)

3.  Under Texas law, the general rule is that corporate officer or agent is always primarily liable for his own torts, even though principal is also vicariously liable. Here, Marcella Ortega and John Acord are liable in tort to YAP for their actions in connection with the bankruptcy proceedings.

   *Citation:  Dixon v. State Farm Mut. Auto. Ins. Cos*., 433 F.Supp.2d 5 (N.D. Tex.Dallas.Div., 2006).

4.  An agent, principal, owner, and/or employee of a corporation who commits a fraud can be held personally liable for his actions under Texas law. Here, both Acord and Ortega as principal and/or employee(s) of the Debtor are held personally liable for their action in connection with the bankruptcy filing.

   *Citation:*  11 U.S.C.A. § 523(a)(2)(B); V.A.T.S. Bus.Corp.Act, art. 2.21(A)(2); *Ennis v. Loiseau*, 164 S.W.3d 698 Tex.App.Austin,2005 (As a general rule, corporate agents are individually liable for fraudulent or tortious acts committed while in the service of their corporation); *Centurion Planning Corp., Inc. v. Seabrook Venture II,* 176 S.W.3d 498 Tex.App.Houston.1.Dist.,2004 (A corporate agent is personally liable for his own fraudulent or tortious acts). *Gore v. Scotland Golf, Inc.,* 136 S.W.3d 26 Tex.App.San.Antonio,2003 (A corporate agent can be held individually liable for fraudulent statements or knowing misrepresentations even when they are made in the capacity of a representative of the corporation . . . the corporate veil is not required to be

pierced.); *Kingston v. Helm* 82 S.W.3d 755, 758 -759 (Tex.App.-Corpus Christi,2002); *Leyendecker & Assocs., Inc. v. Wechter,* 683 S.W.2d 369, 375 (Tex.1984) ("[a] corporation's employee is personally liable for tortious acts which he directs or participates in during his employment.").

5. The Defendants John Acord and Marcella Ortega knowingly and fraudulently put the Debtor into bankruptcy and used the protections of the Bankruptcy Code as debtors in possession in order to continue to unlawfully trade on Plaintiff's property, obtain the benefits of that trade, and transfer the property beyond the reach of the U.S. courts and the Plaintiff. These actions proximately caused YAP damages in the measure of defendants' sales as well as attorneys' fees and costs in connection with YAP's required response to and actions in connection with the fraudulent bankruptcy of the Debtor.

6. Defendants John Acord and Marcella Ortega: 1) made material misrepresentations; (2) that were false; (3) that, when they made them, they knew they were false or made them recklessly without any knowledge of their truth; (4) that they made them with the intention that they should be acted upon by YAP; (5) that YAP was required by law to act upon the misrepresentations and cease all action to secure its property; and (6) that YAP thereby suffered injury.

*Citation: American Tobacco Co. v. Grinnell,* 951 S.W.2d 420, 436 (Tex.1997).

7. Defendants John Acord and Marcella Ortega failed to disclose and falsely concealed assets and legal and/or equitable interests in property in the Debtors bankruptcy schedules.

8. A failure to disclose information constitutes fraud when there is a duty to disclose the information. As controlling management of the Debtor and as debtors in possession, John Acord and Marcella Ortega had a duty to properly disclose assets and information on the Debtor's bankruptcy schedules.

*Citation:  Bradford v. Vento,* 48 S.W.3d 749, 756 (Tex.2001) (quoting *Ins. Co. of N. Am. v. Morris,* 981 S.W.2d 667, 674 (Tex.1998)); *see Ralston Purina Co. v. McKendrick,* 850 S.W.2d 629, 633-36 (Tex.App.-San Antonio 1993, writ denied).

9. Defendants John Acord and Marcella Ortega concealed, transferred and attempted to transfer property required to be listed as assets of the estate with the intent to avoid the decision of the United States District Court in Utah's and to defraud YAP of its property including its trademark "Young Again".

10. Defendants John Acord and Marcella Ortega knowing and fraudulently concealed property required to be listed as assets on the Debtor's Schedules and/or the value of that property including, the Young Again URL's, web sites and client lists.

*Citation*: 18 U.S.C.§ 152(1)

11. Defendants Acord and Ortega knowingly made and/or caused to be made false oaths and/or declarations on the bankruptcy schedules to hide interests in assets.

*Citation:* 18 U.S.C.§ 152(2)

12. Defendants John Acord and Marcella Ortega acting independently and in concert together had access to property of the estate by virtue of their status as a Debtor in Possession and controlling management of the Debtor in Possession and knowingly and fraudulently appropriated, spent and transferred for their own use property required to be listed under the estate of the debtor including funds of the estate, the Young Again URL's, web sites and customer lists.

*Citation:* 18 U.S.C.§ 152(7).

