UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION


YOUNG AGAIN PRODUCTS, INC.,  )  CASE NO:  07-3019-H4-ADV
                          )
           Plaintiff,  )  Houston, Texas
                          )
     vs.            )  Friday, May 2, 2008
                          )
SUPPLEMENT SPOT, LLC., ET AL., )  (10:14 a.m. to 11:14 a.m.)
                          )
        Defendants.   )


#149 - REASONABLENESS OF ATTORNEYS FEES;

#156 - MOTION TO COMPEL


BEFORE THE HONORABLE JEFF BOHM,
UNITED STATES BANKRUPTCY JUDGE


Appearances:      See next page

Courtroom Deputy:  Vangie Attaway

Court Recorder:    Mary Kallie

Transcribed by:    Exceptional Reporting Services, Inc.
                 14493 S. Padre Island Drive
                 Suite A-400
                 Corpus Christi, TX 78418-5940
                 361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**APPEARANCES FOR:**

Plaintiff:                     MARGARET M. McCLURE, ESQ
                               2 Houston Center
                               909 Fannin, Suite 3810
                               Houston, TX 77010

John Acord:                    JOE ALFRED IZEN, JR., ESQ
                               State Bar Information
                               5222 Spruce Street
                               Bellaire, TX 77401

                               THOMAS FREEMAN, ESQ
                               MARK FREEMAN, ESQ
                               Freeman & Freeman
                               One Church St., Suite 200
                               Rockville, MD 20850

Ben Floyd, Trustee:            RANDALL RIOS, ESQ
                               Munsch Hardt Kopf & Harr
                               700 Louisiana, Suite 4600
                               Houston, TX 77002

Office of the U.S.             STEPHEN STATHAM, ESQ
Trustee:                       515 Rusk
                               Houston, TX 77002

3

1       **Houston, Texas; Friday, May 2, 2008; 10:14 a.m.**

2       **(Messrs. Thomas Freeman and Mark Freeman Appeared**

3                          **Telephonically)**

4       **(Call to Order)**

5            THE COURT:   Okay.   Let's now go to the next matter on

6    the docket.   This is the Adversary Proceeding 07-3019.   It's

7    *Young Again Products, Inc., Plaintiff versus Supplement Spot,*

8    *LLC, et al, the Defendants.*   And we've got Mr. Acord's Motion

9    to Compel Discovery.   We've also got Docket F156.   Docket 149

10   is the attorneys' fees issue as to reasonableness of the

11   attorneys' fees incurred by the Plaintiffs.

12           Let me go ahead and get appearances from counsel

13   first, please.

14           MS. McCLURE:   Yes, your Honor.   Margaret McClure,

15   M-c-C-l-u-r-e, on behalf of Young Again Products, Inc.

16           THE COURT:   Thanks.

17           MR. RIOS:   Good morning, Judge Bohm.   Randy Rios

18   appearing on behalf of Ben Floyd, Chapter 11 Trustee.

19           THE COURT:   Thanks.

20           MR. IZEN:   Joe Alfred Izen, Jr. here for the

21   Defendant Acord who's an individual in this case.

22           THE COURT:   Thanks, Mr. Izen.

23           MR. STATHAM:   Good morning, your Honor.   Steve

24   Statham for U.S. Trustee for a very limited purpose.

25           THE COURT:   All right.   Thanks, Mr. Statham.

4

1           Who's on the phone, please?

2           **MR. THOMAS FREEMAN:**   Good morning, your Honor.   This

3 is Thomas Freeman and Mark Freeman on behalf of Plaintiff,

4 Young Again Products, Inc.

5           **THE COURT:**   All right.   Thank you.

6           Okay.   Mr. Statham, do you want to make a statement

7 to begin with since you're here for a limited purpose?

8           **MR. STATHAM:**   Thank you, your Honor.

