*EXIBIT B*

### UNITED STATES BANKRUPTCY COURT
### SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION


YOUNG AGAIN PRODUCTS, INC.,   )   CASE NO:  07-3019-H4-ADV
                                )
            Plaintiff,   )   Houston, Texas
                                )
    vs.                 )   Monday, June 23, 2008
                                )
SUPPLEMENT SPOT, LLC., ET AL., )   (2:12 p.m. to 3:12 p.m.)
                                )
          Defendants.   )


#### #174 - MOTION FOR LEAVE TO AMEND

#### BEFORE THE HONORABLE JEFF BOHM,
#### UNITED STATES BANKRUPTCY JUDGE


Appearances:        See next page

Courtroom Deputy:   Vangie Attaway

Court Recorder:     Pat Williams

Transcribed by:     Exceptional Reporting Services, Inc.
                 14493 S. Padre Island Drive
                 Suite A-400
                 Corpus Christi, TX 78418-5940
                 361 949-2988


Proceedings recorded by electronic sound recording;
transcript produced by transcription service.

2

**APPEARANCES FOR:**

Plaintiff:                    MARGARET M. McCLURE, ESQ
                              2 Houston Center
                              909 Fannin, Suite 3810
                              Houston, TX 77010

John Acord:                   ROB EVAN SINGER, ESQ
                              4550 Post Oak Place, Suite 175
                              Houston, TX 77027

Ben Floyd, Trustee:           RANDALL RIOS, ESQ
                              Munsch Hardt Kopf & Harr
                              700 Louisiana, Suite 4600
                              Houston, TX 77002

3

1　　　　　**Houston, Texas; Monday, June 23, 2008; 2:12 p.m.**

2　　　　　　　　　　**(Call to Order)**

3　　　　　**THE COURT:**  All right.  Next up is the adversary

4　proceeding 07-3019.  It's *Young Again Products, Inc.,*

5　*plaintiff, versus Supplement Spot, LLC, et al., defendants.*

6　　　　　Let me go ahead and get appearances from counsel

7　first, please.

8　　　　　**MS. MCCLURE:**  Good afternoon, your Honor.  Margaret

9　McClure, M-c-C-l-u-r-e, on behalf of the plaintiff, Young Again

10　Products, Inc.

11　　　　　**THE COURT:**  Thanks.

12　　　　　**MR. RIOS:**  Good afternoon, Judge.  Randy Rios

13　appearing on behalf of Ben Floyd, Chapter 11 Trustee.

14　　　　　**THE COURT:**  Thanks, Mr. Rios.

15　　　　　**MR. SINGER:**  Good afternoon, Judge.  I'm Rob Singer,

16　S-i-n-g-e-r.  I'm here on behalf of Marcella Ortega, and I'm

17　also here on behalf of John Accord on a limited basis.

18　　　　　**THE COURT:**  Thanks.

19　　　　　**MR. SINGER:**  Thank you, Judge.

20　　　　　**THE COURT:**  I think I have gotten, Mr. Singer, a

21　motion for you to appear by telephone, which I granted, but I'm

22　happy to see you face to face in the courtroom.

23　　　　　**MR. SINGER:**  Your Honor, there was a hearing in San

24　Antonio that was cancelled at the last minute.

25　　　　　**THE COURT:**  Okay.  Let's see; what I've got before me

4

1    is defendant John Accord's motion for leave to file first

2    amended answer and counterclaim.  And then I've got Young Again

3    Products, Inc.'s opposition to John Accord's motion for leave

4    to file amended answer and counterclaim.

5         Let me ask: Is there anyone on the phone?

6         **MR. SINGER:**  No, your Honor.  However, I think, and

7    I'm not sure if this would be considered by the Court today or

8    not, but I think Mr. Izen has filed a motion to appear *pro hac*

9    *vice* and wanted the opportunity to present that to the Court by

10   phone.

11        **THE COURT:**  I've actually read the motion and I've

12   also read the objection.  I do not feel comfortable granting

13   that motion, Mr. Singer, because as I read the Local Rules, and

14   I think it was my May 16th order; as I read the District Court

15   Local Rules, Mr. Izen has to cease practicing law until he

16   files the appropriate documentation with our Chief Judge, who

17   in this case is Chief District Judge Haden Head, and then Judge

18   Head, as the Local Rules say, can assign it out to another

19   District Court.  And, you know, the process needs to be

20   effectuated in that respect.

21        I did note that I think it was District Judge Hughes

22   allowed Mr. Accord to appear in a criminal action pending

23   before Judge Hughes, which is entirely within Judge Hughes'

24   discretion.  I think, however, there is a -- Let me say

25   District Judge Hughes is an Article Three Judge and is dealing

1   with criminal actions.  And I think the difference between

2   what's going on up in his courtroom and what's going on down in

3   my courtroom is, one, I'm not dealing with criminal actions and

4   there's no question I think, when you're talking about a

5   criminal action against somebody, I think the argument is most

6   compelling that that someone needs an attorney, so I can

7   understand why District Judge Hughes allowed Mr. Izen to

8   appear.

9        And then secondly, District Judge Hughes is an

10  Article Three Judge, which means, at least in my mind, the

11  District Court's Local Rules, I mean I think an argument can be

12  made to a certain extent that because he is a District Judge,

13  it's as if Judge Head, at least for that particular case,

14  defers to his colleague Judge Hughes and lets Judge Hughes make

15  the decision.

16       He might make the same argument for me except I'm an

17  Article One Judge, and since these Rules are promulgated by the

18  District Court and since I am a unit of the District Court,

19  that's what an Article One Judge is in my case, I am just

20  uncomfortable granting the relief that Mr. Izen has requested

21  because it seems to me that would almost -- it would be in

22  effect my usurping Chief District Judge Head's powers to take

23  the appropriate actions and effectuate the process that is

24  supposed to take place under the District Court, the applicable

25  District Court Local Rule.

6

1          So, I'm going to go ahead and enter an order denying

2     the motion to appear *pro hac vice*.  And I regret having to do

3     so, but I think that Mr. Izen needs to go with the process that

4     is afforded to him by the District Court Local Rule.  So, I

5     will go ahead and do an order to that effect.

6          Mr. Singer?

7          **MR. SINGER:**  If I could make one comment, your Honor?

8          **THE COURT:**  Sure.

