IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
AT HOUSTON, TEXAS

IN RE: SUPPLEMENT SPOT, LLC,  §
  DEBTOR,        §  CASE NO. 06-35903
           §  CHAPTER 11
YOUNG AGAIN PRODUCTS, INC.,  §
  PLAINTIFF,      §
           §
VS.           §  ADVERSARY NO. 07-3019
           §
SUPPLEMENT SPOT, LLC, ET AL,  §
  DEFENDANTS,     §

**DEFENDANT, JOHN ACORD'S, MOTION TO IMPOSE SANCTIONS UNDER RULE 37(b) F.R.CIV.P. AND 7037(b) F.R.BKR.P., INHERENT POWER OF THE COURT (CHAMBERS V. NASCO), AND TITLE 28 U.S.C. § 1927**

TO THE HONORABLE UNITED STATES BANKRUPTCY JUDGE:

  COMES NOW, the Defendant, John Acord ("ACORD") and files this his Motion to Impose Sanctions Pursuant to Rule 37 F.R.Civ.P. and 7037(b) F.R.Bkr.P., the Inherent Power of this Court as defined by the United States Supreme Court in Chambers v. NASCO, and Title 28 U.S.C. § 1927 and, in support of said Motion, would show this Court the following:

**SYNOPSIS OF RECORD**

I.

  1.  Previously, this Court entered an Order on May 2, 2008 granting Defendant Acord's Motion to Compel Discovery, Docket No. 173.  The Court made the following entry, "Documents are to be produced." Plaintiff, Young Again, then filed an "Emergency Motion for Clarification of May 2, 2008 Order" on May 7, 2008. Docket No. 175.

  2.  This Court entered an order on May 15, 2008 clarifying its May 2, 2008 Order, Docket No. 182.  On May 20, 2008, Plaintiff, Young Again, filed a privilege log with the Court purport-

ing to list documents in its possession, custody, and/or control, which were privileged from discovery. Docket No. 186. On June 27, 2008, Plaintiff, Young Again, filed a "Revised Privilege Log" with the Court. Docket No. 205. On July 9, 2008, Plaintiff, Young Again, filed what it called an "Emergency Motion to Seal or for Order Directing John Acord to Destroy Documents." Docket No. 228.

3. On July 24, 2008, this Court entered an order overruling the objections of Defendant, John Acord, to Plaintiff's Expedited Motion for Clarification. Docket No. 234. On July 28, 2008, Plaintiff, Young Again, filed what it called an "Emergency Motion for Reconsideration." Docket No. 245. On July 30, 2008, the United States District Judge Lynn N. Hughes signed a "reviewing decision letter." Docket No. 249. On May 21, 2008, Plaintiff, Young Again, filed what it described as an "Emergency Motion to Seal Exhibit 2 to Young Again Products, Inc.'s Opposition to Defendant's Joint Motion for Sanctions and Contempt against Plaintiff and Its Attorneys. Docket No. 258.

4. Plaintiff, Young Again, and its attorneys Freeman and McClure represented to this Court that all documents which had been withheld from production had been described in the privilege log(s) (original and revised). After reviewing the documents submitted by Plaintiff, Young Again in camera this Court allowed a few redactions and directed Plaintiff to turn over the remainder of the documents to the Defendant Acord.

5. This Court recommended withdrawal of reference to the District Court before the scheduled trial concluded. The Federal District Clerk assigned this case to the United States District

Judge Nancy Atlas. After conducting an initial status confer-
ence, Judge Atlas ruled that the case was not ready for trial and
referred this matter back to this Court for disposition of all
pretrial matters.

6. This Court invited reconsideration of its prior Order
denying Acord's attorney, Joe Alfred Izen, Jr.'s, Motion for
Leave to Appear Pro Hac Vice. After granting reconsideration and
allowing attorney Izen to appear once more as Defendant Acord's
attorney, this Court conducted a hearing concerning all pending
motions.

7. Defendant Acord's attorney elected to withdraw Acord's
pro se Motions for Contempt and Sanctions and sought leave, and
additional time to prepare and file new motion(s) if he deemed
the same warranted under the facts of this case and existing law.

8. After careful review of this Court's prior discovery
orders, statements of attorneys contained in transcripts, and
sworn testimony of witnesses in prior hearings, coupled with a
comparative analysis of the discovery and testimony adduced in
this case, Defendant Acord brings this Motion for Sanctions on
the following basis:

## **FACTUAL BASIS SUPPORTING SANCTIONS UNDER RULE 37 F.R.CIV.P., RULE 7037 F.R.BKR.P., INHERENT POWER OF THIS COURT (CHAMBERS V. NASCO), AND 28 U.S.C. §1927**

II.

1. **FRAUD ON COURT:** On January 11, 2008 and December 14,
2007, Young Again attorney Freeman wrote a threatening letter to
third party witness, Vicki Pitts:

> We hereby demand that you immediately cease and desist
> form (sic) providing any further information to Any
> Person, firm or entity, including Mr. Acord, Ms. Orte-

3

ga, Supplement Spot, **except as required by court order**
or authorized in writing by YAP.