13. Defendants John Acord and Marcella Ortega devised and/or intended to devise a scheme or artifice to defraud YAP and for the purpose of executing or concealing such a scheme or artifice filed a petition under title 11, utilized the automatic stay provisions to facilitate continued illegal use of YAP's trademark and to transfer property outside of the jurisdiction of the United States and this Court and beyond the reach of YAP.

*Citation:* 18 U.S.C.§ 157.

14. Defendants John Acord and Marcella Ortega acted in concert to commit the fraudulent acts and omissions referenced above.

*Citation: Massey v. Armco Steel Co.*, 652 S.W.2d 932, 934 (Tex.1983).

15. Whether the violation of a criminal statute may be also the basis of civil liability in a given case, in the absence of an express statutory provision therefore, depends upon whether a purpose of the statute is to set up a standard of conduct in order to give protection to the interests of the class of persons to which the injured party belongs. Here, the criminal statutes addressing bankruptcy fraud may be the basis of civil liability

10

against Marcella Ortega and John Acord as the standards of conduct are proscribed to protect the interests to the class of persons to which YAP belongs.

*Citation*: *Mundy v. Pirie-Slaughter Motor Co*., 146 Tex. 314, 206 S.W.2d 587, 590.

16. YAP, as a creditor and as an adverse party in the Utah action, is a member of a class of persons whom Marcella Ortega and John Acord knew would be required to rely on the bankruptcy filing pursuant to the automatic stay provisions of the bankruptcy law.

*Citation:* Rest. Torts 2d §§531, 533

17. Where a specific requirement is made by statute and an absolute duty thereby imposed, no inquiry is to be made whether the defendant acted reasonably. In such a situation, the obligation and requirement has been fixed and established by law, and the conduct of any person which is violative of such specific statutory requirement is illegal, and, if it proximately results in injury to one to whom a legal duty is owed, the transgressor is liable for the resulting damage. Here, the bankruptcy statutes fix and establish disclosure requirements by law and proscribe the various actions noted above. John Acord and Marcella Ortega must meet with these requirements. Their failure to do so establishes their liability which proximately caused YAP's damages.

*Citation:* *Bergeron v. City of Port Arthur* 264 S.W.2d 769, 774 - 775 (Tex.Civ.App.1954) citing *Texas & N. O. Ry. Co. v. Stewart,* 248 S.W.2d 177, 184, quoting Swoboda v. Brown, 129 Ohio St. 512, 196 N.E. 274.

18. A petition filed under section 301 of the Bankruptcy Code operates as an automatic stay of the continuation of a judicial proceeding against the Debtor that was commenced before the commencement of the bankruptcy. Accordingly, Plaintiff was required by law to cease its pursuit of its property in the Utah Court when the Debtor filed its voluntary petition, and was entitled as a matter of law to reasonably rely on the integrity of the bankruptcy process to protect it. The Plaintiff, as a creditor, is entitled to rely on the protections of the Bankruptcy Code and its rules.

*Citation:* 11 U.S.C 362 et.seq; *In re Coral Petoleum, Inc.*, 249 B.R. 721, 729-30 (Bankr. S.D. Tex. 2000); *Thompson v. O'Bryant***,** Slip Copy, 2008 WL 2567033 (N.D.Ill. 2008); In re Ford**,** 296 B.R. 537 (Bankr.N.D.Ga.,2003); *In re Whelton*, 299 B.R. 306 (Bankr. D.Vt. 2003).

19. Defendants John Acord and Marcella Ortega have directly profited through their fraudulent actions in connection with the bankruptcy filing by selling and causing the debtor to sell its products and services as that of YAP and by intentionally misappropriating a trademark already determined to belong to YAP. As such YAP is entitled to damages through Defendants' profits.

*Citation:* 17 U.S.C. 1117(a).

20. Defendants John Acord and Marcella Ortega actions were the proximate cause of the damages sustained by Young Again Products Inc. as these played a substantial part in bringing about or actually causing injury or damage; in that the injury or damage was either a direct result or a reasonably probable consequence of the fraudulent acts and omissions of Marcella Ortega and John Acord.

21. Plaintiff is entitled to recover in tort from Defendants Acord and Ortega those damages that proximately resulted from the alleged fraud. Plaintiff's damages include the documented attorneys fees and costs already paid in connection with defending its interests and protecting its own property in connection with the improper filing of the bankruptcy.