9           Reluctantly, as an officer of the Court I'm required

10 to come forward and reveal information I have learned, and that

11 is, that Mr. Izen is currently on a fully probated suspension

12 from the State Bar of Texas.   As I understand the way the rules

13 of discipline have been interpreted here in the Southern

14 District, that may impact his ability to appear before the

15 Court.   I know there's a lot of disagreement about how that

16 rule is interpreted.   But be that as it may, Mr. Izen's status

17 may be in question at this moment.

18           **THE COURT:**   Mr. Izen, first of all, let me have you

19 confirm for the record that what Mr. Statham says you have a --

20           **MR. IZEN:**   Yes, your Honor.   I have reported the

21 status to the Northern District of Texas and they said that I

22 could practice.

23           **THE COURT:**   Have you reported it to the Southern

24 District of Texas?

25           **MR. IZEN:**   I believe that I have but I'll check when

5

1   I get back to the office.  And as far as the probation is

2   concerned, it was a two-year.  It had to do with advertising.

3   It was a State Bar case.

4          **THE COURT:**  Bear with me.  I'm going to the District

5   Court local rules.

6       **(Pause)**

7          What I'm looking at says:

8          "A lawyer who is disbarred or suspended by consent or

9          agreement or who resigns from the bar of another

10         court in the United States to avoid further

11         discipline must advise this Court in writing and

12         immediately cease to practice before this Court."

13         And by "this Court" it means the District Court or

14   the Bankruptcy Court, a unit of the District Court.

15         "The lawyer shall furnish a certified copy of the

16         disciplinary order or letter of resignation to the

17         Clerk."

18         Mr. Izen, have you furnished a certified copy -- is

19   there a disciplinary order in effect?

20         **MR. IZEN:**  There is a judgment of the State Court is

21   what it is, if you would refer to that as a disciplinary order.

22   It's a judgment of probation.  It's not a suspension; it's not

23   any of those other things that's described because it has

24   "probated" in front of it.  That's what the Northern District

25   ruled.  But their rule was different than this one.  Their rule

1   was that they would impose the same discipline and they asked

2   me to respond and show cause.  I did and they said they

3   shouldn't have ever issued a show cause on me.  I can get that

4   copy for the Court.

5           **THE COURT:**  All right.  Well, I appreciate your

6   comments about the Northern District, but I'm a Southern

7   District judge and I've got to worry about enforcing the

8   Southern District rules.  Let me just go through this.

9           "A lawyer who is suspended by consent or agreement or

10          who resigns from the bar of another court must advise

11          this Court in writing and immediately cease to

12          practice before this Court."

13          You're not sure whether you've notified the Clerk's

14   Office.

15          **MR. IZEN:**  I'm not sure but I have a probate and I

16   don't have an active suspension.  I err on the side of

17   disclosure versus non-disclosure.

18          **THE COURT:**  Okay.  You haven't been disbarred.

19          **MR. IZEN:**  No, sir.

20          **THE COURT:**  And you haven't been suspended.

21          **MR. IZEN:**  No, sir.

22          **THE COURT:**  Mr. Statham?

23          **MR. STATHAM:**  Your Honor, I don't want to throw a

24   monkey wrench, but I've drafted a bunch of these things in my

25   prior life as a State Bar prosecutor, and the judgments

1  inevitably say suspension probated for a period of X.  And so

2  the judgment may actually be the best proof of the true status.

3  I don't know to quibble with Mr. Izen about the wording, but

4  the judgment may be the best proof of this.

5          THE COURT:  So in other words, Mr. Statham, if the

6  judgment says he is suspended and then the next paragraph says

7  the suspension is probated, what would the Trustee's position

8  be, the U.S. Trustee's position be?

9          MR. STATHAM:  It would be referred to as a probated

10 suspension.  But not to quibble, but it is a suspension; it is

11 probated.