9          **MR. SINGER:**  And I feel I'm in kind of a funny

10    position here because in a sense this isn't my fight or my

11    motion; in a sense it is because there's a joint effort here on

12    behalf of the defendants in this matter that is very

13    substantial.

14         And the way -- I'm qualifying this by saying that I

15    haven't researched the law.  My take, when I first learned of

16    Mr. Izen's intention to file the motion to appear *pro hac vice*,

17    two things crossed my mind.  One was I took it as a motion that

18    would be filed by me to appear in a court in Connecticut; that

19    kind of a thing where if I fulfilled the basics of that court's

20    -- the Connecticut court's -- criteria to allow a foreign

21    attorney to practice before it, then it made sense to me.  It

22    made sense.

23         The other thing that occurred to me -- that initially

24    occurred to me, flashed in front of me when I learned of the

25    intention to file this motion was that under the principles of

7

1  just equity and fairness, it seems to me that there is a

2  compelling purpose, if the Court were to feel comfortable

3  allowing Mr. Izen to appear, there is a compelling purpose that

4  would be dictated I think by equity and fairness, and that is

5  that Mr. Accord, as the Court knows, is fighting lawsuits in

6  three jurisdictions and it's been a very expensive, tedious

7  course for everybody in this matter.  And to restrict or impede

8  or prohibit Mr. Izen from representing him after Mr. Izen has

9  been on board for as long as he has and has become as familiar

10  as he has with the case and is as articulate about the case as

11  he is, to impede that or prohibit that seems to me to be -- to

12  work a substantial injustice in this case.

13         **THE COURT:**  Mr. Singer, let me respond.  I can't

14  speak for the action going on, I think you referenced up in

15  Connecticut?  Did I mishear you?

16         **MR. SINGER:**  I was just saying, your Honor, that if I

17  were to file a motion to appear *pro hac vice* in some other

18  jurisdiction, Connecticut --

19         **THE COURT:**  Anywhere.

20         **MR. SINGER:**  -- Pennsylvania or California --

21         **THE COURT:**  Okay.

22         **MR. SINGER:**  -- that I thought that Mr. Izen's

23  circumstances, as I understood them, would not prohibit --

24  let's say him instead of me -- from filing a motion to appear

25  *pro hac vice* in Pennsylvania or Wyoming or some other

8

1   jurisdiction such as that.

2          **THE COURT:**   Let me respond to your point.   When I

3   have out-of-state attorneys file motions for *pro hac vice* in my

4   court, the first thing I ask them is: 'Are you in good standing

5   in the federal District Court where you practice?'   In other

6   words, if someone from the Western District of Pennsylvania or

7   from the District of Connecticut were to file a motion in my

8   court asking to appear *pro hac vice*, my first question to them

9   would be: 'Are you licensed in the United States District Court

10  for the District of Connecticut?'   Answer: 'Yes.'   'And are you

11  in good standing in that court?'   Answer: 'Yes'.   Then I'm very

12  comfortable granting the motion.

13          If on the other hand the answer I get is 'No, I'm not

14  in good standing', then I'm going to be extremely uncomfortable

15  granting a motion for *pro hac vice* down here because if

16  something has gone up in the District Court where that person

17  has been practicing, I need to be asking myself seriously why

18  should I allow that attorney to appear in this court.

19          So here I've got it even one step further.   I've got

20  Mr. Izen; the Local Rules of the United States District Court

21  for which I'm bound to enforce, that's my oath, say that, as I

22  said in my May 16th order, is that when he's suspended or

23  disbarred, he must cease practicing in the Southern District of

24  Texas and then must file the appropriate papers, and it goes to

25  Chief District Judge Haden Head.

9

1    If I start allowing attorneys who under the Local

2    Rules must cease practicing law because they've been disbarred

3    or suspended, if I then allow them to practice *pro hac vice* on

4    a particular case in order to do an end run around the Local

5    Rule, I think the Local Rule has no power and no force and

6    effect, and, you know, the last thing I'm going to do is want

7    to violate a District Court Local Rule for the Southern

8    District of Texas that says the Chief Judge, Haden Head, or, if

9    Judge Head was not the Chief Judge, anyone who is Chief Judge,

10   that's the person who is supposed to take what has happened

11   with Mr. Izen and make a decision as to what to do, and I don't

12   feel that I should infringe upon that, and I think I would be

13   violating the Local Rule if I did and be usurping the Article

14   Three Court's power to take whatever action is appropriate.

15   That's my first response to you.

16   My second response to you is in this particular case,

17   if I recollect correctly, Mr. Accord did have someone other

18   than Mr. Izen as his initial counsel, and, if I recollect

19   correctly, that counsel withdrew.  Mr. Accord then represented

20   himself for some time, and then he brought on Mr. Izen.

21   Unfortunately, when you choose an attorney, I mean

22   you need to make sure that that attorney is in good standing,

23   particularly in this case which has been on my docket for some

24   time.  This adversary has been on my docket for some time.  I

25   can't -- how to describe -- simply sit back and say, well, all

10

1  right, this is okay.  I'll entertain further delays because Mr.

2  Accord's second attorney has run afoul of the District Court

3  for being reprimanded or suspended or disbarred.  And as I

4  understand it, what he got was a suspension that's been

5  probated.

6          So, you know, given the length of this particular --

7  the fact that it's been on my docket a long time and that Mr.

8  Accord had an attorney to begin with, someone other than Mr.

9  Izen, I don't see the extenuating circumstances that might be

10 existent if this case were a month old -- this adversary were a

11 month old and Mr. Izen, or two months old and Mr. Izen had come

12 on board from day one and then, woops, we discovered that he's

13 been suspended, even if it's a probated suspension, I think

14 it's somewhat of a different kettle of fish.

15         And then, as I said before, this isn't a criminal

16 action.  And I can understand why District Judge Hughes, for

17 the particular lawsuit in front of him, might have concluded,

18 'Gee, we need to have Mr. Izen stay on board.'  But, as I said

19 once again, that was because in my mind, I differentiate

20 strongly between a criminal action where someone's freedom is

21 at stake for a long time and a bankruptcy case, first point.

22         And the second point is, as I said, again I

23 distinguish between District Judge Hughes who's an Article

24 Three Judge, and myself who's an Article One Judge.  I am a

25 unit of the District Court and I don't think I ought to be

11

1  making decisions that under the Local Rules are to be made by

2  the District Judges.