Furthermore, we understand that you have on your compu-
ters 99% of all emails sent by Roger Mason to you, to
YAP's customers, and/or which were received from YAP's
customers.   See Exhibit No. 1 attached hereto (emails
between Vicki Pitts and John Acord). **Enclosed herewith
is a federal Subpoena requiring the production of all
documents, emails, letters, and/or other business
information you have disclosed to Mr. Acord and for all
documents, emails, and/or other communications you have
had with John Acord, Marcella Ortega, Sean Ortega,
and/or Supplement Spot.   Moreover, the subpoena re-
quires the production of any and all other information,.
emails, correspondence, customer lists/data of Young
Again Products, Inc. in your possession which includes,
but is not necessarily limited to, the 99% of all
emails you have saved on your computer(s).**

**Please understand that the subpoena is a court order
requiring you to produce the documents by noon, on
Friday, January 25, 2008.**

True and correct copies of Freeman's January 11, 2008 and Decem-

ber 14, 2007 letters to Vicki Pitts are attached hereto as Exhi-

bits A and B.

2.   Contrary to Mr. Freeman's "instructions" to the witness,

no court order prevented the witness Pitts from turning over the

subpoenaed documents to Acord, Ortega, and Supplement Spot.   Nor

was a court order required in order for her to do so.   As parties

in this case, the Maryland case, and the Utah case, they were

absolutely entitled to inspect and copy all documents produced

under the third party subpoena Rule 9016 F.R.B.P.    Rule 45

F.R.Civ.P.

3.   The admissions contained in attorney Freeman's letters

establish that he subpoenaed records from third party witness

Vicki Pitts while fraudulently instructing her not to make such

records available to the other parties to the case.   Rule 45

requires an attorney issuing a third party subpoena as an "offi-

4

cer of the Court" to file a notice of the issuance of such third party subpoena and to serve such notice, and the subpoena itself, on all parties to an action.   Review of the docket sheet in this case reveals no such notice filing by Young Again ("YAP"). Review of the Maryland docket sheet reveals no such notice of filing by the Plaintiff.   Attorney Freeman's false instructions to the witness concerning the subpoena, coupled with the failure to comply with Rule 45's notice provisions seems to establish intentional abuse of the Court's subpoena and discovery process. Perhaps an issuing attorney could be ignorant of Rule 45's notice and filing requirements while, at the same time falsely instructing the witness to keep the production under the Court's subpoenas secret.   But what are the odds?

4.   In her response to attorney Freeman's threatening letters on January 25, 2008, third party witness Vicki Pitts responds to the subpoena "filed in the Bankruptcy Court for the District of Arizona (?)" and describes the documents she "shipped" to Plaintiff's counsel Freeman on January 25, 2008.   A true and correct copy of witness Vicki Pitts' response to attorney Freeman's letter is attached hereto and marked Exhibit C.   The Pitts' response to the subpoena should have been produced for inspection and copying by all parties to the case in which the subpoena was issued as well as in this case.   All parties should have received prior notice of the service of the subpoena.   Even if Plaintiff's counsel McClure's representation that the subpoena in question was issued in the Maryland case is true, McClure's (and presumably Freeman's) claim that John Acord, Marcella Ortega, and Ben Floyd, the Trustee for Supplement Spot, had no right

to access to the documents is false. Nor can such abuse be discounted as mere ignorance of counsel.

5. On August 30, 2007, Plaintiff's attorney McClure wrote a threatening letter to Defendant, John Acord, describing in great detail, all of Young Again's purported rights to discovery under the Federal Bankruptcy Rules. McClure cautioned Acord:

Specifically you are instructed not to destroy, disable, erase, encrypt, alter, **or otherwise make unavailable** any electronic evidence or other documents relevant to the claims asserted in the pending cases.

Attorney Freeman's instructions to third party witness Vicki Pitts seem specifically calculated to make discoverable documents unavailable. Clearly, attorney Freeman failed to follow the admonition of his own co-counsel. A true and correct copy of McClure's threatening letter to Defendant Acord is attached hereto, marked Exhibit D, and is incorporated by reference. The statements contained in McClure's letter are an admission by a party opponent, binding on Plaintiff, Young Again, and establish that Plaintiff and its attorneys understood the requirements of discovery under the Federal Bankruptcy Rules and that secreting documents produced in compliance with the subpoena abuses the Court's discovery processes. Nor can Plaintiff's attorneys claim they were unaware of Rule 45's notice / filing requirements. Attorney McClure filed such a notice in the overlying Bankruptcy Case No. 06-35903. See entry dated January 16, 2007, Docket No. 73. A true and correct copy of that docket entry is attached hereto, marked Exhibit E, and is incorporated by reference. Nor can Plaintiff's attorney McClure deny knowledge that the documents she is asking this Court to destroy through a "Motion to

6

Seal" were not subpoenaed.  At the last hearing before this Court

on November 18, 2008, attorney McClure admits knowledge that John

Acord was a party to the Maryland case with the following boast:

> In fact Mr. Acord was up there yesterday on a contempt
> motion against Mr. Mason.   Mr. Acord was sanctioned
> $24,000 for his frivolous contempt motion.   So it's
> ongoing in front of Judge Titus.