*Citation: Jackson v. Julian, 694 S.W.2d 434 (Tex. App.-Dallas 1985); Lesikar v. Rappeport* 33 S.W.3d 282 (Tex.App.-Texarkana, 2000); *Turner v. Turner*, 385 S.W.2d at 234; *Standard Fire Ins. Co. v. Stephenson*, 963 S.W.2d 81, 90 (Tex.App.-Beaumont 1997, no pet.); *Crum & Forster, Inc. v. Monsanto Co.*, 887 S.W.2d 103, 129 (Tex.App.-Texarkana 1994, judgm't vacated w.r.m.); *Nationwide Mut. Ins. Co. v. Holmes*, 842 S.W.2d 335, 340-41 (Tex.App.-San Antonio 1992, writ denied); *Baja Energy, Inc. v. Bal*l, 669 S.W.2d 836 (Tex.App.-Eastland 1984, no writ); *Powell v. Narried*, 463 S.W.2d 43 (Tex.Civ.App.-El Paso 1979, writ ref'd n.r.e.).

22. YAP is entitled to actual damages which include damages which are typical of the type that result from the trademark infringement alleged by YAP during the stay period. The harm suffered by YAP as a result of the continued infringement is sufficient to prove damages under the YAP's fraud claims. These damages are measured through Defendants profits together with reasonable royalty, trebling of damages, punitive damages, and attorney's fees.

Citation: *Medline Industries, Inc. v. Strategic Commercial Solutions, Inc.* 2008 WL 2091141, 9 (N.D.Ill.) (N.D.Ill.,2008); 15. U.S.C. 1125(c); 15 U.S.C. 1117(a); *Hairline Creations, Inc. v. Kefalas* 664 F.2d 94, 95 (2d. Cir. 1981) (Award of attorney's fees when defendants conduct is fraudulent pursuant to 15 U.S.C. 1117(a))

12

23. Under Texas law, a finding of intent to harm or conscious indifference to the rights of others will support an award of exemplary damages. Likewise, false representations to induce another to take actions are sufficient to establish a conscious indifference warranting an award of punitive damages. Here, Defendants John Acord and Marcella Ortega intended to harm YAP and at the very least had a conscious indifference to the rights of YAP in knowingly and fraudulently filing a bankruptcy and using the protections of the Bankruptcy Code in order to continue to unlawfully trade on Plaintiff's property, obtain the benefits of that trade, and transfer property beyond the reach of the U.S. courts and the Plaintiff.

*Citation: Coffel v. Stryker Corp.* 284 F.3d 625, 639 (C.A.5 Tex.,2002); *Trenholm v. Ratcliff,* 646 S.W.2d 927, 933 (Tex.1983); V.T.C.A., Civil Practice & Remedies Code § 41.003 (exemplary damages may be awarded if the claimant proves by clear and convincing evidence that the harm with respect to which the claimant seeks recovery of exemplary damages results from fraud); V.T.C.A., Civil Practice & Remedies Code § 41.003

24. Under Texas law, the Court may award prejudgment interest in cases involving breach of fiduciary duty and fraud.

*Citation: Anderson v. Armstrong,* 132 Tex. 122, 120 S.W.2d 444, 450 (1938) (breach of fiduciary duty); *Texas Commerce Bank v. Lebco Constructors, Inc.,* 865 S.W.2d 68, 84 (Tex.App.-Corpus Christi 1993, writ denied), *overruled on other grounds by Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.,* 962 S.W.2d 507, 529-30 (Tex.1998) (fraud)

25. Generally, when the fraud is associated with the purchase or transfer of property, the victim is entitled to recover the difference between the value of that parted with and that received. In addition, the victim is also entitled to recover for pecuniary loss suffered otherwise as a consequence of his reliance upon the misrepresentation.

*Citation*: *Wright v. Carpenter,* 579 S.W.2d 575, 578 (Tex.Civ.App.-Corpus Christi 1979, writ ref'd n.r.e.); *El Paso Development Co. v. Ravel,* 339 S.W.2d 360, 365 (Tex.Civ.App.-El Paso 1960, writ ref'd n.r.e.); *Texas Commerce Bank Reagan Through Texas Commerce Bank Nat. Ass'n v. Lebco Constructors, Inc*. 865 S.W.2d 68, 73 (Tex.App.-Corpus Christi,1993).

26. Disgorgement of profits has long been recognized as an appropriate remedy for fraud and for breach of fiduciary duty.

*Citation: See Burrow v. Arce,* 997 S.W.2d 229, 239-40 (Tex.1999) (breach of fiduciary duty); *Smith v. Smith,* 213 S.W. 273, 277 (Tex.Civ.App.-Austin 1919, writ ref'd) (fraud); *Robertson v. ADJ Partnership, Ltd*. 204 S.W.3d 484, 494 (Tex.App.-Beaumont,2006)

DATED this 3rd day of July, 2008.

        Respectfully submitted,

        /s/ Margaret M. McClure

        _____
        MARGARET M. MCCLURE
        State Bar No. 00787997
        909 Fannin, Suite 3810
        Houston, Texas 77010
        (713) 659-1333
        (713) 658-0334 (fax)
        email: McClureMar@aol.com

        ATTORNEY FOR YOUNG AGAIN
        PRODUCTS, INC.