12         THE COURT:  Right.

13         MR. STATHAM:  The terms of which are probated --

14         THE COURT:  Right.

15         MR. STATHAM:  -- for a period of time depending upon

16 Mr. Izen not violating the rules of discipline or other

17 conditions.

18         THE COURT:  And so as I read this rule it says:

19 Look, if you've been suspended, whether it's probated or not,

20 you are supposed to immediately -- you are supposed to report

21 to the Court and immediately cease to practice.  And then the

22 lawyer shall furnish a certified copy to the Clerk.  And then

23 as I understand it, the Chief Judge of the Southern District in

24 this case, Chief Judge Hayden Head, who sits in Corpus Christi,

25 would receive a certified copy of the disciplinary order and

8

1   would either keep it himself or refer it to another District

2   Judge; or could assign it to a bankruptcy judge in order to

3   determine whether any action needs to be taken.

4           MR. STATHAM:  Yes, sir.  That's my understanding.

5           THE COURT:  So the issue today is, is Mr. Izen

6   allowed to practice in the Southern District of Texas as of

7   right now.

8           MR. STATHAM:  Yes, sir.

9           THE COURT:  Let's take a brief break.  Let me think

10  on this.  I need to give my staff a break anyway since we've

11  been going.  Why don't we come back at 10:30.

12          MR. STATHAM:  Thank you, your Honor.

13          THE COURT:  Thanks.

14          THE CLERK:  All rise.

15      **(Recess taken from 10:22 a.m. to 10:47 a.m. / Parties**

16  **present)**

17          THE COURT:  Be seated, please.  We're back on the

18  record.

19          Okay.  Mr. Izen, first I checked your file.

20      MR. IZEN:  Yes, sir.

21          THE COURT:  You have not sent a letter to the Clerk

22  of Court giving notice and furnishing a certified copy of the

23  Order.  As I understand it, you were suspended but fully

24  probated.

25          MR. IZEN:  Yes, sir.

9

1          **THE COURT:**  Which the best analogy I can come up with

2     is it means the appropriate authorities have said you're

3     skating on thin ice but you haven't fallen through the ice yet.

4          **MR. IZEN:**  I hope that's not true.  I don't have good

5     enough knees to skate on thin ice.

6          **THE COURT:**  And so you're still allowed to practice

7     in the courts of the state of Texas, no question about that.

8     Am I right?

9          **MR. IZEN:**  Yes, sir.

10          **THE COURT:**  All right.  So the issue is, going back

11     to what Mr. Statham said, is does the phrase a lawyer who is

12     suspended, does that lawyer need to "immediately cease to

13     practice before this Court"?

14          Interpretation one is because you are suspended with

15     full probation, fully probated, that you could continue to

16     practice in this court.  Presumably, Mr. Statham, that's

17     interpretation one.

18          And then interpretation two is:  No, you must

19     immediately cease to practice before this Court because you've

20     been suspended and the local rule doesn't distinguish between

21     suspension with fully probated suspension versus a partially

22     probated or a non-probated suspension.

23          Mr. Statham, do you think I've correctly stated the

24     two interpretations?

25          **MR. STATHAM:**  Yes, sir.  That's correct.

10

1          **THE COURT:**  Okay.  I don't know the answer to this

2    question, and so here's what I'm going to do.  Mr. Acord

3    initially represented himself pro se, concluded that he didn't

4    like the results he was getting and so went out and hired

5    Mr. Izen and presumably still has confidence in him because

6    Mr. Izen has continued to represent Mr. Acord and has been

7    filing pleadings.

8          I am reluctant today to say that you can't practice

9    for purposes of today's hearing since this was just raised, at

10   least this is the first time I've had to deal with this today.

11   But, Mr. Izen, by the same token you need to -- I want you

12   today, and I mean before close of business today, to send a

13   letter to the Clerk's Office with a copy, certified copy, of

14   the disciplinary order.

15         How long has this suspension fully probated been in

16   effect?  When was it issued?