3       And, you know, if Chief Judge Head, after he reviews

4  Mr. Izen's papers, decides he wants to refer it to me, which I

5  think, if I recollect under the most recent revisions of the

6  applicable Local Rule, he can do; that is, refer it to an

7  Article One Judge, fine, but unless and until Judge Head does

8  that, I just do not feel comfortable granting Mr. Izen's motion

9  to appear *pro hac vice* on this matter.

10       So, I understand your argument; I just disagree with

11  you, and that's where I'm at right now.

12       To the extent that you want to represent -- I

13  certainly have no problem with you representing Mr. Accord for

14  solely today's hearing.  If you decide you want to represent

15  him going forward, I'll certainly allow you to do so.  At least

16  right now, given what I know about this case and given what

17  I've seen, it strikes me that his interests and the interests

18  of the other defendants are aligned, so I don't see a conflict

19  of interest in you representing both Mr. Accord's mother as

20  well as Mr. Accord and Supplement Spot, LLC.

21       Obviously, there's always a risk that whenever you're

22  representing multiple parties, a conflict can break out and the

23  consequences that flow there from, but right now, I don't have

24  a problem with you representing Mr. Accord in addition to your

25  existing representation.  I don't have a problem with Mr.

12

1    Accord getting new counsel, but I am just unwilling to allow

2    Mr. Izen to appear *pro hac vice*.  I will take directions from

3    my Chief Judge or from any District Judge who my Chief Judge

4    appoints.  Or, as I said, if Chief District Judge Head wants to

5    refer the matter to me and let me handle it, then I'll do so.

6    But, that's where I stand right now.

7            **MR. SINGER:**  And I think part of the problem, your

8    Honor, and I understand what the Court is saying, I think part

9    of the problem is that with regard -- And it's my understanding

10   that Mr. Izen has filed the necessary papers but unfortunately,

11   there seems to be no specific time or timing for that to be

12   considered and ruled upon.  And of course, the ticker on this

13   case continues to tick, and so that --

14           **THE COURT:**  I can only, you know -- Again, I have no

15   doubt that Chief Judge Head, you know, he has his own docket.

16   As Chief Judge, he has a lot of administrative duties.  I

17   cannot speak for what Judge Head has on his plate right now or

18   the order or priority that he has.

19           Obviously, part of the problem of running afoul of

20   the grievance committee of the State Bar of Texas is

21   consequences flow from being suspended or being disbarred or

22   having a probated suspension.  And obviously, anyone who

23   appears in the Southern District knows that if they run afoul,

24   they read the Local Rules, that they can lose their right to

25   practice here, and that's what's happened.

1       And I don't have any doubt that Judge Head will at

2   some point in time in the future take the appropriate action,

3   but until he does, I don't feel that there's anything I can do

4   other than comply with the Local Rule, which is why I issued my

5   May 16th order which said he must cease practice.  Okay?

6       **MR. SINGER:**  Okay, your Honor.  Thank you.

7       **THE COURT:**  Thanks.

8       We now get to Young Again Products, Inc.'s -- Well,

9   we now get to John Accord's motion for leave to file amended

10  answer and counterclaim and Young Again Products' opposition to

11  John Accord's motion for leave to file amended answer and

12  counterclaim.

13      Mr. Singer, is that one that you want to argue or do

14  you want Mr. Accord to argue it?

15      **MR. SINGER:**  Your Honor, I'll go ahead and argue

16  that.

17      **THE COURT:**  All right.  Please.

18      **MR. SINGER:**  If I may, your Honor?

19      **THE COURT:**  And let me say I have read the pleadings

20  and the attachments, so I think I'm familiar, but obviously I

21  want to hear the oral arguments.  There may be something I'm

22  missing.

23      **MR. SINGER:**  Did you get the legal authority that was

24  filed this morning?

25      **THE COURT:**  I did.

14

1      **MR. SINGER:**  Okay.

2      Your Honor, then quite simply - If I may proceed?

3      **THE COURT:**  Please.

4      **MR. SINGER:**  Quite simply, as the Court is aware,

5  this is a motion to amend Mr. Accord's answer and to file a

6  counterclaim on his behalf.  And the basis, the main basis of

7  the motion has to do with discovery and discovery that either

8  was slow in forthcoming or incomplete but did come forth.

9      And --

10      **THE COURT:**  Can I ask you a question?

11      **MR. SINGER:**  Yes, your Honor.

12      **THE COURT:**  When I read your pleading, is it your

13  position that Young Again Products, Inc. has not produced

14  documents that it should have produced?

15      **MR. SINGER:**  Yes, your Honor.

16      **THE COURT:**  Can you tell me what documents you

17  believe should have been produced pursuant to past orders that

18  I've issued that have not been produced?

19      **MR. SINGER:**  Generally, I will say this to the Court.

20  There was no financial -- There were no records of financial

21  harm substantiating financial harm that were produced by the

22  plaintiff.

23      **THE COURT:**  In other words, the plaintiff has

24  produced no records to you evidencing the financial harm it has

25  incurred from any actions taken by the defendants?

15

1          **MR. SINGER:**  Correct, your Honor.

2          **THE COURT:**  All right.  That's one category.  What

3    else?

4          **MR. SINGER:**  The plaintiffs have also submitted what

5    I believe is a fairly extensive privilege log to the Court

6    which we question whether or not those items are privileged or

7    not.  And I think until the Court is able to have the time --

8    take the time to review the documents in that log, that issue

9    remains open.

10          **THE COURT:**  Okay.

11          **MR. SINGER:**  And we feel that there's probably a fair

12    amount.  This is nothing but supposition, your Honor, at this

13    point, but we feel there's a fair amount of information in that

14    log that may not be privileged and may be very relevant to the

15    case.

16          **THE COURT:**  Okay.  What else?

17          **MR. SINGER:**  Your Honor, basically what the plaintiff

18    produced in terms of discovery was things that we already had

19    that we already produced to them.  Very little else; very

20    little else.  And at the time that all this transpired with Mr.

21    Izen's prohibition, there will be a forthcoming motion for

22    sanctions based on that discovery, or the absence of it.

23          **THE COURT:**  Okay.  And so your argument is you ought

24    to be allowed to amend on the grounds of discovery abuse?

25          **MR. SINGER:**  Plus new information, your Honor, that

16

1  was derived when Mr. Rios produced to Mr. Izen production that

2  he received from the plaintiff.