Exhibit F, P. 5, LL 14-18.

    6. Despite her clear knowledge of Rule 45's requirements,

Ms. McClure represented:

> And John Acord -- once our relationship with Vicki
> Pitts went south, we had to subpoena the documents from
> her for our own safekeeping.  Mr. Acord went around us
> without ever asking in any of the discovery requests
> for anything pertaining to Vicki Pitts.   He went
> straight to her, got the documents from her.  He never
> had any right to them.

Exhibit F, P. 5, LL 23-25; P. 6, LL 1-4.

    7.  A true and correct copy of excerpts of the transcript

from the November 18, 2008 hearing are attached hereto as Exhibit

F.  In YAP speak, uttered through its counsel, intentional sub-

poena of its own documents occurs:

> Inadvertently if you will...through no fault of our
> own.

Exhibit F, P. 6, LL 8-12.

    8.  As will be seen hereafter, the only "smoking guns" found

in this case are the fraudulent use of the Maryland subpoena to

suppress documents coupled with and the fraud extortion and abuse

of the  Court's process which permeate the emails and documents

In "Exhibit 2" which YAP and its counsel seek to destroy.

    9.   When Acord's attorney Izen announced:

> I am glad to hear that Ms. McClure says these documents
> were subpoenaed.  And I am going to state that I assume
> for purposes of this argument that they were subpoenaed

in this case. If so, her comment that no party has a right to them but the Freemans is totally bogus under the Rules.

See Exhibit F, P. 6, LL 18-23. Ms. McClure fumed, with much hauteur:

And for the record, the documents were not subpoenaed by the Freeman law firm in this case. They were in the Maryland case.

See Exhibit F, P. 8, LL 10-13.

10. Mr. Acord informs his counsel that he has requested that the third party witness Vicki Pitts produce the subpoena referred to in Freeman's letters. (See Exhibits A and B). If, as claimed by Ms. McClure, the subpoena in question was issued in the Maryland case, it should not bear a United States Bankruptcy Court for the District of Arizona caption. Such a third party out of District Bankruptcy subpoena could be issued in is the case at Bar.

11. By preparing the privilege log and submitting all documents to this Court in YAP's possession, custody, or control, which have not already been produced for in camera review by this Court, YAP's counsel represented that no other documents were in their possession, custody, or control. Poole v. Texron, Inc., 192 F.R.D. 444, 503 (D.Md. 2000). YAP's counsel were well aware of this Court's prior orders requiring all the documents to be produced and allowing YAP to withhold only the documents in YAP'S or its counsel's possession which were described in the privilege log and submitted to the Court for in camera review. A true and correct copy of this Court's ruling admonishing attorneys Freeman and McClure to produce the documents is attached hereto, as Exhibit G. This Court stated at that time:

We are going to trial.  Mr. Acord took the risk of representing himself pro se and he finally went out and got you as his counsel, and that's good.  But I am not extending deadlines.  This case is going to be tried as scheduled because I am not going to continue.  My feeling about this case is the more continuances I grant, the more acrimonious it will get, the more discovery problems it will get and the more time we are going to waste in this courtroom on discovery disputes. We are going to try it. We are going to put people under oath...Get the documents produced. **If they ain't produced, there will be a take-nothing judgment.** Plaintiffs stop fiddling around, give Mr. Acord the documents.  We are going to try this thing and we are going to keep it on schedule. **And, as I said, if documents aren't going to be produced, I ain't going to give a judgment as anything other than take nothing.**

See Exhibit G, P. 23, LL 9-12 and LL 17-25; P. 24, LL 9-11.  A true and correct copy of the transcript of the hearing on May 2, 2008 is attached hereto as Exhibit G.  Based on third party witness Vicki Pitts' response to the Freeman's subpoena(s) YAP's counsel had the Pitts' documents in their possession by February 1, 2008.  (Compare Exhibit C with Exhibits A and B.)  A true and correct copy of YAP's Revised Privilege Log filed on June 27, 2008 is attached hereto and marked Exhibit K.  YAP's earlier Privilege Log, filed May 20, 2008, appears at Docket No. 186. True and correct copies of email correspondence between third party witness Vicki Pitts and YAP corporate principal Roger Mason, arranged in chronological order, that are contained in Exhibit 2 (which YAP and its counsel seek to destroy) are attached as Exhibit I.  A careful comparison of the entries in YAP's Privilege Log made by its counsel and the email correspondence YAP and its counsel seek to destroy contained in Exhibit I establishes that the Revised Privilege Log contains only two document references to correspondence with witness Vicki Pitts.   See

Exhibit K, P. 4, Tab 24 and 25. Defendant Acord states that if called to the stand to testify under oath, he would state that he provided these two letters to YAP and its counsel in discovery.

12. If third party witness Vicki Pitts produced the documents described in her letter to YAP counsel Freeman on or about February 1, 2008, at least one of YAP's counsel seems to have committed a massive fraud on Court in the descriptions and submission of YAP's Privilege Log(s). The documents YAP and its counsel wish to destroy are the very documents YAP and its counsel should have described in the Privilege Log and submitted to the Court for in camera review. Suppression or concealment of documents required to be produced in discovery or described in a privilege log in violation of Court Orders is fraud on Court. See Okros, infra.