17         **MR. IZEN:**  My recollection --

18         **THE COURT:**  And let me say you can remain seated,

19   Mr. Izen.  I know that you've got some difficulty standing and,

20   believe me, you can just remain seated.  No need to stand.

21         **MR. IZEN:**  The trial of the case that this resulted

22   out of, the jury trial which is on appeal, was terminated in

23   September.  I believe it was September 13, 2007.  Now, it was

24   not printed in the *Bar* for some reason, the *Bar Journal*, for

25   six months.  I'm not going to quibble about what the time was.

1   I think it was effective from the date the Court entered the

2   judgment.

3            **THE COURT:**   My concern is, is that you need to comply

4   with -- what I'm looking at so that you know, is if you go to

5   the local rules for the Southern District of Texas and look at

6   Appendix A, it's entitled The Rules of Discipline United States

7   District Court Southern District of Texas.   This particular

8   Appendix is effective Jun 19th, 2007 as a result of an Order

9   signed by Chief Judge of the Southern District, Hayden Head.

10            The Rule 4 requires you, it says, "The lawyer shall

11   furnish a certified copy of the disciplinary order to the

12   Clerk."   That you need to do.

13            So what I'm going to do is this.   I'm going to let

14   you represent Mr. Acord today for purposes of this hearing.

15   The condition I'm doing that on is to tell you and order you to

16   furnish a certified copy of the disciplinary order to the

17   Clerk's Office by close of business today.   As I understand the

18   procedure, the Clerk will then give notice to Chief Judge

19   Hayden Head, who will then either keep the matter himself or

20   refer the matter out to another judge.   And he does so

21   pursuant, as I understand it, to Rule 5 of the Appendix.   So

22   you can read the rules and see what will happen.

23            I agree with Mr. Statham that there's two ways to

24   interpret Rule 4(a), and suspension fully probated is one way

25   to interpret it, is to say:   Okay, you don't need to cease to

12

1   practice.  But the other interpretation is:  No, no.

2   Suspension is suspension, period, in a sense whether or not

3   it's fully probated or not, in which event you would need to

4   cease to practice.

5           My view of the world is certainly I want to enforce

6   this rule and make sure I do it right.  And I'm not sure which

7   interpretation is the correct one, and I'm going to leave that

8   to Judge Head.  Given the circumstances that I have in this

9   case where Mr. Acord was representing himself pro se and went

10  and hired you, Mr. Izen, because he obviously concluded he

11  needed capable counsel, I don't want to just bring a screeching

12  halt to today's hearing and tell you you can't practice for

13  purposes of today's hearing.  But I do insist that you furnish

14  a certified copy of the Order to the Clerk's Office by close of

15  business today.

16          **MR. IZEN:**  Your Honor, may I address the Court?

17          **THE COURT:**  Sure.

18          **MR. IZEN:**  I don't know how long this hearing will

19  take, but I think I have a certified copy of the Judgment back

20  at my office, but I'm not positive.

21          **THE COURT:**  Well, all right.

22          **MR. IZEN:**  So I would request until Monday at

23  5:00 o'clock to get it to them.  I'll try every way I can to

24  get it to them by 5:00 o'clock.  I know how you're concerned

25  about time limits.  When I sent the thing to the Northern

13

1   District they required a certified copy and I had it, but I

2   don't know if I retained the certified copy.

3         THE COURT:  Fair enough, Mr. Izen.  Let's do it by

4   close of business on Monday, May 5.

5         MR. IZEN:  Yes, sir.  Thank you.

6         THE COURT:  Okay.  All right.  Now, let's go to the

7   merits here.

8         MR. STATHAM:  Your Honor, may I be excused?  My

9   presence is no longer --

10         THE COURT:  Mr. Statham, I appreciate it.  As always,

11   I appreciate you raising the issue, and the best way I can

12   harmonize it right now is to do what I've done.  And you

13   certainly are excused.  Have a good weekend.