3          THE COURT:  Take me through that.

4          MR. SINGER:  There was information relating to

5  communication, and Mr. Accord might be better able to enunciate

6  this because I wasn't part of that loop, but it's my

7  understanding that there was information produced to Mr. Rios

8  showing Mr. Mason's continued efforts to disparate Mr. Accord

9  and to slander his name.

10         THE COURT:  All right.  Can I see those documents?

11 Do you have them with you?

12         MR. SINGER:  No, your Honor, I don't.

13     **(Pause - Mr. Singer confers with Mr. Accord)**

14         THE COURT:  They're in his car?

15     **(No audible response)**

16         THE COURT:  Let's take a break.  I want you to go get

17 those documents so that I can see them.

18         MR. SINGER:  Well, actually -- Well, I got --

19         THE COURT:  While he's looking for them, because it

20 looks like he's pulled some documents out of his briefcase, let

21 me go back to you, Mr. Singer.  Is the sole basis of your

22 motion -- of Mr. Accord's motion for leave to amend -- the sole

23 basis being is that the plaintiff has abused discovery?

24     **(No audible response)**

25         THE COURT:  Do you understand my question?

17

1          MR. SINGER:  Yes, your Honor.  It's based on

2    discovery.  It's based on information that was produced that

3    gives rise to addition allegations and causes of action that

4    the defendant should be able to assert.

5          THE COURT:  Now wait a minute, wait a minute.  Let me

6    try my question again.  You're saying -- Mr. Accord is saying

7    the plaintiff has not produced documents, right?

8          MR. SINGER:  Correct.

9          THE COURT:  And therefore, he is saying because the

10   plaintiff has not produced documents, I ought to be able to

11   have leave of court to amend to sue the plaintiff in a

12   counterclaim.  Am I right?

13         MR. SINGER:  Correct.

14         THE COURT:  Does he have any documents on which to

15   base that counterclaim that were produced by the plaintiff?

16         MR. SINGER:  It's my understanding that in the

17   documents that were produced, and Mr. Rios' answer to that is

18   'Yes'.

19         THE COURT:  The documents that Mr. Rios gave to him?

20         MR. SINGER:  Correct.

21         THE COURT:  I'm asking about the plaintiff's though.

22   Are there any documents the plaintiff gave to him?  Forget

23   about Mr. Rios.  Pretend Mr. Rios didn't even exist and that

24   the Trustee didn't even exist.  Are there any documents that

25   the plaintiff gave to Mr. Accord that he is using in order to

18

1  justify his request to file an amended answer and counterclaim?

2         **MR. SINGER:**  I understand, your Honor.  My response

3  to that is 'No, other than possibly the documentation that was

4  submitted to you under the attorney-client -- or the privilege

5  log.

6         **THE COURT:**  Okay.  Which hasn't been produced to you?

7         **MR. SINGER:**  Correct; which has not.

8         **THE COURT:**  Okay.  Okay.

9         **MR. SINGER:**  But which presumably is in the Court's

10 possession at this point.

11        **THE COURT:**  Okay.  All right.

12        What else?  Any other arguments you want to make?

13        **MR. SINGER:**  No, your Honor, other than the matters

14 submitted under the legal authorities about the criteria to be

15 considered in allowing an amendment, which include the *Smith*

16 ruling that amendments should be allowed even up until the time

17 of the pretrial conference.

18        **THE COURT:**  Mr. Accord, do you have in your

19 possession the documents that Mr. Singer was referring about

20 that Mr. Rios gave to you?

21        **MR. ACCORD:**  Yes, your Honor.  I have basically the

22 analysis that was prepared of the documents which we received

23 from Mr. Mason, okay.

24        **THE COURT:**  Now Mr. Accord, I want you to listen to

25 my question again.

19

1          **MR. ACCORD:**  Yes.

2          **THE COURT:**  Mr. Rios gave you some documents.  Am I

3    right?

4          **MR. ACCORD:**  That is correct, sir.

5          **THE COURT:**  All right.  Mr. Singer represented to me

6    that it's those documents that you are using, at least in part,

7    to justify your request to be able to file an amended pleading

8    to sue Young Again Products.

9          **MR. ACCORD:**  That is correct, sir.

10         **THE COURT:**  Do you have those documents that Mr. Rios

11   produced to you in your possession right now?

12         **MR. ACCORD:**  No, I do not have those documents.

13         **THE COURT:**  Where are those documents?

14         **MR. ACCORD:**  Those documents are in a box sitting in

15   my office.

16         **THE COURT:**  Okay.  Tell me --

17         **MR. ACCORD:**  I didn't realize we were -- that this

18   would be an issue today.

19         **THE COURT:**  Okay.  What documents do you have with

20   you here today?

21         **MR. ACCORD:**  Okay.  I have an analysis of the

22   documents that we received from the plaintiff pursuant to your

23   order of May the 2nd, okay, which were produced on May the 16th.

24   You said that they were to be produced immediately; then you

25   gave them two weeks to produce them.  And I have this analysis

1    that I did for Mr. Izen and Mr. Singer, and I've reviewed it

2    with Mr. Izen but not with Mr. Singer.  And, you know, they're

3    not really in a proper form to present to the Court because we

4    thought the matter today was going to be limited to the motion

5    to amend.

6           But, after Mr. Izen reviewed the documents that the

7    plaintiff gave to Mr. Rios in response to Mr. Rios' subpoena,

8    that was many months afterwards, Mr. Izen came to the

9    conclusion that the documents that he had received from the

10   plaintiff via Mr. Rios did not support their claims.

11          **THE COURT:**  So Mr. Singer, presumably that would mean

12   that Mr. Accord would be filing a motion for summary judgment

13   as to the claims that Young Again has brought against the

14   defendants?

15          **MR. SINGER:**  I think there's a pending motion, your

16   Honor.

17          **THE COURT:**  Got you, okay.  There is.  I just wanted

18   to make sure we follow that train of thought.  That doesn't go

19   to the counterclaim that Mr. Accord seeks to file.  All right.

20          Ms. McClure, let me hear -- Anything else, Mr.

21   Singer, that you wanted to argue?

22          **MR. SINGER:**  Not at this time, your Honor.

23          **THE COURT:**  All right, thanks.