13. Thus, the record in this seems to display a pattern by YAP's counsel and YAP itself in suppressing and secreting records and documents and abuse of discovery. Perhaps YAP's attorneys innocently excluded the description of the documents attorney Freeman secretly extracted from Vicki Pitts through clandestine use of the Court's subpoena? But what are the odds?

14. Finally, in light of the thread of emails contained in Exhibit I wherein one party is responding to another, YAP's counsel either knew or should have known that any claim that the laws of physics were suspended with respect to delivery of electronic information to YAP's computers was false. (Acord's counsel awaits receipt of a transcript of Roger Mason testimony and attorney Freeman's and/or McClure's representations concerning this "technology gap" so he can quote them verbatim.) YAP's

counsel knew or should have known such statements were false based on the documents contained in Exhibit 2 which are analyzed below.

**PERJURY BY ROGER MASON:**

15. The travail of mistreatment heaped upon Defendant Acord by YAP does not end with abuse of the Court's subpoena process and the apparent suppression and concealment of documents by its counsel or YAP's failure to comply with discovery.

16. Early on in this case, when the Court was apparently faced with the difficult task of discerning fraud, described by one grizzled Judge as the task of determining:

...Who's been a 'thievin' and who's been a'grievin'..."

the Court took over questioning of YAP'S principal, Roger Mason, and inquired as follows:

| | |
|---|---|
| THE COURT: | Thank you. Mr. Mason, how are you employed? |
| MR. MASON: | I am the President of Young Again Products. |
| THE COURT: | All right. Mr. Mason, do you know Mr. Acord? |
| MR. MASON: | Yes, I do, sir. |
| THE COURT: | All right. The document that has been marked as Exhibit No. 1 -- |
| MR. MASON: | Yes, sir. |
| THE COURT: | -- Do you have it in front of you? |
| MR. MASON: | Yes. |
| THE COURT: | Did you send that document to Mr. Acord? |
| MR. MASON: | No sir. |
| THE COURT: | Is that your handwriting? |
| MR. MASON: | No, sir. |

THE COURT:      Do you know whose handwriting it is?

MR. MASON:      No sir.

THE COURT:      **Do you have any idea who sent this document to Mr. Acord?**

MR. MASON:      **None whatsoever.**

THE COURT:      **All right. And you do not recognize the handwriting of anyone you know that is on the document?**

MR. MASON:      **Not at all.**

THE COURT:      **All right. Let's go to Exhibit No. 2. Is that a document -- and Exhibit No. 2 is a two-page document, is it not?**

MR. MASON:      **Yes, it is.**

THE COURT:      **All right. The second Page of Exhibit 2, there is handwriting on it; am I right?**

MR. MASON:      **Yes, sir.**

THE COURT:      **Is that your handwriting?**

MR. MASON:      **It's printing, sir, and it's not my printing.**

MR. COURT:      **All right.**

MR. MASON:      It's printing and --

THE COURT:      It was done either in pen or pencil; is that fair?

MR. MASON:      Something.  May I say something?

THE COURT:      Sure.

MR. MASON:      There is a zip code at the bottom, and the 7 are unique. It is my understand-ing this is the European style of wri-ting.

THE COURT:      Okay.  Well, let me just ask you.

MR. MASON:      Yes sir.

THE COURT:      **Did you write that?**

MR. MASON;      **No sir.**

THE COURT:      Okay.  Do you know who did write it?

MR. MASON:      No, sir.

THE COURT:      Let's go to the first page of Exhibit 2.
                Prior  to today, have you ever seen  the
                first page of Exhibit 2?

MR. MASON:      Yes, I have.

THE COURT:      All right.  When do you see it?

MR. MASON:      When my attorneys gave it to me.

THE COURT:      How long ago was that, roughly?  I mean,
                one  month  ago? Two months  ago?   Three
                months ago?

MR. MASON:      Less than a year, I believe.

**THE COURT:      Did you participate in drawing the  pic-
                ture that is on the first page of  Exhi-
                bit 2?**

**MR. MASON:      No, sir.**

**THE COURT:      Okay.  Do you know who did?**

**MR. MASON:      No, sir.**

See Exhibit H, P. 8, LL 9-25; P. 9, LL 1-25; P. 10, LL 1-25.   A

true and correct copy of portions of the transcript of the status

conference conducted on Thursday, December 13, 2007, are attached

hereto as Exhibit H.

    17.   This Court carefully questioned YAP's principal Mason

concerning a Pet Cemetary cartoon and the postal envelope in

which it was delivered to John Acord after admonishing all par-

ties that it intended to issue whatever orders were necessary to

protect its processes under 11 U.S.C. § 105.   YAP's principal

Mason well knew of the materiality of his responses to the

Court's determination of whether its processes were being abused.