14         MR. STATHAM:  Thank you, sir.  I appreciate it.

15         THE COURT:  Thanks.

16      (Mr. Statham excused)

17         Let's go to the merits, the reasonableness of fees

18   first.  Ms. McClure.

19         MS. McCLURE:  Yes, your Honor.  Pursuant to the

20   Court's order I was to provide the timesheet, if you will, for

21   working on the two motions for sanctions against Mr. Acord for

22   failure to pay attorneys' fees pursuant to the Court's

23   sanctions orders.  I believe the date that I was supposed to

24   give that time to Mr. Izen was March 7th.  Mr. Izen had until

25   March 17th to either have Mr. Acord pay the money to the

14

1    Plaintiff or file an objection to the reasonableness of the

2    fees.  He has filed that objection and request for hearing on

3    the reasonableness of the attorneys' fees, so I guess

4    procedurally Mr. Izen has the burden to prove that they're not

5    reasonable.

6           We did file a motion with the Court asking that

7    Mr. Mark Freeman and Thomas Freeman be allowed to testify as to

8    their portion of the fees as to reasonableness by telephone,

9    and this Court granted that motion.  So they're prepared to

10   stand by their fees; I'm prepared to stand by my fees.  However

11   the Court chooses to go forward.

12           **THE COURT:**  Okay.  Mr. Izen, do you want to examine?

13           **MR. IZEN:**  Actually, as far as examining is concerned

14   my objection is centered in on how many motions for contempt

15   there were and sanctions.  And my concern was that there is

16   requests for attorneys' fees going back to 2-4-08.  And I'm

17   concerned that there were attorneys' fees of awards already

18   given that should have included those fees.  That was the

19   concern and in looking at this I couldn't discern that.  I

20   couldn't understand why there would be a 2-4-08 billing for a

21   motion that was prepared 2-18-08 in light of the docket sheet

22   showing of other awards of attorneys' fees.

23           And so, basically, about four to six hours of this is

24   what's in dispute.  I have no desire to dispute the other

25   items.  I just wanted attorneys' fees that pertained to the

1   tailing off of this contempt proceeding and tailing off of the

2   enforcement and the fees that are awarded -- and this is like

3   my opening -- should only be those fees that were reasonable

4   for preparing that last -- or those last hearings on that last

5   motion.  And so I think it's incumbent on them requesting the

6   fees to prove that a 2-4-08 billing and a 2-06-08 billing,

7   several of them there, are included in the motion, which was

8   admittedly by their description prepared and filed on

9   February 18th, 2008.

10        And I move the Court to take judicial notice of its

11  entries on the docket of the times it awarded attorneys' fees.

12  Because what you don't want to have happen here is you don't

13  want someone saying I should have included this fee in my

14  earlier application so I put it in this one.  In other words,

15  each fee application should be a cut-off for the work that was

16  done on a particular motion.  That's where I'm coming from.

17  That was the only reason for the objection.  That involves two

18  to three thousand dollars though, and I couldn't reach an

19  agreement on it.

20        **MS. McCLURE:**  May I speak?

21        **THE COURT:**  Please, Ms. McClure.

22        **MS. McCLURE:**  Your Honor, on February 4th, 2008, the

23  Freemans' law firm and I started working on an emergency motion

24  for sanctions for Mr. Acord's failure to pay fees -- excuse me

25  and let me get it.  We filed the motion on February 6th.

16

1        **THE COURT:**  Right.

2        **MS. McCLURE:**  Expedited motion for sanctions.  The

3  Court Order that is the subject of that motion was the

4  January 31st.  The Court signed -- I apologize -- the Court

5  Order on December 18th, 2007 ordering that Mr. Acord pay $3,410

6  by January 31st, 2008.  That was the first motion.

7        The second motion comes along because the Court had

8  entered a second Court Order ordering Mr. Acord to pay fees.