24          Ms. McClure?

25          **MS. MCCLURE:**  Yes, your Honor, very briefly for the

21

1  Court.

2        First of all, the documents that John Accord or Mr.

3  Izen -- In fact, really Mr. Singer received from the plaintiff

4  on May 16th.  Their motion to amend their answer and to add a

5  counterclaim was actually filed on May 5th, eleven days prior

6  to receiving the documents from the plaintiff.  I just want the

7  Court to realize that time line.

8        **THE COURT:**  Well, and as I understand it, what Mr.

9  Singer and Mr. Accord are saying is, none of the documents they

10  got from Young Again Products was helpful to them; that the

11  documents they are relying upon to justify their desire to file

12  an amended pleading or the counterclaim are documents that

13  they've gotten from Mr. Rios.

14        Have I got that right, Mr. Singer?

15        **MR. SINGER:**  Your Honor, that's correct in the time

16  line-wise because I questioned that myself.  Time line-wise,

17  that coincides with the May 5th filing.

18        **THE COURT:**  Okay.

19        **MS. MCCLURE:**  And those were also -- I mean those

20  were documents produced by plaintiff, your Honor.

21        **THE COURT:**  All right.  Now, let's go over that.

22        **MS. MCCLURE:**  Okay.

23        **THE COURT:**  Are you telling me that whatever

24  documents Mr. Rios provided to Mr. Accord, that every single

25  document that Mr. Rios provided to Mr. Accord was also provided

22

1  by Young Again Products to Mr. Accord?

2        **MS. MCCLURE:**  They were produced by the -- Yes, your

3  Honor, they were produced by Young Again Products to Mr. Rios

4  representing the Ben Floyd Chapter 11 Trustee and then were

5  shared with all defense counsel.

6        **THE COURT:**  Okay.

7        **MS. MCCLURE:**  That is correct.  So, those are

8  documents produced by the plaintiff.

9        **THE COURT:**  So Mr. Singer, let me go back to you for

10  a minute.  This sounds like a case of tinkers to evers to

11  chance.  The documents went from Young Again Products, Inc. to

12  Mr. Rios, attorney for the Trustee, who turned around and gave

13  them to you.  It looks like the documents that Young Again

14  Products provided to Mr. Rios were not included in the package

15  of documents that Young Again Products provided directly to Mr.

16  Accord and the other defendants.

17        So, my question to you is: Does that now matter?  As

18  long -- I mean, if Young Again Products had sent those

19  documents, you know, in a package to Mr. Rios and the same set

20  of documents in a package to you all, over and above the

21  documents that they in fact sent, is there any difference

22  between that scenario and the scenario that actually took

23  place, which is Young Again Products sent these documents to

24  Mr. Rios who turned around and gave them to you?

25        **MR. SINGER:**  Your Honor, I'm not sure if I follow

23

1   what you're asking, but my response is that the documents

2   supplied to Mr. Rios were in response to his inquiries, which

3   were different inquiries, different requests than Mr. Accord

4   made, and that in truth we're dealing with two different sets

5   of production.  In the case of Mr. Rios, I presume it was a

6   fairly forthcoming production.

7           In the case of the request for production that Mr.

8   Accord filed that were responded to back on May 16th, the

9   problem there is that the responses were not complete and not

10  responsive.  And then of course, the issue of the privilege

11  log, which we have questions about.

12          **THE COURT:**  We'll get to the privilege log.  Right

13  now what I'm trying to sift through my brain, Mr. Singer, is

14  are you saying that Young Again Products should have sent --

15  that whatever package they gave Mr. Rios that an exact same

16  package should have been given to the defendants?

17          **MR. SINGER:**  No.

18          **THE COURT:**  No.

19          **MR. SINGER:**  No, your Honor.

20          **THE COURT:**  All right.  So you're not saying that

21  Young Again Products was acting in bad faith with that respect.

22  You're saying Young Again Products complied specifically with

23  Mr. Rios' document production request and that you were able to

24  get copies of those documents from Mr. Rios?

25          **MR. SINGER:**  Correct.

24

1          **THE COURT:**  Okay.  Without serving him with

2     discovery?

3          **MR. SINGER:**  Correct.

4          **THE COURT:**  Okay.  So the fundamental part of

5     whatever bad faith allegations you're making towards Young

6     Again Products is solely on the privilege log.  You're saying

7     that they are trying to keep out as privileged documents that

8     are really not privileged?

9          **MR. SINGER:**  Well, based on the privilege log but

10    also on the fact that the discovery that was actually produced

11    was far short of what had been requested.

12         **THE COURT:**  Let me try this on you then.  Category

13    ones are documents that haven't been produced to you because

14    they are described in the privilege log?

15         **MR. SINGER:**  Correct.

16         **THE COURT:**  And your argument is: 'Hey, some or all

17    of those documents aren't privileged; therefore, they should be

18    produced.'

19         Category twos are documents that are not actually

20    described in the privilege log and therefore are not being

21    claimed as privileged but which nevertheless have not been

22    turned over to you?

23         **MR. SINGER:**  Yes, your Honor.

24         **THE COURT:**  So you're saying there is the bad faith

25    on behalf of Young Again Products because there are documents

1   that they actually have that are not privileged that they

2   haven't turned over?

3           **MR. SINGER:** Right.

4           **THE COURT:** Can you give me a description of any of

5   that category of documents?

6           **MR. SINGER:** Well, Mr. Accord, that was the analysis

7   that he was referring to, and we didn't have it prepared to be

8   filed today but can we tender that to the Court?

9           **THE COURT:** Let me see what he's talking about.

10          **(Pause)**

11          **THE COURT:** You can just give it to Ms. Attaway here.

12          **(Mr. Singer provides the document to the Clerk)**

13          **THE COURT:** Thanks.

14          **(Pause - The Court reviews the document)**

15          **THE COURT:** Okay. So right here it says any -- These

16  are documents to be produced, document production request which

17  Mr. Accord sent to Young Again Products, is that right?

18          **MR. SINGER:** Yes, your Honor.

19          **THE COURT:** Okay. So the first one says 'Any and all

20  documents referring or relating to the preparation and

21  transmission of any communication by yourself or anyone

22  associated with yourself and/or acting in your behalf related

23  to any communication sent to Robert Goobey (phonetic).

24          And then Mr. Accord writes here: 'Mason only produced

25  documents previously attached to motions and complaints filed

1   in this action and related actions in Maryland and Utah.  No

2   other documents were produced.  Accord can demonstrate that

3   Mason is concealing and refusing to produce documents based on

4   the attached communications between Goobey and Mason obtained

5   from Robert Goobey and other third parties.'