A true and correct copy of the Pet Cemetary cartoon and the

13

envelop are attached hereto as Exhibit J.   The Pet Cemetary
cartoon contains the following notations on cartoon tomb stones:

    1.   Queer No. 1
    2.   Beaner
    3.   Fag
    4.   Pansy
    5.   Gump
    6.   John Acord Born to lose (with a date of death)
    8.   Homo
    9.   UNMARKED

Admitting that he had this cartoon in his possession for almost a
year places the date Mason received a copy of Exhibit J to on or
about December 13, 2006.   A comparison cf Exhibit J with the
Mason-Pitts emails which YAP and its counsel want destroyed
reveals the following language.[1]   By March 28, 2005, Mason
writes:

> He really thinks the IRS is just stupid baboons on
> coffee breaks, of course he felt the same way about the
> authorities before he went to jail twice before. The
> third time they really tend to throw away the key.  If
> he gets ten years (you serve 8.5) he will die in jail.
> No one will claim the body **and he will be buried in an
> unmarked grave** in the back yard of the Springfield
> medical hospital in Missouri, with **queers,** figs, per-
> verts, dements, **beaners,** sickos, child molesters, and
> all his other friends.

See Exhibit I, email dated March 28, 2005.   Perhaps, there are
other "twisted misters" in the world who use the same foul ver-
nacular as YAP's principal Mason?  Perhaps the author of the Pet
Cemetary cartoon acted alone in the absence of any Mason involve-
ment and Mason was able to describe the content of the cartoon
including the unmarked grave in his email to Pitts by divine (or
more likely diabolical) revelation?  But what are the odds?

--------------------

1.   The Court will note that as the years progress Mason's emails in Exhibit
I become fouler and fouler.

18. While YAP's principal Mason denied any involvement in the mailing of the Pet Cemetary cartoon, his propensity for using others as a mail drop for his malodorous and extortionate "inventory sharking" operations is borne out by the following note written to Pitts:

P.S.  Next week you will get an envelope to drop in the mail box.  A guy burnt us on a stock deal and it's pay back time.  All perfectly legal.  I am just explaining to his wife what he does when he is on business trips and I know people who know him.

See Exhibit I, email dated October 10, 2005.

19. Perhaps the use of Vicki Pitts (whom he later threatens and extorts) as a mail drop is an aberration and he has never done it before or since? But what are the odds?

20. Finally, when challenged why the emails compelled to be produced by this Court's order have not been provided, (Acord's counsel is informed) Mason, and his counsel, claimed that a strange technology "gap" existed between his computer and his server operated by America On Line which acted as a barrier to transmission so that he did not retain copies of sent and received emails.  The transcript of this Mason testimony has been ordered and is not yet available. Once more, YAP's principal Mason knew that his responses to questions concerning YAP's failures to comply with discovery were material to the Court's inquiry.   Once more, Mason's claim repeated with presumably a straight face by YAP's counsel in their representations to the Court was that Mason **never received copies of the emails through the server maintained by America On Line.**   Let us examine this claim more carefully.   Exhibit I email dated September 26, 2004 contains a letter from witness Vicki Pitts to Mason.   Clearly,

one  email is a response to the other.

> When I registered late night (I did not do it at Name
> Secure) it pretty much tied the information to the
> credit card.   So it has my information.   There was a
> place where it asked about the business and I put Young
> Again Products, Inc.    And you have this in writing
> right here, that I registered these for you and they
> are yours.

Roger Mason writes:

> Would you please register Total Minerals.com

21.    Other responsive emails include the emails dated Octo-
ber 8, 2004, and October 10, 2004.  How could Roger Mason respond
to Vicki Pitts' email or Vicki Pitts respond to Roger Mason's
emails the AOL server was not sending or receiving their emails?
If Mason got no copies, Mason could not respond to Pitts and
Pitts could not respond to Mason.   Perhaps YAP's principal Mason
is possessed of such mental powers that he could intercept and
decipher the emails, in cyberspace, through the powers of his
brain alone (similar to his email description of the Pet Cemetary
cartoon) without the necessity of reading from a computer screen
or the printed page?  But what are the odds?  The above compari-
son of YAP'S principal Mason's testimony with the record leaves
an abiding conviction that perjury has been committed.    But
towards what purpose?  The answer can be found in the bragadoccio
Mason apparently loves to engage in with his captive email audi-
ence:

> S and S do not want to get into a court battle with us
> for a lot of reasons.   They know we have cash (they
> don't).  **Are vicious,** have the best civil attorneys in
> the D.C. area and win every case we get involved in.

See Exhibit I, email dated September 25, 2004.  Unfortunately for
those who are sucked into YAP's and Mason's inventory sharking

16

operation, the venture seems to end badly for each vendor with the filing of criminal charges to collect a (supposed) debt. See Exhibit I, emails dated August 6, 2006. Contrary to YAP's and its counsel's claims of an ether gap that mysteriously sucked in and destroyed all emails before they were delivered to Mason's computer, YAP apparently had no difficulty in maintaining sufficient communication by email, and otherwise, to carry on its campaign of extortion which purports to convert a civil debt owed by a vendor into a criminal theft at Mason's and his **vicious** attorney's whim.