9  That Court Order was signed on January 15th, 2008, where

10  Mr. Acord was ordered to pay $8,052 by 5:00 p.m. on

11  February 15th, 2008.  That motion was filed on February 18th,

12  2008.

13        Both of them, your Honor, were after non-compliance

14  with the Court's order.  The one to pay by January 31st was

15  filed February 6th.  The one ordering to be paid by January --

16  excuse me -- by February 15th was filed on February 18th.  The

17  excess fees, if you will, concerning all of this was

18  Mr. Acord's response complaining about indigency and the fact

19  that he wanted to pay $1,500 a month.

20        So the time involved in preparing these two motions

21  and conducting the hearing was having to go through documents

22  to prove that Mr. Acord had the wherewithal financially to take

23  care of the situation.  As the Court can recall, the Court got

24  very upset with Mr. Acord for paying $1,300 a month for a

25  Mercedes payment; ordered that $8,052 be paid by the next day;

17

1  and then the other money had already been paid.  Okay.  So one

2  had been complied with; one had not.

3      Everything is legitimate.  As officers of the Court I

4  can tell you, your Honor, we have never, if you will, double-

5  dipped or put things on time entries that we thought, okay, we

6  weren't able to recover the last go around so we're going to

7  sneak it in on this one.  And the Freemans certainly will agree

8  with me.

9      If the Court sees starting on February 4th, '08 all

10  of the time entries are for Thomas Freeman and Mark Freeman, I

11  didn't even bill for any time, your Honor, until February 27th

12  when I started preparing for the hearing.  So there's no

13  duplication of time.

14      This Court has already determined that the Freemans'

15  $185 an hour for their time and my $295 an hour for my time,

16  and of course paralegal time in my office for $75, is

17  reasonable in this district.  There shouldn't be any issue.  As

18  officers of the Court, we stand by this as not being

19  duplicative or pertaining to any other motions other than these

20  two and preparing for and attending the hearings.

21      **MR. IZEN:**  I have a brief response --

22      **THE COURT:**  Mr. Izen, please.

23      **MR. IZEN:**  -- with your permission.  The concern is

24  an entry on 2-4-08, draft motion for sanctions for preparing a

25  motion that's dated December 12th, 2007.  Now, I don't know the

**EXCEPTIONAL REPORTING SERVICES, INC**

1    case as well as Ms. McClure does or this Court, but I'm certain

2    that Mr. -- as I recall, Mr. Acord came down here on at least

3    three or four hearings and this December 12th, 2007 Order I

4    don't thinks relates to this 2-18 draft second motion, '08; and

5    I don't think it relates to any request for a pay-out plan,

6    which the Court initially said that it would entertain if it

7    was necessary for Mr. Acord to have counsel.  The Court later

8    on determined that it was not because of what the Court

9    determined to be personal living expenses and other things that

10   he was able to pay.

11           So that's the concern.  I'm not contesting the $185

12   an hour.  I'm not contesting the 295 hour [sic].  The focus of

13   this hearing is that how could I not object to a bill written

14   in this fashion where it says that they're billing on 2-4-08

15   2.2 hours for a motion prepared way back on December 12th.

16   Maybe I'm missing something.

17           **MS. McCLURE:**  Your Honor?

18           **THE COURT:**  All right.  Ms. McClure?

19           **MR. IZEN:**  The December 12th motion is not enforced

20   until January 31st, 2007.  I don't think so.  I mean let's look

21   at this draft second motion for sanctions.  It's clear that the

22   2-18-08 says "draft second motion for sanctions."  The 2-06-08

23   and 2-06-08 [sic] says "finalize emergency motion for sanctions

24   and multiple telephone conferences," which occurred 12 days

25   before that.

1    So, you know, I think that there was billings here

2  that I don't think relate to the final series of hearings we

3  had, the two hearings or whatever it is that to do with the

4  issue of the pay-out plan and the final tail off of the

5  documents you ordered to be produced that you added to the

6  contempt Order.  I think we had something on that, maybe one or

7  two issues about documents under the contempt Order.