6          So in other words, am I right that Mr. Accord is

7   willing to take the stand under oath and give testimony to

8   demonstrate that Mr. Mason is concealing and refusing to

9   produce documents?

10          **MR. ACCORD:**  Yes, certainly.

11          **MR. SINGER:**  Stand up when you address the Court.

12      **(Mr. Accord rises)**

13          **MR. ACCORD:**  Yes, I am.

14          **THE COURT:**  All right.

15          And Mr. Accord, your answer would also be true with

16   respect to request number two, request number three, request

17   number four, request number five, request number six, request

18   number seven, request number eight, request number nine,

19   request number ten, request number 11, request number 12,

20   request number 13, request number 14, and request number 15, is

21   that correct?

22          **MR. ACCORD:**  That's true, sir.

23          **THE COURT:**  All right.  How much time in a hearing do

24   you need?  If you were to take the stand under oath and swear

25   and try to prove to me that Mr. Mason has concealed and refused

1   to produce documents, how much court time do you need?  Do you

2   need an hour?  Two hours?  Three hours?  Four hours?

3          **MR. ACCORD:** Gosh, I think -- I've got banker's boxes

4   full of evidence, and then I have the exhibits.

5          **THE COURT:** Just answer my question.  How many hours

6   do you need, do you estimate --

7          **MR. ACCORD:** I would --

8          **THE COURT:** -- for you to take the stand and give

9   testimony?  Forget about any cross examination; just for you to

10  take the stand and give testimony?

11         **MR. ACCORD:** At least two hours, your Honor.

12         **THE COURT:** All right.  Let me give this document

13  back to you.

14      **(The Court returns the document to Mr. Accord)**

15         **THE COURT:** Ms. McClure, you can go ahead and proceed

16  with any arguments.

17         **MS. MCCLURE:** Thank you, your Honor.

18         **THE COURT:** Let me ask first of all, or it may be

19  second now that I've already peppered you with some questions

20  that led me to have Mr. Accord respond.

21         Mr. Singer says that you provided no documents

22  showing financial harm to Young Again Products, Inc.  Do you

23  agree with that?

24         **MS. MCCLURE:** No, absolutely not.

25         **THE COURT:** All right.

28

1      **MS. MCCLURE:**  We provided on May 16th four banker's

2  boxes, your Honor.

3      **THE COURT:**  Okay.

4      **MS. MCCLURE:**  Plus, we put -- we spent an exorbitant

5  amount of time attaching all of our -- a lot of the financial

6  harm or damage to our proofs of claim, which are certainly

7  already of record with this Court.  We have produced the

8  financial harm documents to John Accord, all defendants in this

9  case.

10      **THE COURT:**  Are they Bate stamped?

11      **MS. MCCLURE:**  I don't recall that they are.

12      **THE COURT:**  Well, here's what's going to happen, Ms.

13  McClure.

14      **MS. MCCLURE:**  Oh, yes, your Honor.

15      **THE COURT:**  Okay.

16      **MS. MCCLURE:**  I'm sorry; Mr. Rios confirms that they

17  are.

18      **MR. RIOS:**  Your Honor, I'm not a hundred percent

19  certain but I do remember having a discussion with one Mr.

20  Freeman about Bate stamp numbers on the documents.

21      **MS. MCCLURE:**  Right.

22      **THE COURT:**  Okay.  Well, what I want to avoid is

23  this: At trial for Mr. Accord or his counsel to stand up and

24  say, 'Your Honor, the financial -- the statement -- the

25  documents they want to get into evidence evidencing financial

29

1  harm to the plaintiff, they didn't produce them to us.'  And if

2  you've done discovery properly, you will have Bate stamped the

3  documents that are being marked as exhibits for me to admit or

4  not admit, and you'll have kept track of what documents you

5  produced to the defendants.

6          And so if the documents are Bate stamped and you've

7  got transmittal letters showing that you delivered them or

8  someone wants to testify that you delivered them, then you'll

9  be able to prove them up, but if they're not Bate stamped and

10 you can't prove to me -- And let me say that'll hurt you if

11 they're not Bate stamped, then I won't allow the documents in

12 and you won't be able to prove financial harm.

13          **MS. MCCLURE:**  Absolutely.

14          **THE COURT:**  All right.

15          **MS. MCCLURE:**  Absolutely.

16          **THE COURT:**  I just want to make that clear.

17          **MS. MCCLURE:**  Absolutely.

18          **THE COURT:**  All right.  Mr. Singer, what Ms. McClure

19 is saying is that the documents are Bate stamped and that they

20 have been turned over to you, which means that when they go to

21 prove up their case on financial harm, the documents are going

22 to be Bate stamped.

23          You're going to have the booklet of documents that

24 are proposed to be exhibits prior to trial, and if they're not

25 Bate stamped, you can certainly raise an objection.  If they

30

1    are Bate stamped, then you can raise an objection but, you

2    know, the last time I checked, I think if you've got Bate

3    stamped documents and you've turned them over and the attorney

4    who has produced them takes the stand and says 'I turned them

5    over and here is the Bate stamped log that I kept', it's very

6    tough to overcome that but, you know, I'll certainly give you a

7    chance to do that.

8           This case has constantly had document production

9    problems, and you know, I insisted that all the documents be

10   turned over.  We're going to go to the privilege log in a

11   minute.  But when you tell me that you have no documents

12   showing financial harm, Ms. McClure is telling me you do; how

13   many documents are we talking about?  Five?  Five hundred?  Do

14   we know?

15           **MS. MCCLURE:**  I know we turned over four banker's

16   boxes full of documents.

17           **THE COURT:**  Okay.  Now those banker boxes full of

18   documents, are there documents in there showing financial harm?

19           **MS. MCCLURE:**  Yes, your Honor.

20           **THE COURT:**  Okay.  Can you identify one or two of

21   them for me?

22           **MS. MCCLURE:**  Attorney invoices from Utah, as an

23   example.

24           **THE COURT:**  Okay.

25           Mr. Singer, I mean that strikes me that if attorney's

31

1    invoices from Utah that show attorney's fees had to be incurred

2    that that's evidence of financial harm.  Now, you can argue

3    whether that's, you know, whether those fees are reasonable and

4    that kind of thing, but in terms of the documentation being

5    produced, that's certainly one piece of documentary evidence.