22. Perhaps a million dollar natural supplement business which YAP claims to be, would tolerate this "cybersucking" of its emails for years, without changing email services despite the massive lost sales and disorganization which must have ensued? But what are the odds?

23. Statisticians teach us that in a natural world the occurrence of one improbable event does not negate the possibility of the occurrence of another. The history of man kind, (at least in litigation) teaches us that a human actor committing a series of fraudulent and abusive acts directed towards one purpose will, in high probably, become a serial abuser and fraudster.

24. Could the above-described violations of the Rules have been committed innocently by ethical attorney(s) whose only goal is to see that Justice was done in this or in the other related cases? Has Roger Mason been truthful with the Court, who, at YAP's attorneys' behest actually jailed Defendant Acord based on competing claims to credibility? Sadly, the answer to both ques-

17

tions is "no."  This Court has been duped and has unwittingly become an appendage to Roger Mason's (and perhaps his attorney(s)?) inventory sharking operations which threatens criminal prosecution to collect a simple civil debt, which commits fraud on Court to conceal documents, and which covers up elicit and improper use of Court processes through commission of perjury.  See Okros, infra for definition.

25.    The above facts transcend mere destruction or concealment of records, abuse of the Court's subpoena power, or discovery abuse.

26.    This Court should grant, or recommend a remedy to the District Court which will not only take the profit, but also the fun, out of the YAP / Mason inventory sharking operation and sends  a clear message to attorneys that they must avoid any complicity with their clients in carrying out such abusive litigation or face the financial as well as ethical consequences.

### LEGAL ARGUMENT AND AUTHORITY IN SUPPORT OF MOTION FOR SANCTIONS

II.

**LEGAL GROUNDS FOR SANCTIONS:**

1.    Rule 7037 F.R.B.P. applies Rule 37 Federal Rules of Civil Procedure to Adversary Proceedings.  Under Rule 37(b) this Court has the power to dismiss YAP's actions for the above transgressions based solely on YAP's failure to comply with the Court's discovery orders.  The Supreme Court of the United States made it clear, in Chambers v. NASCO, that all Federal Courts (including even the Bankruptcy Court under 11 U.S.C. § 105 as previously alluded to by this Court) have a responsibility to

keep their processes clean and to take whatever steps are necessary to deter, as well as punish, those who foul the Court's processes by fraudulent or abusive acts. Title 28 U.S.C. § 1927 is directed at attorneys only. While there is some dispute as to whether an act sanctionable under § 1927 **requires** a finding of bad faith § 1927 punishes an offending attorney who "vexatiously" increases costs or expense of a proceeding by imposing the costs including attorney's fees which were incurred by opposing parties on the attorney committing the (vexatious) conduct. Rule 45, F.R.Civ.P. made binding in this action under Rule 9016 F.R.B.P. provides a separate ground for sanctions based on abuse of the third party subpoena process. That role allows recovery of all damages suffered by any party as a result of the abuse of the Court's third party subpoena process.

2. Rule 37(b), this Court's inherent powers (Chambers v. NASCO), Rule 9016 F.R.B.P., Rule 45 F.R.Civ.P.) and 28 U.S.C. § 1927 provide this Court with ample authority to impose the sanctions in this case which it deems equitable and just and which will serve the purpose of preventing a repetition of the kind of abuse presented by this record.

**FRAUD ON COURT:**

3. As pointed out by the United States Court of Appeals for the Sixth Circuit in Okros v. Angelo Iafrate Const. Co., 07-1455 (6th Cir. 10-17-2008), fraud on Court consists of conduct:

(1). On the part of an officer of the Court;
(2) That is directed to the judicial machinery itself;
(3) That is intentionally false, willfully blind to the truth, or is in reckless disregard for the truth;
(4) That is positive averment or as concealment when one is under a duty to disclose;

19

(5)   That deceives the Court.

Okros, Lois Law Slip Opinion.   Citing Demjanjuk v. Petrovsky, 10
F.3d 338, 348 (6th Cir. 1993).  Clearly, YAP's attorneys are
officers of the Court.  Clearly, YAP's attorney's claims that YAP
had acted in good faith and turned over all the documents neces-
sary to comply with the Court's discovery orders were "directed
to the judicial machinery itself."  Any representation that all
documents in YAP's possession, custody, or control, were tendered
with the privilege log, under this record, were one of the fol-
lowing:

        Intentionally false
        Willfully blind to the truth
        Made in reckless disregard for the truth

A party is required to produce all discoverable documents in its
possession.   The party's attorney must make a reasonable effort
to insure the client has produced all the documents responsive to
the discovery requests and the Court's orders.  Poole at 192
F.R.D. 503.  Clearly, YAP's counsel were under a positive duty to
disclose and documents were concealed from the Court's in camera
review -- the same documents YAP suggests that this Court should
destroy.   Finally, YAP's representations concerning discovery in
this case through its attorneys have continually deceived this
Court.   Having analyzed all the evidence attached to this motion,
which was not available during Roger Mason's December testimony
set out in Exhibit H, is the Court still comfortable with having
jailed Defendant Acord based on attorney McClure's representa-
tions of non-receipt from Defendant Acord of documents which he
supposedly controlled in the hands of third parties?