8    And so that's the concern.  And somebody could

9  testify to this, I guess.  These are Mr. Freeman's or the

10  Freeman's billings.  They're not Ms. McClure's.  But I don't

11  understand at this point or I would have agreed to it based on

12  the way they wrote out their billing how that relates.

13    **THE COURT:**  All right.

14    **MS. McCLURE:**  Your Honor?

15    **THE COURT:**  Go ahead, Ms. McClure.  And then,

16  Mr. Freeman, I'm going to ask you to respond as well.

17    **MS. McCLURE:**  Sure.  The February 4th entry, your

18  Honor, refers to the December 12th, 2007 court order.  That is

19  a typographical error.  I take full blame and responsibility

20  for that.

21    It should have said "December 18th."  And when I

22  emailed these time entries to Mr. Izen I never got any

23  communications from Mr. Izen concerning his concerns, if you

24  will, about these time entries prior to him waiting until

25  March 17th to file the objection to the fees.  So this is the

20

1    first other than his objection that he filed with the Court.

2    He did not communicate with me for me to look into his concerns

3    about a December 12th, 2007 court order or motion.  And if he

4    had, we could have gotten that resolved and cleared up instead

5    of wasting this Court's time.

6              **THE COURT:**  Okay.  Mr. Freeman?

7              **MR. THOMAS FREEMAM:**  Yes, sir.  I have a comment that

8    hopefully will clarify the record.  The February 4 entry was my

9    drafting of the original motion for sanctions and fees in

10   response to Mr. Acord's failure to pay this Court's ordered

11   amount, which this Court ordered on November -- excuse me --

12   December the 18th.  It was a December 12th hearing that your

13   Honor may recall in which your Honor found Mr. Acord in

14   contempt of a November 13 order on documents.  And following

15   that hearing on December 18, there was an order for $3,410 to

16   be paid to the offices of Ms. McClure by January 31.  On

17   January 31, payment was not received and I commenced

18   preparation of the first motion, which is the time entry you

19   see there.

20             As you'll see, there's an additional entry two days

21   later in which Mr. Mark Freeman completed that emergency

22   motion.  The reason he had to come in to complete the motion

23   was that I had to travel for depositions in this case to Dallas

24   and so I was unavailable to complete the motion.  Mr. Mark

25   Freeman, who is here with me now, completed the motion on

21

1  the 6th.  There was a follow-up conversation with Ms. McClure,

2  teleconferences on that day by myself, as well actually with a

3  conference with Mr. Acord himself.  Those calls on the 6th were

4  also -- were actually taken in Dallas all in connection with

5  the filing of the first motion.

6         The second motion, as Ms. McClure stated, was filed

7  after Mr. Acord failed to comply with the Court Order dated

8  January 15.  And in that Order he was required to pay $8,052

9  and pay that amount to Ms. McClure by February 15.  The payment

10  was not received by 5:00 p.m. on February 15, so I commenced

11  the drafting of the second motion for sanctions on February

12  the 18th.

13         Both of these motions, your Honor, were the subject

14  of the hearing before your Honor that Ms. McClure attended, I

15  believe it was on March the 3rd, as her time indicates.  And I

16  think it was thereafter that your Honor gave Mr. Izen some time

17  to consider the amounts and then if he wanted to file

18  objections he could do so.  And that's what he has done.

19         **THE COURT:**  Okay.  I think I've heard enough.  I will

20  accept the representations.  I don't think there's any double-

21  billing going on or somehow trying to catch up from past

22  entries.  I'm going to approve all the fees.  I think they're

23  reasonable.  I think they were certainly necessary.

24         So, Ms. McClure, if you would submit an Order -- why

25  don't I ask you to do so within one week -- approving all of

22

1    the fees.  And you can set forth in there that I've made a

2    finding that they were both necessary and reasonable.