6           **MR. SINGER:**  I understand, your Honor.

7           **THE COURT:**  Okay.  I think you have to wait and see

8    what exhibit booklets you get.

9           **MR. SINGER:**  I'm sorry; say that again, Judge.

10          **THE COURT:**  I said, 'I think you need to wait and see

11   what exhibit booklets you get', and then you can look and say,

12   'Okay, there's a Bate stamped document that came in the boxes

13   that Ms. McClure sent.'

14          I know when I did discovery, if I sent you four boxes

15   of documents, they were all Bate stamped and I had the exact

16   same four boxes of documents in my office with a transmittal

17   letter so that I could prove up, if I ever had to, that these

18   documents were delivered on this date and in this form.  So, I

19   trust that's what went on here and, you know, save and except

20   if you're going to be arguing to me that Ms. McClure and her

21   co-counsel are flat-out lying to me, that they didn't produce

22   the documents, I have to presume that the documents have been

23   produced if they're Bate stamped and counsel has represented to

24   me that these Bate stamped documents have been produced.

25          **MR. SINGER:**  Your Honor, not uncharacteristic of the

32

1   way things have gone in this case, generally Mr. Accord says

2   that, and I can't say personally but he indicates that the

3   documents were not Bate stamped.  That'll be one issue that

4   will be simple to establish.

5           THE COURT:  I was going to say, that's an easy one to

6   establish.  They either were or they weren't.

7           MR. SINGER:  Probably the easiest one in this case.

8           THE COURT:  Okay.  So, all right; keep going, Ms.

9   McClure.  Are there any other arguments you want to make?

10          MS. MCCLURE:  Yes, your Honor.  First of all, their

11  first counterclaim that they want to get in is a Rule 11 motion

12  per se, and of course they haven't sent the 21-day letter, and

13  it's certainly not proper in a countersuit.  It's --

14          THE COURT:  Let's stop there.

15          Mr. Singer, are you aware of the Rule 11 counterclaim

16  that's been filed?

17          MR. SINGER:  Your Honor, honestly I --

18          THE COURT:  Or that's proposed to be filed?

19          MR. SINGER:  I was not aware of that, your Honor.

20          THE COURT:  All right.  Would you agree that with

21  respect to a 9011 claim that you have to give 21 days notice in

22  writing?

23          MR. SINGER:  Yes, your Honor.  Of course, on this

24  issue, and I could be completely off base on this; my thinking

25  is that the threshold issue is whether the Court will permit or

33

1   not permit the filing of the counterclaim.  And then if there

2   are allegations -- this is just my take on this.  If there are

3   allegations, causes of action asserted in that counterclaim,

4   whether it's one or two or all of them, then those matters

5   could be addressed separately.  But to me, the threshold issue

6   is whether the Court will permit the filing of the

7   counterclaim.

8            **THE COURT:**  Well, at least on a 9011, I disagree with

9   you.  For you to be able to seek leave of court to file a 9011,

10  you need to comply with the fundamental requirements of 9011,

11  and that's including, among other things, giving written notice

12  and saying 'You've got 21 days to clean this up, and if you

13  don't, then I'll seek leave to file a 9011 counterclaim.'

14           So, since no 21-day notice appears to have been sent,

15  I think that's one counterclaim that there's no way I could

16  grant leave to allow because the conditions precedent haven't

17  been met.  Okay.  Thanks, Mr. Singer.

18           Ms. McClure?

19           **MS. MCCLURE:**  Yes, your Honor.  The second cause of

20  action, your Honor, by John Accord is tortious interference

21  with a business and employment relationship.  We have the first

22  to file court up in Maryland, defendants' counterclaim with

23  jury demand.  We attached to our opposition; that was filed in

24  John Accord's -- in the Maryland case, in the District of

25  Maryland, Southern Division.

34

1          John Accord is representing himself up in Maryland,

2   your Honor.  He has been very litigious concerning that

3   tortious interference with business and employment relations.

4   That covers his second counterclaim, and --

5          THE COURT:  In other words, what you're telling me,

6   let me make sure I understand, Ms. McClure.  Are you telling me

7   that Mr. Accord already has a counterclaim of this type on file

8   in the pending Maryland District Court action?

9          MS. MCCLURE:  Absolutely, and it's a very active case

10  and it has not been -- that action has not been disposed of.

11         THE COURT:  Mr. Singer, can you respond to that

12  argument?

13         MR. SINGER:  Your Honor, the only thing I have to say

14  on that is that, as the Court knows, this is a very litigious

15  case here in Houston, and so much of what you, the Court, will

16  hear, the trier of fact will hear, is going to necessarily

17  involve other matters pending in other courts.

18         THE COURT:  But if the same cause of action has

19  already been pending in the United States District Court for

20  the District of Maryland, am I not -- How to describe? --

21  trampling upon that Judge's right to adjudicate a cause of

22  action that was pending before him or her before it was brought

23  to me?

24         MR. SINGER:  I understand, your Honor.

25         THE COURT:  I mean, I think I have the right -- At a

35

1  minimum, I have the right to abstain from that, and I will.  I

2  mean, I don't think I should be getting involved in

3  adjudicating a matter that's already been brought before a

4  different court and is pending.  The fact that Mr. Accord may

5  be representing himself pro se up there I think is really

6  beside the point.  I don't want to get in the business of

7  interfering with the claims being adjudicated by another court

8  that were filed in that court before they were filed in my

9  court.

10         Even though I may be hearing testimony in my court

11  about the causes of action that Young Again has brought against

12  these defendants and some of the testimony may overlap, I still

13  don't want to be usurping the adjudication powers of the

14  Article Three Judge up in Maryland who's actually been

15  adjudicating disputes among these parties before I came into

16  the picture.

17         So, with respect to that cause of action, I'm going

18  to deny the motion for leave because it's already before

19  another court and I don't want to impinge upon that other

20  court's adjudication powers.

21         All right.  Ms. McClure, what's next?

22         **MS. MCCLURE:**  Next, your Honor, is the affirmative

23  defenses if you will in a proposed first amended answer.  Your

24  Honor, certainly, and we filed our opposition that I know that

25  the Court has read, but *res judicata* and estoppel should have

36

1   been pled early on.  Even though Mr. Accord acts like he had

2   been pro se for a long time and didn't know what he was doing,

3   he filed a general denial if you will back, I believe it was in

4   April of 2007, but he had a Mr. Williams as his attorney all

5   the way through October of 2007.