        4.   Clearly, all five elements of the Okros fraud on Court

test are present here.

**VIOLATION OF RULE 45 AND THE COURT'S SUBPOENA PROCESS:**

5. Apparently, YAP's counsel believe that they can issue subpoenas without notice, fraudulently instruct subpoenaed witnesses not to voluntarily produce documents in their possession to the other parties in the case where the subpoena is issued and then secret the production. Attorney Freeman and/or McClure have displayed a penchant for taking judicial powers onto themselves. One such previous example was YAP's refusal to produce the documents compelled by this Court in Houston where YAP filed its Bankruptcy action. Another example is YAP's failure to voluntarily produce the documents requested or subpoenaed from it by the Trustee Floyd's counsel when requested. (Defendant ultimately received copies of those records from the Trustee after they were apparently produced to the Trustee.) Intentional fraudulent non-disclosure during discovery can form the basis of a claim for fraud on Court. Demjanjuk, 10 F.3d at 338. Buell v. Anderson, 48 F.App'x. 491, 499 (6th Cir. 2002). A fraudulent scheme to suppress documents pursued pursuant to third party subpoenas under Rule 45 qualifies as fraud on Court under this test as surely as a counsel's intentional omission of discoverable documents from a privilege log.

**ATTORNEY CLIENT PRIVILEGE AND WORK PRODUCT IMMUNITY:**

6. Based on YAP's violation of this Court's discovery orders, this Court need not concern itself with YAP's spurious claims that the thread of emails between YAP's predatory supplier, Roger Mason, and his enthralled vendor, Vicki Pitts, have anything to do with the plotting or formulation of any legal

21

advice or legal strategy given by YAP's counsel or pursued in this case.   Pitts was never aware that she was being "questioned" for the purposes of legal advice or law suits.   Mason's odious emails contained in "Exhibit 2" could not be the legitimate discourse of any attorney seeking to provide his/her client with bona fide legal advice consistent with the Rules of Ethics binding on this Court's practice which, in all Courts of this country, require attorneys to respect the rights of third parties. The intentional assertion of bogus claims of attorney-client privilege is, itself, a ground for discovery sanctions.   In the Matter of the Complaint of Omega Protein, Inc., No. 2:04-CV-2071 (W.D. La. 1-17-2007).   Citing Upjohn Co. v. United States, 101 S.Ct. 677, 685 (1981). (An employee must be aware they are being questioned for legal advice.)   The crime fraud tort exception exempts from the privilege any communications intended to further the harm of a business or person from the attorney-client privilege.   Flexible Benefits Council v. Feldman, No. 1:08-CV-371 (JCC) (E.D. Va. 10-8-2008). Citing United States v. Jones, 696 F.2d 1069, 1072 (4th Cir. 1982).   The communication must relate to the attorney's representation.   Mere communications to business associates are not privileged.   Flexible Benefits Council. Threatening letters such as Roger Mason's diatribes against the world in general and Defendant Acord and his sixty-six year old mother ("the old hag") are also exempted from the privilege. D'Amario v. U.S., (N.J. 12-7-2005) C.A. No. 04-221 (JEI).   Vicki Pitts had no need to know any of the information contained in Mason's diatribes.   Mason's "twisted mister" mentality compelled him to make such revelations with witness Vicki Pitts as the

hapless audience. No expression was ever made to her in any of the emails that any of the information was confidential. Nor was there any agreement of confidentiality. Neither the attorney-client privilege nor the work product immunity applies to any of the communications in "Exhibit 2." Nero v. Target Corp., Case No. 04-C-6267 (N.D. Ill. 6-7-2007). Citing Baxter Travenol Labs, Inc. v. Abbott Labs, No. 84C-5103, 1987 WL 12919 (N.D. Ill. 6-19-1987) (Where the client is a corporation, the privilege is waived if the communications are disclosed to employees who do not need access to the communication.)

In light of the content of the emails themselves, it is hard to conceive how any attorney could claim in good faith that Mason's diatribes were the product of legitimate legal practice or work by YAP's attorneys. None of the letters contained in "Exhibit 2" that YAP and its counsel want destroyed fit the definition of legitimate work product stated in Performance After market, P.Gr. v. TI GR. Auto Sys., No. H-05-4251 (S.D. Tex. 5-11-2007). Letters containing damaging or incriminating information or facts are not privileged. Doe v. Elwood Public School Dist., 7:04-CV-5011 (Neb. 12-18-2006).

7.    A party's voluntary subpoena of its own records is a waiver of any privilege. Westinghouse v. Republic of the Phillipines, 951 F.2d 1414, 1427 n. 14 (3d Cir. 1991).