3          **MR. IZEN:**  May I point out one other thing to the

4    Court?

5          **THE COURT:**  No, Mr. Izen.  I've heard enough.  Given

6    the circumstances I don't think these are manufactured time

7    entries they're somehow trying to catch up from the past.  And

8    so I've made my ruling.  Let's move on.

9          Next up is Mr. Acord's Motion to Compel Discovery.

10   I've read the pleadings.  I want documents produced, okay?

11   What's good for the goose is good for the gander.  I want the

12   documents produced.  I don't want Mr. Acord to have to fly up

13   to Maryland.  I want the documents produced so that he's got

14   the documents so that at trial there's not any surprise.

15   That's what I want; that's what I expect.  If the documents are

16   not going to be produced, then I'm going to strike the

17   pleadings.  It's that simple.  I don't care if it cost a couple

18   of hundred bucks to get the documents down to Texas, I want

19   them produced.  And so I'm putting the Plaintiff on notice.  If

20   you ain't going to produce them, you're going to walk out of my

21   court with a judgment that says take nothing and you are

22   forever barred.  It's that simple, okay?

23         **MR. IZEN:**  I think that satisfies us.  There's the

24   issue of the depositions and the scheduling.  I'm not certain,

25   your Honor, that in the position that I was in in scheduling

23

1   the depositions, you know, they weren't scheduled right,

2   whatever; everybody wants to use their calendars.  I was on a

3   real short leash, as I explained in the motion.

4         THE COURT:  And let me just say.  I'm not granting

5   any continuances in this.  I've got a motion sitting in my

6   inbox.  This case is going to trial as set forth in the Amended

7   Scheduling Order, no deadline extensions, nothing.  This case

8   is acrimonious, it's in other courts; and those other courts

9   may have granted continuances, but I am not.  We're going to

10  try this thing and we're going to keep it on schedule.  And as

11  I said, if documents aren't going to be produced, I ain't going

12  to give a judgment as anything other than take nothing.

13        MR. IZEN:  The discovery deadline, what do you do

14  with that?

15        THE COURT:  I'm not extending it.

16        MR. IZEN:  Okay.  Well, then it's --

17        THE COURT:  We're going to trial.  Mr. Acord took the

18  risk of representing himself pro se and he finally went out and

19  got you as his counsel, and that's good.  But I'm not extending

20  deadlines.  This case is going to be tried as scheduled because

21  I am not going to continue.  And my feeling about this case is

22  the more continuances I grant the more acrimonious it will get,

23  the more discovery problems it will get and the more time we're

24  going to waste in this courtroom on discovery disputes.  We're

25  going to try it.  We're going to put people under oath.  I'm

24

1    going to take the time to try it.  But I'm not granting any

2    deadline extensions, period, end of sentence.

3           And, Mr. Rios, that includes the motion you filed the

4    other day.  If the parties want to talk settlement, that's

5    fine.  But sending me a motion on April 30th, the deadline,

6    asking for extension doesn't cut it with me, particularly in

7    this case.  This is an acrimonious case, we are going to try

8    it, no extensions, period, end of sentence, okay?

9           Get the documents produced.  If they ain't produced,

10   it will be a take-nothing judgment.  Plaintiffs stop fiddling

11   around, give Mr. Acord the documents.

12          And with that the Court's in recess.

13          **THE CLERK:**  All rise.

14      **(This proceeding was adjourned at 11:14 a.m.)**

15

16

17

18

19

20

21

22

23

24

25

25

## CERTIFICATION

I certify that the foregoing is a correct transcript from the electronic sound recording of the proceedings in the above-entitled matter.

_____                    June 28, 2008
            Signed                                       Dated


                    *TONI HUDSON, TRANSCRIBER*

EXCEPTIONAL REPORTING SERVICES, INC