6          If we're going to be going into any affirmative

7   defenses which should have been filed many, many moons ago,

8   your Honor, it would cause a delay in the trial because based

9   on due process, we would need to go into the discovery issues

10  concerning that, and I know --

11          **THE COURT:**  What issues would you need to conduct on

12  discovery?  I mean, if he's claiming *res judicata* or collateral

13  estoppel, isn't that due to issues that have already been tried

14  or claims that have already been adjudicated in the Utah and

15  Maryland matters?

16      **(No audible response)**

17          **THE COURT:**  I mean, it seems to me, Ms. McClure, your

18  co-counsel is so well-versed in those causes of action that

19  they would know what issues have been actually litigated among

20  all the same parties or what claims have already been tried

21  among all the same parties.  I mean, I'm trying to noodle what

22  discovery --

23          **MS. MCCLURE:**  Right.

24          **THE COURT:**  -- would even need to be conducted.  I

25  mean, no additional documents would need to be produced.

37

1   You're certainly not going to depose Mr. Accord about *res*

2   *judicata* and collateral estoppel if you've got some judgment

3   from the Utah court or Maryland court that says 'X' and Mr.

4   Accord says, 'Aha, there's the collateral estoppel', then you

5   can tell me as a matter of law why that's not true.

6           **MS. MCCLURE:**  As long as we can keep, your Honor, Mr.

7   Accord from going into the things that are being litigated up

8   in Maryland as well as the Rule 11 situation.  Certainly as far

9   as --

10           **THE COURT:**  Well, let me just tell you I've already

11   ruled on Rule 11.

12           **MS. MCCLURE:**  Okay.

13           **THE COURT:**  I'm not going to allow -- I'm not going

14   to grant leave of court to allow him to prosecute a Rule 11.

15   The conditions precedent haven't even been met.

16           **MS. MCCLURE:**  Right.

17           **THE COURT:**  I'm not going to allow leave of court to

18   allow him to file the counterclaim on tortious interference

19   because that one's already pending up in Maryland.

20           **MS. MCCLURE:**  Okay.

21           **THE COURT:**  So that brings us down to can he claim

22   the affirmative defenses of collateral estoppel and *res*

23   *judicata*, and I'll allow leave to amend that because I think

24   those principles of law don't require any additional discovery.

25   And, if there's some -- Frankly, if there's some issue that the

38

1   Maryland court or the Utah court has already tried and

2   adjudicated, where all the parties have been in those courts, I

3   don't want to be trying and adjudicating it again.

4         MS. MCCLURE:  Right; I understand.

5         THE COURT:  If it works to your client's favor, then

6   fine, we'll make that part of the record.  If it works to Mr.

7   Accord's favor, then we'll make that part of the record, but I

8   certainly don't want to be giving people a second bite at the

9   apple.

10        And so, I'll allow -- I'll grant the motion for leave

11  to allow the pleading of the affirmative defenses of collateral

12  estoppel and *res judicata*.

13        MS. MCCLURE:  Okay.

14        THE COURT:  All right.

15        MS. MCCLURE:  Other than the fact, your Honor, he's

16  coming into court at this late date.  I mean, our pretrial

17  conference if you will is on July 10th.

18        THE COURT:  I understand.  But again, you know, if he

19  was coming in here saying, you know, the affirmative defense

20  of, pick one, you know, forgery, you know, where you had to

21  take depositions to see, that would be a totally different

22  story.  But, you know, for the same reason I don't want to

23  allow the tortious interference suit to be brought in my court,

24  I don't want to be retrying issues that the Maryland court and

25  the Utah court have already decided.

1          **MS. MCCLURE:**  Absolutely.

2          **THE COURT:**  As long as we've got the same parties and

3    those issues had to be necessarily decided, I have no clue --

4    Well, I have some clue I guess from seeing past judgments from

5    those courts, but I'm sure I don't have every order that either

6    of those courts have signed, but presumably, those can be

7    included as part of any exhibits.  But I don't want to get in

8    the business of playing an appellate, you know, Article One

9    Judge plays appellate Judge -- appellate court for an Article

10   Three Judge in Utah and an Article Three Judge in Maryland.

11   That sounds great.  I mean --

12         **MS. MCCLURE:**  **(Laughs)**  I understand.

13         **THE COURT:**  -- I ought to have my head examined --

14         **MS. MCCLURE:**  I appreciate that.

15         **THE COURT:**  -- if I'm going to do that.  And even if

16   it were two bankruptcy Judges in Maryland and Utah, I ought not

17   to be playing appellate judge on issues that have been actually

18   and necessarily litigated in those forums.

19         So I'll allow the motion for leave to amend to

20   expressly allow the affirmative defenses of collateral estoppel

21   and *res judicata*.

22         Ms. McClure, I'll ask you to draft an order for Mr.

23   Singer to sign as to form saying 'A hearing was held for the

24   reasons set forth on the record.'

25         I grant in part and deny in part the motion for

40

1   leave.  It's granted in part only insofar as it's the

2   affirmative defenses of *res judicata* and collateral estoppel.

3   It's denied in part with respect to any counterclaims that are

4   sought to be pled.

5           **MS. MCCLURE:**  That's fine with me, your Honor.

6           **THE COURT:**  I'll need that order within seven days.

7           **MS. MCCLURE:**  I'll get it to you by tomorrow.

8           **THE COURT:**  Okay.  Mr. Singer, you'll need to sign

9   off as to form, Mr. Singer.

10          **MR. SINGER:**  Yes, your Honor.

11          **THE COURT:**  All right.

12          Let's go to this privilege log.  Do you happen to

13  have the privilege log here?

14          **MS. MCCLURE:**  I do not, your Honor.

15          **THE COURT:**  Okay.

16          **MS. MCCLURE:**  It's been filed with the Court.

17          **THE COURT:**  Can you tell me when?

18          **MS. MCCLURE:**  It was May -- It should have been right

19  after May 16th.

20          **THE COURT:**  Let me see if I can find it.

21          **MR. SINGER:**  It was like three days.  Three days,

22  your Honor.

23          **THE COURT:**  Off the top of my head, I have to tell

24  you I don't remember seeing it, which doesn't mean you didn't

25  file it.