**RULE 45 VIOLATIONS:**

8.    Violation of Rule 45 is a grounds for sanctions. Most jurisdictions recognize a separate cause of action for abuse of subpoena or Court process. Watson v. State, CV-04-16-H-CSO (Mont. 7-27-2006). Welch v. Centex Home Equity Co., LLC, No. 03-

2132-JWL-DJW (D.Kan. 2004). <u>Automotive</u> <u>Inspection</u> <u>Services</u> <u>v.</u> <u>Flint</u> <u>Auto</u> <u>Auction</u>, No. 06-15100 (E.D. Mich. 11-9-2007). <u>Murphy</u> <u>v.</u> <u>Board</u> <u>of</u> <u>Education</u> <u>of</u> <u>Rochester</u> <u>City</u> <u>School</u> <u>Dist.,</u> 196 F.R.D. 220 (N.D. N.Y. 9-12-2000). <u>U.S.</u> <u>v.</u> <u>Santiago-Lugo</u>, 904 F.Supp. 43 (P.R. 1995).

9. Finally, "claw back" relief is reserved for those who innocently and inadvertently produce their own privileged documents. <u>Adams</u> <u>v.</u> <u>U.S.,</u> No. 03-0049-E-DLW (Idaho 7-3-2008). A party that fails to protect its own privilege waives that privilege. <u>Phoenix</u> <u>Solutions,</u> <u>Inc.</u> <u>v.</u> <u>Wells</u> <u>Fargo</u> <u>Bank,</u> <u>N.A</u>, No. C08-00863-MHP (N.D. Cal. 10-22-2008).

<u>Williams</u> <u>v.</u> <u>Taser</u> <u>International,</u> <u>Inc.,</u> No. 1:06-CV-0051-RWS (N.D. Ga. 1-22-2008). Refusal to provide documents for Court review of the validity of a claimed privilege waives the privilege. <u>Carrizosa</u> <u>v.</u> <u>Stassinos</u>, No. 05-2280 RMW (N.D. Cal. 2006). Disclosure of privileged materials to an ordinary agent waives any claim of privilege. <u>MLC</u> <u>Automotive,</u> <u>LLC</u> <u>v.</u> <u>Town</u> <u>of</u> <u>Southern</u> <u>Pines</u>, No. 1:05-CV-1078 (N.D. N.C. 1-11-2007).

## CONCLUSION

The only "gap" which exists in this case is one in YAP's honesty. This Court should enter an order striking Plaintiff YAP's pleadings in their entirety and issue a take nothing judgment on all claims which YAP made, or could have made, in this case, with prejudice. This Court should award monetary sanctions against Plaintiff YAP for the total cost expended by Defendant Acord in defending these proceedings including those costs he was ordered by this Court to pay during the occurrence of any misconduct described in this motion.

If this Court has any lingering doubts concerning the facts, the deposition of third party witness Vicki Pitts should be taken and, thereafter, this Court should grant the relief prayed for above.

Respectfully submitted,

S/ Joe Alfred Izen, Jr.

Joe Alfred Izen, Jr.
5222 Spruce Street
Bellaire, Texas   77401
(713) 668-8815
(713) 668-9402 FAX

## CERTIFICATE OF OPPOSITION

This motion is opposed.

s/ Joe Alfred Izen, Jr.

Joe Alfred Izen, Jr.

## CERTIFICATE OF SERVICE

I certify that a true and correct copy of the foregoing document was sent to Margaret M. McClure, the Trustee, and all parties by electronic transmission on this the 12th day of December, 2008.

S/ Joe Alfred Izen, Jr.

ACORSAN.M4S/TK410

Joe Alfred Izen, Jr.

25

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
AT HOUSTON, TEXAS

| | | |
|---|---|---|
| IN RE: SUPPLEMENT SPOT, LLC, | § | |
| DEBTOR, | § | CASE NO. 06-35903 |
| | § | CHAPTER 11 |
| YOUNG AGAIN PRODUCTS, INC., | § | |
| PLAINTIFF, | § | |
| | § | |
| VS. | § | ADVERSARY NO. 07-3019 |
| | § | |
| SUPPLEMENT SPOT, LLC, ET AL, | § | |
| DEFENDANTS, | § | |

## ORDER ON
### DEFENDANT, JOHN ACORD'S, MOTION TO IMPOSE SANCTIONS UNDER RULE 37(b) F.R.CIV.P. AND 7037(b) F.R.BKR.P., INHERENT POWER OF THE COURT (CHAMBERS V. NASCO), AND TITLE 28 U.S.C. § 1927

BEFORE the Court on this the _____ day of December, 2008, came on to be heard the Defendant, John Acord's, Motion to Impose Sanctions Under Rule 37(b) F.R.Civ.P. and 7037(b) F.R.Bkr.P., Inherent Power of the Court (Chambers v. NASCO) and Title 28 U.S.C. § 1927, and the Court, after due consideration of said motion, the Court is of the opinion that relief should be granted. It is therefore;

ORDERED that Plaintiff YAP's pleadings ARE / ARE NOT stricken in their entirety. It is further;

ORDERED that the Court SHALL / SHALL not issue a take nothing judgment on all claims which YAP made or could have been made in this case, with prejudice. This Court should award monetary sanctions against Plaintiff YAP for the total cost expended by Defendant Acord in defending these proceedings including those costs he was ordered by this Court to pay during the occurrence of misconduct alleged in this motion in the amount of $_____.

SIGNED on this the ___ day of _____, 2008.


_____
JUDGE PRESIDING