# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE SOUTHERN DISTRICT OF TEXAS
### HOUSTON DIVISION

ENTERED
07/08/2009

| | | |
|---|---|---|
| In re: | § | |
| | § | Case No. 06-35903-H4-11 |
| SUPPLEMENT SPOT, LLC, | § | |
| | § | |
| Debtor. | § | |
| | § | |

| | | |
|---|---|---|
| YOUNG AGAIN PRODUCTS, INC., | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | |
| | § | |
| SUPPLEMENT SPOT, LLC, | § | Adversary No. 07-03019 |
| JOHN ACORD, and | § | |
| MARCELLA ORTEGA, | § | |
| Defendants. | § | |
| | § | |

**MEMORANDUM OPINION ON (1) YOUNG AGAIN PRODUCTS, INC.'S MOTIONS IN LIMINE; (2) PLAINTIFF'S EMERGENCY MOTION TO SEAL AND ORDER JOHN ACORD TO DESTROY THE EXHIBITS ATTACHED TO HIS MOTION TO STRIKE; (3) YOUNG AGAIN PRODUCTS, INC'S MOTION TO SEAL EXHIBIT 2 IN SUPPORT OF ITS OPPOSITION TO DEFENDANTS' JOINT MOTION FOR SANCTIONS AND CONTEMPT AGAINST PLAINTIFF AND ITS ATTORNEYS; AND (4) YOUNG AGAIN PRODUCTS, INC'S MOTION FOR PROTECTIVE ORDER TO PRECLUDE DEFENDANTS FROM USING OR DISCLOSING YAP'S PROPRIETARY BUSINESS INFORMATION AND COMMUNICATIONS PRODUCED BY MR. MASON OR MS. PITTS TO FURTHER DEFENDANTS' OWN BUSINESS INTERESTS OR TO GAIN AN [sic] COMPETITIVE BUSINESS ADVANTAGE**
[Docket Nos. 206, 228, 258, & 307][1]

---

[1] Any reference to a "Docket No." herein is a reference to a docket number in the adversary proceeding number 07-03019. Any reference to a pleading filed on the docket in the main case will be identified with the main case number 06-35903.

## I. INTRODUCTION

Although the reference has been withdrawn in this adversary proceeding, this Memorandum Opinion resolves pretrial matters in this adversary proceeding pursuant to instructions from the Honorable Nancy F. Atlas, United States District Judge for the Southern District of Texas. The remainder of this highly acrimonious lawsuit will be addressed at trial in the United States District Court.

In this Memorandum Opinion, this Court will resolve four pretrial motions which the plaintiff has filed: a motion in limine, two motions to seal documents, and a motion for a protective order. In the motions to seal, the plaintiff has requested this Court to seal approximately 1,900 documents based on its sweeping and non-specific assertion that some or all of these documents are privileged. Because the plaintiff has not identified which of these documents are privileged, it has necessarily requested this Court to wade through this sea of documents to determine which are entitled to protection. Despite the fact that the plaintiff bears the burden of showing, with specificity, which documents are privileged, this Court has conducted an independent review of all these documents and finds that the plaintiff is not entitled to the relief that it seeks in the motions to seal.

After considering the arguments and pleadings of the parties, the testimony adduced at the hearings, and the evidence admitted, the Court now makes its written findings of fact and conclusions of law pursuant to Federal Rules of Bankruptcy Procedure 7052 and 9014.[2] To the extent that any finding of fact is construed as a conclusion of law, it is adopted as such. Moreover, to the extent that any conclusion of law is construed as a finding of fact, it is adopted as such. The

---

[2] Any reference herein to "the Code" refers to the United States Bankruptcy Code. Further, reference to any section (i.e. §) refers to a section in 11 U.S.C., which is the United States Bankruptcy Code. Reference to a "Rule" or "Bankruptcy Rule" refers to the Federal Rules of Bankruptcy Procedure.

Court reserves its right to make additional findings of fact and conclusions of law as it deems appropriate or as may be requested by any of the parties.

## II. FINDINGS OF FACT

1.  On November 3, 2006, Supplement Spot, LLC (the Debtor) filed a voluntary Chapter 11 petition. [Case No. 06-35903, Docket No. 1.] The Debtor sells nutritional supplements and health-related products. Marcella Ortega (Ortega) is the sole owner and president of the Debtor, and John Acord (Acord) is an employee of the Debtor and Ortega's son.

2.  On January 24, 2007, Young Again Products, Inc. (YAP) filed its Complaint (the Complaint) against the Debtor, Ortega, and Acord (collectively, the Defendants) initiating this adversary proceeding.[3]  [Docket No. 1.] In the Complaint, YAP seeks recovery for alleged fraud and civil conspiracy in an amount not less than $1.1 million (comprising $100,000.00 in compensatory damages and $1,000,000.00 in punitive damages) and the appointment of a Chapter 11 trustee. Specifically, the Complaint alleges that Ortega and Acord, as insiders of the Debtor, failed to disclose assets of the Debtor's estate, perpetrated fraud, and absconded with those assets.

3.  On March 1, 2007, in the main case, the Court approved the appointment of Ben B. Floyd as the Chapter 11 trustee (the Trustee), effective as of February 28, 2007. [Case No. 06-35903, Docket No. 100.]

4.  Roger Mason (Mason) is the president of YAP. [Docket No. 262, p.49.] YAP is a business entity incorporated under the laws of Maryland and is an unsecured creditor listed on the

---

[3] See *infra* Finding of Fact Number 28 noting that the Court signed the Stipulation of Dismissal of Claims dismissing with prejudice YAP's claims against the Debtor but not the other two Defendants—Acord and Ortega. [Docket No. 297.]

Debtor's bankruptcy schedules.   YAP sells nutritional supplements and health-related products.  Mason assisted Vicki Pitts (Pitts) with her own web-based business, "The Natural Woman" (a nutritional supplement business which sold inventory supplied by YAP through Mason).  Pitts developed a business relationship with YAP in 2004 which lasted until 2006.  [Joint Ex. 1., p.39, Il. 8-19.][4]

5.      Numerous e-mails between "Yap1993" (i.e. Mason or Ivey Mason's[5] e-mail username) and "VFPitts" (i.e. Pitts's e-mail username) are on a flash drive labeled "YAP & Δs 3," admitted into evidence as Joint Exhibit 3 (Joint Ex. 3).  In an e-mail dated "1/7/2005" from Ivey Mason to Pitts, Ivey Mason states:

> I will need to send you a 1099 misc. tax form for the money you received from YAP Internet in 2004.  I will verify the amount with you when I'm done.  You act as an "independent contractor" and YAP Internet pays you the monthly payments for your services.  You know you need to pay taxes from these earnings.

[Joint Ex. 3, "Scan319.bmp".]

In an e-mail dated "2/9/2006" from Mason and Ivey Mason to Pitts, they informed Pitts as follows:

> [W]e have sent out 1099 forms today based on the finalized computations of the transfers and withdrawals relating to both you and subcontractors compensation . . . . [Y]ap internet via these transfers and withdrawals had an expense that was paid to you and others as compensation. [T]his entire amount has to be reported on 1099 forms. . . . [A]s yap's internet contractor, we are required to provide you with this form. . . . [F]inally, as we discussed, we will be providing you with our YAP Internet Contractor Agreement outlining the above.

---

[4] On February 26, 2009, Pitts gave her deposition.  Joint Exhibit 1 refers to Pitts's deposition which was admitted into evidence as "YAP & JA & Δs 1" (Joint Ex. 1).  *See infra* Finding of Fact No. 34.

[5] Ivey Mason is Mason's wife and was involved in the operations of YAP.

[Joint Ex. 3, "888.bmp".]

6.     On May 20, 2008, YAP, through its counsel, filed a Privilege Log with this Court (the Original Privilege Log). [Docket No. 186.]

7.     On June 23, 2008, this Court held a hearing on Acord's Motion for Leave to File First Amended Answer and Counterclaim (Acord's Motion for Leave). [Docket No. 174.] YAP filed a Response opposing Acord's Motion for Leave. [Docket No. 187.] After considering the pleadings and listening to oral arguments, the Court ruled from the bench that Acord's Motion for Leave was granted in part and denied in part. The Court granted Acord's Motion for Leave to allow Acord to amend his answer so that he could plead the affirmative defenses of *res judicata* and collateral estoppel; however, the Court denied Acord's Motion for Leave in all other respects, including denying Acord leave to file a claim for defamation and tortuous interference with business relations. On July 7, 2008, the Court issued a written order consistent with this oral ruling. [Docket No. 220.]

8.     Additionally, at the June 23, 2008 hearing, the Court asked YAP to produce the unredacted copies of the documents listed in the Original Privilege Log. The Court instructed YAP's counsel to produce these documents in a sealed envelope to chambers by June 30, 2008—which she did.

9.     On June 27, 2008, YAP filed a Revised Privilege Log. [Docket No. 205.] The Revised Privilege Log lacked certain documents which YAP now seeks to have sealed for privilege reasons. Additionally, YAP's counsel admitted on the record at a hearing held on December

19, 2008 that YAP failed to produce some of these documents to this Court for *in camera* review.[6]   [Docket No. 304, pp. 72-73.]

10.   On June 27, 2008, YAP filed a Motion in Limine.  [Docket No. 206.]  In its Motion in Limine, YAP moved for the Court to exclude any evidence, testimony, or argument by the Defendants regarding two categories of evidence:  (1) "any evidence, testimony, or argument by the Defendants regarding any alleged derogatory and/or defamatory statements by YAP and/or Roger Mason against Marcella Ortega ('Ortega'), John Acord ('Acord') or Supplement Spot ('the Debtor')" (the unresolved portion of the Motion in Limine); and (2) any criminal convictions or incarceration of Mason.

11.   On July 3, 2008, YAP, Acord, Ortega, and the Debtor (through the Trustee) filed their Joint Pretrial Statement. [Docket No. 211.]

12.   On July 7, 2008, Acord filed a Motion to Strike Plaintiff's Pleadings and Hold Roger W. Mason and Thomas Freeman[7] in Contempt (the Motion to Strike), [Docket No. 224], along with attached exhibits.  These attached exhibits include documents Pitts provided to Acord which, according to YAP, are privileged documents.  The present discovery dispute concerns these attached documents.

13.   On July 9, 2008, Acord, joined by Ortega, filed their Opposition to Plaintiff's Motion in Liminie [sic].  [Docket No. 225.]

---

[6] The Court referenced these documents at the hearing held on December 19, 2008.  When asked by this Court which documents are the ones allegedly "secreted" by YAP's counsel, Acord's counsel, Joe A. Izen, stated that these documents are what YAP's counsel referred to as Exhibit 2. [Docket No. 304, pp. 66-67.]

[7] Thomas Freeman (Freeman) is YAP's counsel in Maryland who is admitted *pro hac vice* in this Court.

14.     On July 9, 2008, YAP filed an Emergency Motion to Seal and Order John Acord to Destroy

the Exhibits Attached to His Motion to Strike (the First Motion to Seal),  [Docket No. 228];

and on August 21, 2008, YAP filed its Motion to Seal Exhibit 2 in Support of its Opposition

to Defendants' Joint Motion for Sanctions and Contempt Against Plaintiff and its Attorneys

(the Second Motion to Seal), [Docket No. 258] (collectively, the Motions to Seal).  In the

Motions to Seal, YAP requests that the Court seal, and order Acord to destroy, the

documents attached to Acord's Motion to Strike, along with any other documents Acord has

received from Pitts.  In the First Motion to Seal, YAP argues that these "documents contain

attorney-client privileged and work product documents, mental impressions of the president

of Young Again Products, Inc., and its attorneys, Freeman & Freeman and divulge Plaintiff's

litigation strategy in the Maryland federal litigation." [Docket No. 228, ¶ 1.]  In the Second

Motion to Seal, YAP argues that the documents attached as "Exhibit 2" to its Opposition to

Defendant's Joint Motion for Sanctions and Contempt Against Plaintiff and its Attorneys are

"communications protected under the attorney-client privilege and work product doctrine.

. . . mental impressions of the president of Young Again Products, Inc. and its attorneys,

Freeman & Freeman, P.C. and communications divulging Plaintiff's litigation strategy in the

Maryland federal litigation."  [Docket No. 258, ¶ 1-2.]  YAP argues that sealing these

documents is necessary because disclosure to the public or any non-party will result in

immediate, substantial, and irreparable harm to YAP.  [Docket No. 258, ¶ 4.]  The Motions

to Seal may be considered together because the documents referenced in the First Motion to

Seal (i.e. the documents attached to Acord's Motion to Strike) include the same documents

referenced in the Second Motion to Seal (i.e. Exhibit 2 of YAP's Opposition to Acord and

Ortega's Joint Motion for Sanctions and Contempt).  Because of this overlap, the Court will

hereinafter refer to both sets of documents, collectively, as "the Documents."

15.     On July 9, 2008, this Court held a pretrial conference on, among other matters, the First

Motion to Seal.  At this hearing, the Court questioned Freeman as to why he did not turn over

all documents in his law firm's possession to Acord.  The Court then ordered Freeman to

turn over redacted copies of documents to Acord by 5:00 p.m. on July 10, 2008.  Freeman

made the following arguments with respect to the First Motion to Seal:

> We just learned yesterday that there were 400 odd pages of materials that
> came into the possession of Mr. Acord that was taken from our servers from
> a former employee of ours.  Those communications are replete with direct
> attorney-client communications.   They are replete with the mental
> impressions of our attorneys, mental impressions of our client—all related to
> the litigation in Maryland.  Once we learned of this, we are actually having
> to take emergency action now in Maryland.  But apparently, outside the
> discovery process, the Defendant has contacted a former employee who had
> control over our servers and was in our employ from '04 and '05, and has
> obtained every document, proprietary information included, including codes,
> customer lists, the whole nine yards, and all of our communications with our
> client in Maryland.  We learned this just yesterday.  We're still looking
> through the documents and we have serious concerns about the information
> that is presently in the possession of Mr. Acord.

[Tape recording of hearing on July 9, 2008 at 4:54 p.m.]

16.     On July 10, 2008, YAP filed a Certificate of Compliance indicating that it "complied with

the Court's Order as pronounced at the July 9, 2008, pretrial conference and delivered a copy

of the 'privileged' documents to JOHN P. ACORD prior to 5:00 p.m. on July 10, 2008."

[Docket No. 230.]

17.     On July 10, 2008, YAP filed its Memorandum in Support of Emergency Motion to Seal and

Order John Acord to Destroy the Exhibits Attached to his Motion to Strike (YAP's Brief).

[Docket No. 231.] In YAP's Brief, YAP asserts that the Documents constitute attorney-client privileged and work product documents, including mental impressions of YAP's president (Mason) and its attorneys, Freeman & Freeman, P.C., and communications divulging YAP's litigation strategy in the Maryland federal court litigation. Further, YAP contends that Acord disregarded the privileges by filing the Documents with this Court. YAP argues that even if this Court concludes Pitts's status is that of an independent contractor, the attorney-client privilege and work product doctrines nevertheless apply. [Docket No. 231, p.7.]

18.    According to Mason, between 2004 and 2006, Pitts worked with YAP under the title "Webmaster, youngagainproducts.com." [Docket No. 231-1.] As a webmaster, Pitts was responsible for website maintenance, mailing lists, quality control of the website and server, key word advertising, article placement on the website, product description, pricing, complete fulfillment of orders, and username and password access for the website. [Docket No. 231.] Mason stated in his July 10, 2008 In Camera Affidavit, [Docket No. 231-1], that, through e-mail communication, he discussed with Pitts legal advice received from YAP's attorney and also forwarded to her internal memoranda and corporate counsel's status letters. Additionally, during the Utah and Maryland litigation,[8] according to Mason, Pitts played a key support role by investigating trademark violations on the internet and gathering factual information to support YAP's trademark claims. [Docket No. 231-1, ¶ 6.]

---

[8] The litigation in Maryland is a pending action against the Debtor and others as of the petition date in the United States District Court for the District of Maryland, styled as *Young Again Products, Inc. v. John Acord a/k/a John Livingston et al.*, Civil No. RWT 03CV2441. The litigation in Utah is a pending action against the Debtor and others as of the petition date in the United States District Court for the District of Utah, styled as *Dodart et al. v. Young Again Products, Inc.*, Civil No. 2:03-CV-0035 PGC.

19.     On July 14, 2008, Acord and Ortega filed their Opposition to Plaintiff's Emergency Motion to Seal and Destroy Records Obtained from Vicki Pitts (the Opposition to the Motion to Seal). [Docket No. 232.]

20.     On July 14 and 15, 2008, this Court held a hearing.[9]  The First Motion to Seal was among the various motions addressed at this hearing.  Counsel made arguments, presented evidence, and adduced testimony from Mason and Acord.  YAP stated that it could have made timely objections to the Documents if Acord had requested the Documents through proper discovery.  [Docket No. 262, p. 44-45.]  During the July 14, 2008 hearing, Mason discussed his employment relationship with Pitts and described Pitts as an "employee." [Docket No. 262, p.58-59.]  Mason stated that "we [i.e. YAP] provided her [i.e. Pitts] with all the products. . . . [W]e provided her with all the information and direction.  She used her computer skills and education to run the business at my direction." [Docket No. 262, p.50.]  Further, according to Mason, Pitts was permitted to work from home to run the business. [Docket No. 262, p.50.]  Mason also testified that, "with certain latitude . . . she ran the business." [Docket No. 262, p.54.]  When Robert Singer (Singer), counsel for Marcella Ortega, asked whether Mason considered Pitts "an expert or someone with special knowledge as a webmaster," Mason testified, "Yes, she did have computer skills." [Docket No. 262, p.59.]  Singer also asked Mason the following: "You gave her [i.e. Pitts] the information concerning the raw data about your company and she did something with it under her own expertise, is that not correct?" Mason answered, "That's correct." [Docket No. 262, p.60.]  Mason also testified that he communicated with Pitts on a regular basis about the

---

[9] A transcript of the hearing held on July 14, 2008 is available at Docket Number 262.

Maryland litigation and other matters.  [Docket No. 262, p.52.]  In response to questions about how YAP compensated Pitts or withheld taxes, Mason testified, "You'd have to ask my wife [i.e. Ivey Mason]."  [Docket No. 262, p.57, l. 22; p.59, l. 5; p.64, ll. 11-17.]

21.   On July 25, 2008, this Court signed an Order Granting Motion in Limine filed by Young Again Products, Inc. (the Order Granting Motion in Limine). [Docket No. 238.]  The Order Granting Motion in Limine instructed the Defendants not to introduce any evidence concerning Mason's 23-year-old criminal conviction.  The Court reserved its ruling on the Motion in Limine insofar as it sought to suppress evidence of defamatory statements made by YAP or Mason against the Defendants (i.e. the unresolved portion of the Motion in Limine).

22.   The Court ceased taking any action on the unresolved portion of the Motion in Limine and the Motions to Seal while the Honorable Nancy F. Atlas, United States District Judge, considered the undersigned judge's Report and Recommendation to the United States District Court Recommending Withdrawal of the Reference of this Adversary Proceeding, signed on July 25, 2008. [Docket No. 237.]  On August 7, 2008, Judge Atlas issued an order withdrawing the reference.  [Docket No. 250.]  On August 18, 2008, Judge Atlas assigned all pretrial matters in this adversary proceeding to this Court.

23.   On August 1, 2008, Acord and Ortega filed their Joint Motion for Sanctions and Contempt Against Plaintiff and its Attorneys (Acord and Ortega's Joint Motion for Sanctions and Contempt). [Docket No. 248.]

24.   On August 21, 2008, YAP filed its Opposition to Acord and Ortega's Joint Motion for Sanctions and Contempt. [Docket No. 256.]

25.   On September 9, 2008, this Court held a status conference and announced that all pending motions would be set for a hearing on November 18, 2008.

26.   On November 18, 2008, this Court held a hearing on, among other matters, the unresolved portion of the Motion in Limine and the Motions to Seal.  During this hearing, the Court informed the parties that it would continue the hearing on the unresolved portion of the Motion in Limine and also consider allowing the parties to have an opportunity to present evidence and make further oral argument on the Motions to Seal.

27.   On November 18, 2008, this Court signed an Order Dismissing Without Prejudice the Motion to Strike. [Docket No. 268.]  Although the Court dismissed the Motion to Strike, the Documents attached thereto remain on the docket in the public domain.

28.   On November 26, 2008, Acord filed his "Amended Opposition to Young Again Products, Inc.'s Motion to Seal Exhibit 2 in Support of its Opposition to Defendants' Joint Motion for Sanctions and Contempt Against Plaintiff and its Attorneys and Plaintiff's Expedited Motion for Reconsideration and, in the Alternative, John Acord's Motion to Strike and Issue a Protective Order Preventing John Acord from Use or Disclosure of the Exhibits" (Acord's Amended Opposition).  [Docket No. 283.]  In Acord's Amended Opposition, Acord alleged that Pitts was not an employee of YAP, as Mason had testified at the July 2008 hearing, but rather that Pitts was a "sales agent" of YAP. [Docket No. 283, p.4.]

29.   On December 17, 2008, YAP filed its Motion to Strike, or in the Alternative YAP's Response, to Docket No. 283—Acord's Amended Opposition (YAP's Response to Acord's Amended Opposition). [Docket No. 289.]

30.     On December 19, 2008, Acord filed his "Reply to Young Again Products' Response to Defendant, John Acord's Opposition to Young Again Products' Motion to Seal . . . etc., and Response to Defendant Acord's Motion to Impose Sanctions and YAP's Request for Sanctions" (Acord's Reply).  [Docket No. 290.]

31.     On December 19, 2008, this Court held a hearing[10] on Acord's Motion to Impose Sanctions. [Docket No. 286.]  At this hearing, the Court admitted YAP's Exhibit Number 1—the subpoena to Pitts issued out of the United States Bankruptcy Court for the District of Arizona on January 14, 2008 (the Pitts Subpoena).  YAP failed to file notice of the Pitts Subpoena with the Clerk of this Court.[11]  The attorney for the Trustee, Randall A. Rios (Rios), testified that on January 17, 2008, his office received a copy of the Pitts Subpoena.  Rios testified that he did not recall whether he received any other documents along with the Pitts Subpoena. Acord testified that he did not receive a copy of the Pitts Subpoena in the mail.  Additionally, at this hearing, the Court granted Acord leave to take the deposition of Mason and other witnesses by February 28, 2009.

32.     On December 29, 2008, the Trustee and YAP filed their Consent Motion and Stipulation of Dismissal of Claims, [Docket No. 296], requesting this Court to dismiss, with prejudice, YAP's claims against the Debtor but not the other defendants.  On December 31, 2008, this Court signed the Stipulation of Dismissal of Claims dismissing with prejudice the claims

_____

[10] A transcript of this hearing is available at Docket Number 304.

[11] At this hearing, YAP's counsel stated that if Acord needed any documents, Acord should have called Freeman's law office and the documents would have been produced to Acord.  Given the extremely high degree of acrimony in this case, the Court finds that a simple phone call would not have been enough for Acord to obtain documents in Freeman's possession.

against the Debtor but not the other Defendants—Acord and Ortega.  [Docket No. 297.]

Therefore, the only remaining defendants in this adversary proceeding are Acord and Ortega.

33.    On February 20, 2009, in the main case, this Court issued an Order Confirming the Chapter 11 Trustee's First Amended Plan of Reorganization.  [Case No. 06-35903, Docket No. 241.]

34.    On February 26, 2009, Pitts gave deposition testimony.  The transcript of this deposition was admitted into evidence as "YAP & JA & Δs 1" (Joint Ex. 1).  In her deposition, Pitts explained her relationship with YAP.  Pitts stated that she received conflicting assessments about her employment classification: sometimes she was told she was an employee and other times she was told that this business was hers or going to be hers or her children's.  [Joint Ex. 1., p.41, ll. 4-10.]  Pitts also claimed that her net profit from the business was approximately 15 percent.  [Joint Ex. 1., p.44, ll. 1-10.]  Pitts stated that she ran the YAP website.  [Joint Ex. 1, p.94, l. 1.] Indeed, Freeman asked Pitts the following: "Is it fair to say you were running the website on behalf of Young Again Products?" Pitts responded, "I was running it on behalf of myself, as well as Young Again Products.  Like I say [sic], I did never [sic] say I entirely owned the website." [Joint Ex. 1, p.97-98, ll. 25, 1-4.]

35.    On February 26, 2009, Mason also gave deposition testimony.  The transcript of this deposition was admitted into evidence as "YAP & Δs 2" (Joint Ex. 2).  In his deposition, Mason states that Pitts was YAP's employee: "I call her an employee regardless of the legal definition of the term employee, because we paid her to do certain services for us, and she did those services."  [Joint Ex. 2, p.89, ll. 17-20.]

36.    In response to document requests attached to Acord and Ortega's deposition notices, Pitts and Mason produced copies of YAP's business documents, which YAP contends are

14

proprietary. At the deposition, counsel for YAP and counsel for Mason asked counsel for Acord, Joe A. Izen (Izen), to agree to maintain those documents as confidential for use only in this adversary proceeding. Izen did not agree. *See* [Docket No. 319, ¶ 6-7.]

37.   On March 17, 2009, YAP filed its Motion for Protective Order to Preclude Defendants from Using or Disclosing YAP's Proprietary Business Information and Communications Produced by Mr. Mason or Ms. Pitts to Further Defendants' Own Business Interests or to Gain an [sic] Competitive Business Advantage (the Motion for Protective Order). [Docket No. 307.] In the Motion for Protective Order, YAP requests that this Court issue a protective order designating the proprietary business information and communications produced by Mason and Pitts on February 26, 2009 (along with all copies thereof) as follows: (1) confidential, (2) for use only in this adversary proceeding, (3) for use only as permitted under the Federal Rules of Civil Procedure and Federal Rules of Evidence, (4) not for use or disclosure outside of this adversary proceeding (except as may be required by an order of court), and (5) not for use or disclosure by the Defendants to further their own business interests or to gain any competitive business advantage. [Docket No. 307, ¶ 11.]

38.   On April 1, 2009, this Court issued an order scheduling the continued hearing on the unresolved portion of the Motion in Limine and the Motions to Seal. [Docket No. 310.]

39.   On April 15, 2009, Acord and Ortega filed a pleading entitled Further Response to Plaintiff, Young Again Products', Motion to Seal and Destroy Documents and for Protective Order (Acord and Ortega's Response to the Motion for Protective Order). [Docket No. 319.]

40.   On April 15, 2009, this Court concluded the hearing on the unresolved portion of the Motion in Limine and also allowed the parties to present evidence and make further oral arguments

on the Motions to Seal and the Motion for Protective Order.  At the conclusion of this hearing, the Court took the matter under advisement.

### III. CREDIBILITY OF WITNESSES

At the hearing held on July 14, 2008, the Court heard testimony from Mason and Acord.  The Court finds Mason's testimony to be mostly credible.  The Court finds Acord to be evasive at times, which casts doubts on his credibility.

### IV. CONCLUSIONS OF LAW

**A.    Jurisdiction and Venue**

The United States Code sets forth that "district courts shall have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11." 28 U.S.C. § 1334(b).  Furthermore, "[e]ach district court may provide that any or all cases under title 11 and any or all proceedings arising under title 11 or arising in or related to a case under title 11 shall be referred to the bankruptcy judges for the district." 28 U.S.C. § 157(a).  The United States District Court for the Southern District of Texas maintains a "General Order of Reference" that provides, in pertinent part, that "[b]ankruptcy cases and proceedings arising under Title 11 of the United States Code are automatically referred to the bankruptcy judges of this district." *See* 2005 General Order of Reference.

On July 25, 2008, this Court signed the Report and Recommendation to the United States District Court Recommending the Withdrawal of the Reference of this Adversary Proceeding. [Finding of Fact No. 22.]  On August 7, 2008, the Honorable Nancy F. Atlas, United States District Judge for the Southern District of Texas, issued an Order withdrawing the reference.  [Finding of

Fact No. 22.]  On August 18, 2008, Judge Atlas assigned all pretrial matters in the adversary proceeding to this Court.  [Finding of Fact No. 22.]

Although the Debtor is no longer a party-defendant in this adversary proceeding [Finding of Fact No. 32], the Court has "related to" jurisdiction.  The suit at bar is similar to *In re Coral Petroleum, Inc.*, 62 B.R. 699 (Bankr. S.D. Tex. 1986).  In *Coral Petroleum*, the plaintiff brought suit against a Chapter 11 debtor and other parties not in bankruptcy.  Subsequently, the debtor settled with the plaintiff.  In evaluating whether jurisdiction existed for the bankruptcy court to hear the plaintiff's complaint, Bankruptcy Judge Wheless recognized that if jurisdiction existed at the time that the complaint was filed, it is not defeated by subsequent events.  *Id.* at 701.  As such, Judge Wheless found that he had jurisdiction over the suit despite the fact that the debtor had settled with the plaintiff, thereby removing the debtor as a party-defendant.

Accordingly, for all pretrial matters in this adversary proceeding, the Court has related to jurisdiction pursuant to 28 U.S.C. § 1334(b).  Venue is proper pursuant to 28 U.S.C. § 1409.

**B.      The Unresolved Portion of YAP's Motions in Limine**

The Court's July 25, 2008 Order Granting Motion in Limine instructed the Defendants not to introduce any evidence concerning Mason's 23-year-old criminal conviction, but the Court reserved its ruling on the Motion in Limine insofar as it sought to suppress evidence of defamatory statements made by YAP or Mason against the Defendants. [Finding of Fact No. 21.]  The Court now addresses this unresolved portion of the Motion in Limine.

Motions in limine allow a trial court to make a pretrial ruling on the admissibility and relevance of evidence.  *Wechsler v. Hunt Health Sys., Ltd.*, 381 F. Supp. 2d 135, 140 (S.D.N.Y. 2003) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984) ("Although the Federal Rules of

17

Evidence do not explicitly authorize *in limine* rulings, the practice has developed pursuant to the district court's inherent authority to manage the course of trials. *See generally* Fed. R. Evid. 103(c).")). Unless the evidence at issue is clearly inadmissible on all potential grounds, it should not be excluded in limine. *Rivera v. Salazar*, No. C-04-552, 2008 WL 2966006, at *1 (S.D. Tex. July 30, 2008) (citing *Hawthorne Partners v. AT&T Tech., Inc.*, 831 F. Supp. 1398, 1400 (N.D. Ill. 1993)); *United States v. Ozsusamlar*, 428 F. Supp. 2d 161, 164-65 (S.D.N.Y. 2006) ("The trial court should exclude evidence on a motion in limine only when the evidence is clearly inadmissible on all potential grounds."). A motion in limine that seeks to exclude broad categories of evidence is rarely granted. *Rivera*, 2008 WL 2966006, at *1 (citing *Sperberg v. Goodyear Tire & Rubber Co.*, 519 F.2d 708, 712 (6th Cir. 1975)).

In the unresolved portion of the Motion in Limine, YAP urges this Court to specifically "exclude any evidence, testimony, or argument by the Defendants regarding any alleged derogatory and/or defamatory statements by YAP and/or Roger Mason against Marcella Ortega ('Ortega'), John Acord ('Acord') or Supplement Spot ('the Debtor')." [Finding of Fact No. 10.] Federal Rule of Evidence (FRE) 402 states that only evidence relevant to the issue before the court will be admissible, and irrelevant evidence is inadmissible. Fed. R. Evid. 402. Evidence is relevant if it tends to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would otherwise be without the evidence. Fed. R. Evid. 401.

The Court concludes that the evidence, testimony, or argument sought to be excluded (i.e. the alleged derogatory or defamatory statements made by YAP or Mason against the Defendants) are irrelevant to the claims and defenses at issue in this adversary proceeding and do not assist the Court in reaching an ultimate determination of the legal issues in this suit. *See* Fed. R. Evid. 401.

Therefore, because the evidence is irrelevant, it is inadmissible in this adversary proceeding. *See* Fed. R. Evid. 402. Specifically, derogatory or defamatory statements by Mason or YAP, even if made, do not have any bearing on the claims of fraud and failure to disclose assets which YAP has asserted against the Defendants. Moreover, on June 23, 2008, this Court denied Acord's motion for leave to file a claim for defamation or tortuous interference with business relations. [Finding of Fact No. 7.] Indeed, for consistency, to the extent that any of the information sought to be excluded by the Motion in Limine concerns these claims, this Court is unwilling to allow such evidence.

Accordingly, this Court concludes that the unresolved portion of the Motion in Limine should be granted. Therefore, any evidence, testimony, or argument by the Defendants regarding any alleged derogatory or defamatory statements by YAP or Mason against the Defendants are hereby excluded from trial.[12]

## C.   The Motions to Seal

In the Motions to Seal, YAP requests that the Court seal and order Acord to destroy the Documents and any other exhibits Acord has received from Pitts. [Finding of Fact No. 14.] Specifically, YAP argues that the Documents are protected by the attorney-client privilege and the work product privilege. However, Acord and Ortega argue that this Court should deny the Motions to Seal. [Finding of Fact No. 19.] For the reasons set forth below, this Court concludes that the Motions to Seal should be denied.

---

[12] Because this Court concludes the Motion in Limine should be granted, the Documents which this Court refuses to seal must be redacted to exclude any mention of what this Court finds to be potentially derogatory or defamatory statements by YAP or Mason against the Defendants. This Court will require counsel for all parties to meet and redact the Documents. Where agreement cannot be reached on what specifically should be redacted, this Court will hold a hearing to resolve the specific disputes over what to redact.

### 1.    The Common Law Presumption of Public Access

"[T]he courts of this country recognize a general right to inspect and copy . . . judicial records and documents." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 597 (1978).  This right of public access serves to "promote trustworthiness of the judicial process, to curb judicial abuses, and to provide the public with a more complete understanding of the judicial system, including a better perception of fairness." *SEC v. Van Waeyenberghie*, 990 F.2d 845, 849 (5th Cir. 1993) (quoting *Littlejohn v. BIC Corp.*, 851 F.2d 673, 678 (3d Cir. 1988)).  Thus, "[u]nder the common law, there is a long-standing presumption of public access to judicial records." *Gitto v. Worcester Telegram & Gazette Corp. (In re Gitto Global Corp.)*, 422 F.3d 1, 6 (1st Cir. 2005).  Because most courts endorse a presumption of public access to discovery materials, the district court is required to make a determination of good cause before entering an order keeping the documents out of the public. *See Citizens First Nat'l Bank of Princeton v. Cincinnati*, 178 F.3d 943, 946 (7th Cir. 1999) (citing numerous federal cases from various circuits).

However, the common law presumption of public access to judicial records is not absolute. *Id.*; *see also Van Waeyenberghie*, 990 F.2d at 848 ("[T]he common law right of access to judicial records is not absolute."); *Fed. Sav. & Loan Ins. Corp. v. Blain*, 808 F.2d 395, 399 (5th Cir. 1987) ("[T]here are well-recognized situations in which the seal may and should be used.").  As the Supreme Court has recognized, "[e]very court has supervisory power over its own records and files, and access has been denied where court files might have become a vehicle for improper purposes." *Nixon*, 435 U.S. at 598.  Therefore, the Court must "balance the factors favoring secrecy against the common law presumption of access." *Bank of Am. Nat'l Trust v. Hotel Rittenhouse*, 800 F.2d 339, 345 (3d Cir. 1986).  Because this balancing exercise is fact intensive, "the decision as to access is

one best left to the sound discretion of the trial court, a discretion to be exercised in light of the relevant facts and circumstances of the particular case." *Nixon*, 435 U.S. at 599. The decision to seal court records and pleadings should not be taken lightly; as the First Circuit explained, "[o]nly the most compelling reasons can justify non-disclosure of judicial records." *Gitto*, 422 F.3d at 6.

### 2.      The Bankruptcy Code Presumption of Public Access: 11 U.S.C. § 107

The right of public access to judicial records "is of special importance in the bankruptcy arena, as unrestricted access to judicial records fosters confidence among creditors regarding the fairness of the bankruptcy system." *Id.* at 7 (quoting *In re Crawford*, 194 F.3d 954, 960 (9th Cir. 1999)). In the bankruptcy context, the presumption of public access is codified in 11 U.S.C. § 107(a). Section 107(a) provides that "a paper filed in a case under this title and the dockets of a bankruptcy court are public records and open to examination by an entity at reasonable times without charge." However, like the common law right of public access, § 107(a) is not absolute. Section 107(b) provides limited exceptions to the right of public access in bankruptcy cases. Section 107(b) provides that the bankruptcy court "shall," on request of a party in interest, or "may," on its own motion: "(1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title."[13]

---

[13] The exact language of § 107(b) is as follows:
> (b) On request of a party in interest, the bankruptcy court shall, and on the bankruptcy court's own motion, the bankruptcy court may —
>> (1) protect an entity with respect to a trade secret or confidential research, development, or commercial information; or
>> (2) protect a person with respect to scandalous or defamatory matter contained in a paper filed in a case under this title.

3.      **The First Motion to Seal should be denied.**

On July 9, 2008, YAP filed its First Motion to Seal. [Finding of Fact No. 14.] Though the Court recognizes that it filed this pleading promptly as an emergency motion, the Court concludes that the two paragraphs of this First Motion to Seal fail to adequately explain why the Documents are entitled to protection. Indeed, YAP must overcome the well-established presumption of public access to judicial records and filings. *See In re Gitto Global Corp.*, 422 F.3d at 6.

The First Motion to Seal—in its entirety—is as follows:

> John Acord, Defendant herein, filed a Motion to Strike with attached exhibits with this Court, which was docketed on July 9, 2008 [sic]. Within the Exhibits attached thereto are documents provided to John Acord by Vicki Pitts, a former employee of Young Again Products, Inc. In part, *those documents* contain attorney-client privileged and work product documents, mental impressions of the president of Young Again Products, Inc., and its attorneys, Freeman & Freeman and divulge Plaintiff's litigation strategy in the Maryland federal litigation. This Motion to Strike and its Exhibits were delivered to counsel for the Plaintiff by an employee of John Acord and/or Supplement Spot at or about 3:00 p.m. on July 8, 2008. Prior to that time and date, Plaintiff had no knowledge that John Acord had these documents in his possession.
>
> Plaintiff moves this Honorable Court to seal and order John Acord to destroy the documents which are the subject of this Motion, along with any and all other documents that he has received from Vickie [sic] Pitts. Plaintiff prays for general relief.

[Docket No. 228] (emphasis added). YAP failed to identify which of "those documents" are entitled to protection. It is not enough for the movant to make a sweeping statement that a voluminous collection of documents should be sealed. *United States v. El Paso Co.*, 682 F.2d 530, 539 (5th Cir. 1982) ("[W]e have made clear that the attorney-client privilege may not be tossed as a blanket over an undifferentiated group of documents.") (citing *United States v. Davis*, 636 F.2d 1028, 1044 n.20 (5th Cir. 1981)). The party seeking to seal the documents must identify which specific documents must be sealed, and the attorney-client privilege "must be specifically asserted with respect to

22

particular documents." *El Paso Co.*, 682 F.2d at 539. Here, YAP failed to specifically identify which documents are entitled to protection in the First Motion to Seal.

Additionally, YAP does not even mention § 107(b) in the First Motion to Seal. However, even if it had asserted that the Documents are entitled to protection under § 107(b), YAP would have needed to establish that the Documents contained a "trade secret" or "confidential research, development, or commercial information" or "scandalous or defamatory matter." Because YAP has failed to establish that the Documents contain any such material, and because YAP did not argue § 107(b), the Court is not required to protect YAP under this section of the Code. Nevertheless, pursuant to § 107(b), the Court *may* on its own motion protect YAP.

In the First Motion to Seal, YAP describes the Documents as "contain[ing] attorney-client privileged and work product documents [and] mental impressions" of YAP's attorneys. *In re 50-Off Stores, Inc.*, an opinion by the Honorable Leif M. Clark, Bankruptcy Judge for the Western District of Texas, holds that "[c]ertainly, a lawyer's work product is one type of 'confidential research' that falls within the plain language of the statute's [i.e. § 107(b)'s] protection. And certainly a client's disclosures made in confidence to its attorneys is one kind of 'confidential . . . commercial information.'"[14] 213 B.R. 646, 655-56 (Bankr. W.D. Tex. 1997). In *50-Off Stores*, the debtor affirmatively sought the protection of the bankruptcy court under § 107(b), and, therefore, the bankruptcy court was required to protect the debtor under § 107(b). *Id.*; *see* § 107(b) ("On request of a party in interest, the bankruptcy court *shall* . . . protect an entity." *Emphasis added.*). Here,

---

[14] The bankruptcy court in *50-Off Stores* mentioned in a footnote that it was "unable to find any cases specifically applying section 107(b)(1) to attorney-client privilege or attorney work product." *In re 50-Off Stores, Inc.*, 213 B.R. at 655 n.14. Because this Court ultimately does not apply § 107(b) to the present discovery dispute, this Court need not address whether § 107(b) applies to attorney-client privileged documents or work product.

unlike the debtor in *50-Off Stores*, YAP has not sought protection under § 107(b), and the Court concludes that it should not exercise its discretion under § 107(b) to *sua sponte* seal the Documents. Accordingly, the First Motion to Seal should be denied.

### 4.    The Second Motion to Seal should be denied.

On August 21, 2008, YAP filed the Second Motion to Seal. [Finding of Fact No. 14.]  In paragraph 4 of this Motion, YAP makes the following broad assertion: "Based upon the nature of information contained in Exhibit 2, Plaintiff has a substantial basis for believing that Exhibit 2 is properly subject to an order precluding inspection, and that disclosure to the public or any other non-party will result in immediate, substantial, and irreparable harm to Plaintiff." As with the First Motion to Seal, the Second Motion to Seal is devoid of citations to legal authorities and contains no details about which particular documents are privileged. *See El Paso Co.*, 682 F.2d at 539 ("[W]e have made clear that the attorney-client privilege may not be tossed as a blanket over an undifferentiated group of documents."). For example, in paragraphs 1 and 2 of this Motion, YAP asserts that the Documents contain "communications protected under the attorney-client privilege and work product doctrine" and that the Documents "include the mental impressions of the president of Young Again Products, Inc. and its attorneys, Freeman & Freeman, P.C. and communications divulging Plaintiff's litigation strategy in the Maryland federal litigation." Mere conclusory statements simply will not suffice to overcome the presumption of public access.

Further, in the Second Motion to Seal, YAP once again failed to argue that the Documents are entitled to protection under § 107(b). Thus, for the reasons set forth above, the Court concludes that it should not exercise its discretion under § 107(b) to *sua sponte* seal the Documents. The Second Motion to Seal should be denied.

In sum, because YAP has failed to meet its burden to overcome the presumption of public access codified in § 107(a), the Court concludes that the two Motions to Seal should be denied.

**D.    Pitts was an independent contractor, not YAP's employee.**

There is a separate and independent reason why this Court should not seal the Documents: the Documents were turned over by a former contractor of YAP (i.e. Pitts) and, therefore, are not entitled to any privilege protections. Acord and Ortega argue—and this Court agrees—that because Pitts was a contractor, and not YAP's employee, the documents she turned over to Acord are not subject to any privilege protections.

**1.    Texas and Federal Law on Employment Classifications**

Under Texas law, whether a person is an employee or independent contractor is a question of fact. *Campbell v. Keystone Aerial Surveys, Inc.*, 138 F.3d 996, 1006 (5th Cir. 1998) (citing *Halliburton v. Texas Indem. Ins. Co.*, 213 S.W.2d 677 (Tex. 1948)).  In *Halliburton*, the Texas Supreme Court provided the applicable test:

> If one contracts to do a specific piece of work for another and furnishes, and has the absolute control of, his assistants, and the work is done in accord with his own ideas, or with a previously agreed plan, without being subject to the other's orders with respect to the details of the work, he is an independent contractor. However, if he and his assistants are subject to the control of the other party with respect to the details and method of doing the work then he is an employee. The supreme test in determining whether one is an employee or an independent contractor, according to our decisions and most of the modern cases, is the test with respect to the right of control.

*Halliburton*, 213 S.W.2d at 680 (citing numerous Texas cases).

Moreover, the Fifth Circuit has defined "the traditional Texas common law distinction between employees and independent contractors" as follows:

> Under Texas common law, "[t]he test to determine whether a worker is an employee or an independent contractor is whether the employer has the right to control the progress, details, and methods of operations of the employee's work." *Thompson v. Travelers Indem. Co. of R.I.*, 789 S.W.2d 277, 278 (Tex. 1990). For an individual to be considered an employee, "[t]he employer must control not merely the end sought to be accomplished, but also the means and details of its accomplishment as well." *Id*. In contrast, an independent contractor is an individual who, "[i]n the pursuit of an independent business, undertakes to do a specific piece of work for other persons, using his own means and methods, without submitting himself to their control and all its details." *William Sommerville & Son, Inc. v. Carter*, 571 S.W.2d 953, 956 (Tex. Civ. App.—Tyler 1978), *aff'd on other grounds*, 584 S.W.2d 274 (Tex. 1979).

*Consumers County Mut. Ins. Co. v. P.W. & Sons Trucking, Inc.*, 307 F.3d 362, 364 n.3 (5th Cir. 2002).   Therefore, if YAP "control[led] not merely the end sought to be accomplished, but also the means and details of its accomplishment as well," then Pitts would be YAP's employee. *Thompson*, 789 S.W.2d at 278.  However, if Pitts used her own means and methods, without submitting herself to YAP's control, then Pitts would not be YAP's employee.

Although it seems that "'control of the detailed physical performance may be the most critical factor in identifying an employee, it is not necessarily the only factor.'" *Linkous v. United States*, 142 F.3d 271, 275 (5th Cir. 1998) (quoting *Broussard v. United States*, 989 F.2d 171, 175 (5th Cir. 1993)). The Fifth Circuit has held that the factors which are deemed relevant to determining whether an individual is an employee or an independent contractor are listed in Section 220 of the Restatement (Second) of Agency:

> (a) the extent of control which, by the agreement, the master may exercise over the details of the work;
> (b) whether or not the one employed is engaged in a distinct occupation or business;
> (c) the kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision;
> (d) the skill required in the particular occupation;

(e) whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work;

(f) the length of time for which the person is employed;

(g) the method of payment, whether by the time or by the job;

(h) whether or not the work is a part of the regular business of the employer;

(i) whether or not the parties believe they are creating the relation of master and servant; and

(j) whether the principal is or is not in business.

Restatement (Second) of Agency § 220(2); *Linkous*, 142 F.3d at 275; *Rodriguez v. Sarabyn*, 129 F.3d 760, 766 (5th Cir. 1997); *see Emtel, Inc. v. Lipidlabs, Inc.*, 583 F. Supp. 2d 811, 829-30 (S.D. Tex. 2008) (citing the ten factors); *see also Salameh v. Provident Life & Acc. Ins. Co.*, 23 F. Supp. 2d 704, 712 (S.D. Tex. 1998) ("[I]n addition to control, the court must consider the other factors listed in the Restatement to differentiate between an employee and an independent contractor.") (citing *Linkous*, 142 F.3d at 276).

### 2.    Based on the arguments and evidence, Pitts was never an employee of YAP.

After considering the evidence, deposition testimony, and pleadings, this Court concludes that Pitts was never YAP's employee, but rather, she was an independent contractor. The Court applies the ten factors from the Restatement (Second) of Agency in making this determination. After considering this non-exclusive list of factors, the Court concludes that Pitts was an independent contractor rather than YAP's employee.

### a.    Factor #1:  The extent of control which, by the agreement, the master may exercise over the details of the work

As noted earlier, the control factor is often thought of as the most critical factor for determining whether someone is an employee or an independent contractor. *Linkous*, 142 F.3d at 275. The more control an employer exerts over a person employed, the more likely that person is an employee. Therefore, if YAP "control[led] not merely the end sought to be accomplished, but

also the means and details of its accomplishment as well," then Pitts would be YAP's employee. *Thompson*, 789 S.W.2d at 278. However, if Pitts used her own means and methods, without submitting herself to YAP's control, then Pitts would not be YAP's employee.

In Pitts' deposition, Pitts testified that she ran the YAP website, [Finding of Fact No. 34], and when asked by Freeman: "Is it fair to say you were running the website on behalf of Young Again Products?" Pitts responded: "I was running it on behalf of myself, as well as Young Again Products. Like I say [sic], I did never [sic] say I entirely owned the website." [Finding of Fact No. 34.] Under the arrangement Pitts had with YAP, YAP gave Pitts inventory to sell through the website, and Pitts was free to use her own means and methods to sell this inventory. [Finding of Fact No. 20.] Although YAP exercised some control over Pitts, Pitts was given wide latitude to run the business without YAP controlling the day-to-day operations of the website and sale of the nutritional products. [Finding of Fact No. 20.]

Because Pitts had considerable freedom to run the website and conduct business without significant oversight, the Court concludes that this factor weighs in favor of classifying Pitts as an independent contractor.

      **b.**      **Factor #2:  Whether or not the one employed is engaged in a distinct occupation or business**

Pitts worked in the nutritional supplement business prior to developing a business relationship with YAP from 2004 to 2006. For example, prior to working with YAP, Pitts ran a website-based business called "The Natural Woman," another nutritional supplement business which sold inventory supplied by YAP through Mason. [Finding of Fact No. 4.] As such, the Court

28

concludes Pitts is engaged in a distinct business and is therefore more likely an independent contractor than an employee.

      c.    **Factor #3:  The kind of occupation, with reference to whether, in the locality, the work is usually done under the direction of the employer or by a specialist without supervision**

YAP's web-based business for selling nutritional products to customers can be performed by a specialist with computer skills, like Pitts, and does not require much supervision.  Although Mason testified that Pitts worked under his direction at all times, Pitts worked from home selling the products and running the website on her own without his supervision.  [Finding of Fact No. 20.] Accordingly, the Court concludes that this factor indicates that Pitts was more likely an independent contractor than an employee.

      d.    **Factor #4:  The skill required in the particular occupation**

Pitts was responsible for YAP's website maintenance, mailing lists and quality control of the website and server, key word advertising, article placement on the website, product description, pricing and complete fulfillment of orders, and username and password access for the website. [Finding of Fact No. 18.] To perform such tasks, Pitts needed to have computer skills and, to a certain extent, be technologically savvy.  Indeed, Mason testified that Pitts had the expertise and skills necessary to operate the website. [Finding of Fact No. 20.]  Therefore, because a particular set of skills was necessary to perform Pitts's responsibilities, this factor weighs in favor of Pitts's independent contractor status.

e.     **Factor #5:   Whether the employer or the workman supplies the instrumentalities, tools, and the place of work for the person doing the work**

YAP supplied the inventory (i.e. the nutritional products) to Pitts and the information about the products, and Pitts ran the web-based operations at a location of her own choosing. [Finding of Fact No. 20.] Pitts used her own computer and home-based office to run the web-based operations. [Finding of Fact No. 20.] However, without YAP providing the instrumentalities—i.e. the actual inventory and the product information—Pitts could not have consummated the website transactions. Thus, this factor weighs both for, and against, a finding that Pitts was an independent contractor because, although Pitts provided her own office and computer, YAP provided the actual inventory sold.

f.     **Factor #6:  The length of time for which the person is employed**

Pitts had a business relationship with YAP from 2004 to 2006.  [Finding of Fact No. 4.] Short time periods of work performed indicate a status as an independent contractor.  *See Herman v. Express Sixty-Minute Delivery Serv., Inc.*, 161 F.3d 299, 305 (5th Cir. 1998) (finding drivers who worked for short periods of time to be independent contractors).  Long periods of employment with an employer indicate an employee status.  *Robicheaux v. Radcliff Material, Inc.*, 697 F.2d 662, 666 (5th Cir. 1983) (Welders working for ten months to three years was "a substantial period of time" and was sufficient to indicate employee status.).

Pitts's approximately two- to three-year working relationship with YAP is lengthy enough to support a conclusion that Pitts was an employee rather than an independent contractor.  *See Linkous*, 142 F.3d at 277 (concluding that a doctor who worked for the government for "a period of several years" weighed in favor of employee status); *see also Robicheaux*, 697 F.2d at 666 (Ten

months to three years was sufficient to indicate employee status.).  Therefore, the Court concludes that this factor weighs in favor of concluding that Pitts was an employee of YAP.

> g.    **Factor #7:  The method of payment, whether by the time or by the job**

Acord argues that Pitts is not YAP's employee because W-4's or W-2's for Pitts were not produced.  Indeed, Pitts was not paid with W-4's or W-2's.  Among the Documents is an e-mail dated "2/9/2006" from YAP's president, Mason,[15] to Pitts stating that Pitts, as "yap internet's contractor," was compensated as reported on a "1099 form" for income tax purposes. [Finding of Fact No. 5.]  Moreover, in another e-mail dated "1/7/2005" Ivey Mason (the wife of YAP's president) sent Pitts an e-mail stating:

> I will need to send you a 1099 misc. tax form for the money you received from YAP Internet in 2004.  I will verify the amount with you when I'm done.  You act as an "independent contractor" and YAP Internet pays you the monthly payments for your services.  You know you need to pay taxes from these earnings.

[Finding of Fact No. 5.] Accordingly, because (1) Pitts was compensated as reported on a 1099 form rather than through an annual salary, and (2) both Mason, YAP's president, and Mason's wife referred to Pitts as an independent contractor, this factor weighs heavily in favor of concluding that Pitts was an independent contractor.  *See Linkous*, 142 F.3d at 277 (concluding that a doctor who was paid on a fee-for-service rather than an annual salary was an independent contractor).

---

[15] The Court concludes that Mason is a sophisticated person who should know whether someone is an employee of his or an independent contractor.  Although Mason testified that his wife, not he, knows how taxes were taken out of Pitts's compensation—whether by W-2 or 1099 forms [Finding of Fact No. 20], the Court finds it highly unlikely that he knew nothing about his company's taxes.  However, even if only Ivey Mason knew how Pitts's taxes were reported, the Court finds that sufficient to conclude that YAP knew Pitts's was an independent contractor.

**h.     Factor #8:  Whether or not the work is a part of the regular business of the employer**

Indeed, the work performed by Pitts—i.e. selling nutritional supplements—is the regular business of YAP.  [Finding of Fact No. 4.]  Because Pitts performs the "regular business" of YAP, Pitts is more likely an employee rather than an independent contractor.  *See Linkous*, 142 F.3d at 277 (concluding that because a doctor performed the regular services of the hospital, that weighed in favor of employee status).

**i.     Factor #9:  Whether or not the parties believe they are creating the relation of master and servant**

In Mason's deposition and at the July 14, 2008 hearing, Mason identified Pitts as an employee of YAP.  [Finding of Fact Nos. 20 & 34.]  In Acord's Amended Opposition, Acord alleged that, contrary to Mason's deposition testimony, Pitts was not YAP's employee, but rather, she was YAP's sales agent (i.e. a contractor).  [Finding of Fact No. 28.]  While doing business with YAP, Pitts herself believed that the website business was hers or was going to be hers or her children's. [Finding of Fact No. 34.]  Therefore, Pitts did not share Mason's belief that they created a master and servant relationship.   Accordingly, the Court concludes that this factor weighs in favor of concluding that Pitts is not YAP's employee.

**j.     Factor #10:  Whether the principal is or is not in business**

As was stated above, *supra* Part IV.D.2.h, (i.e. factor #8: whether or not the work is a part of the regular business of the employer), YAP is in business of selling nutritional supplements over the internet, including the same or similar products Pitts sold while she worked for YAP.  Therefore, this factor supports the conclusion that Pitts was an employee.

In summary, of the ten factors examined above, six weigh in favor of independent contractor status (i.e. factors #1, 2, 3, 4, 7, and 9), three weigh in favor of employee status (i.e. factors #6, 8, and 10), and one weighs neither for, nor against, a finding either way (i.e. factor #5). After considering these ten factors listed in Section 220 of the Restatement (Second) of Agency, and placing particularly heavy emphasis on factors #1 (i.e. control) and #7 (i.e. the method of payment), the Court concludes that Pitts was an independent contractor rather than YAP's employee. The Court reaches this conclusion because (a) YAP exercised little to no control over the detailed performance of Pitts; (b) YAP paid Pitts as an independent contractor and sent her 1099 tax forms; and (c) the balance of the remaining factors weighs in favor of independent contractor status. Additionally, the Court places particularly heavy emphasis on the fact that Mason (YAP's president) and Ivey Mason (Mason's wife) both referred to Pitts as either an "independent contractor" or YAP's "internet contractor." [Finding of Fact No. 5.]

Because Pitts is an independent contractor, the Court concludes that the documents she turned over to Acord are not entitled to any privilege protections and should not be sealed.

## E.     The Court's Independent Review of the Documents

Based on the Court's own review of the Documents in chambers, the Court concludes that the Motions to Seal should be denied because the Documents are not entitled to privilege or work product protections. Because the Court has already determined that the Motions to Seal should be denied for the reasons stated in *supra* Parts IV.C & D, this Court's independent review of the Documents provides additional support for the conclusions reached above.[16]

---

[16] The Court has spent numerous hours reviewing each and every one of the approximately 1,900 documents which YAP produced *in camera*. Another court captured this Court's exact sentiments: "Because this Court no longer charges for its services it had no occasion to maintain time records covering its research and preparation, but those efforts

1.      **YAP makes no arguments that persuade this Court that the Documents should be sealed due to the attorney-client privilege or the work product privilege.**

YAP argues that the Documents should be sealed and protected under the attorney-client privilege. The attorney-client privilege is one of the oldest common law privileges and it serves "to encourage full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." *Upjohn Co. v. United States*, 449 U.S. 383, 389 (1981).[17]

The elements of the attorney-client privilege are as follows: "(1) where legal advice of any kind is sought; (2) from a professional legal advisor in his capacity as such; (3) the communications relating to that purpose; (4) made in confidence; (5) by the client; (6) are at his instance permanently protected; (7) from disclosure by himself or by the legal advisor; (8) except that the protection be waived." *El Paso Co.*, 682 F.2d at 539. Whether the attorney-client privilege applies is determined on a case-by-case basis. *Upjohn*, 449 U.S. at 396-97.

In the Revised Privilege Log, YAP failed to list certain documents which YAP now seeks to have sealed based on the attorney-client privilege. Additionally, as YAP's counsel admitted on the record, some of these omitted documents were not produced to this Court for *in camera* review. [Finding of Fact No. 9.] Federal Rule of Civil Procedure 26(b)(5) requires parties to submit a privilege log in order to claim that the attorney-client privilege or the work product doctrine apply. This privilege log must contain information sufficient to allow a court or a party to determine the

---

certainly entailed the expenditure of a substantial number of hours." *Scarlato v. Village of Bellwood, Ill.*, No. 08-C-546, 2008 WL 4866433, at *1 (N.D. Ill. 2008).

[17] In *Upjohn*, the United States Supreme Court extended the attorney-client privilege to cases involving communication between a corporation's employees acting at the direction of its officers and the corporation's attorney. *Upjohn*, 449 U.S. at 394-95.

applicability of the privilege. Fed. R. Civ. P. 26(b)(5). Furthermore, "[a] party asserting a privilege exemption from discovery bears the burden of demonstrating its applicability." *In re Santa Fe Intern. Corp.*, 272 F.3d 705, 710 (5th Cir. 2001).

> a.   **The e-mails between Pitts and Mason should not be sealed under the attorney-client privilege.**

The elements outlined by the Fifth Circuit for the attorney-client privilege require that "the client" seek "legal advice" from "a professional legal advisor in his capacity as such." *See El Paso Co.*, 682 F.2d at 539.   Here, some of the e-mails contained in the Documents are e-mails between Pitts and Mason, neither of whom are attorneys.   Therefore, by definition alone, the attorney-client privilege would not apply to protect the communications between Pitts and Mason.

YAP argues that the e-mails between Pitts and Mason contain information that Mason received from his attorneys, and that therefore, the privilege applies to protect the e-mails between Mason and Pitts.   YAP cites *Upjohn* to support this proposition.   In *Upjohn*, the United States Supreme Court held that "[m]iddle-level—and indeed lower-level—employees can, by actions within the scope of their employment, embroil the corporation in serious legal difficulties, and it is only natural that these employees would have the relevant information needed by corporate counsel if he is adequately to advise the client with respect to such actual or potential difficulties." *Upjohn*, 449 U.S. at 391-92. Here, Pitts is not the type of person protected under *Upjohn*.   As this Court has already determined, Pitts is an independent contractor, not an employee. *See supra* Part IV.D.   As such, *Upjohn*'s holding that privileges may apply to middle-level and lower-level employees is inapplicable because Pitts is not an employee at all.

Additionally, the "'disclosure of any significant portion of a confidential communication waives the [attorney-client] privilege as to the whole.'" *Nguyen v. Excel Corp.*, 197 F.3d 200, 208 (5th Cir. 1999) (quoting *Indus. Clearinghouse, Inc. v. Browning Mfg. Div.*, 953 F.2d 1004, 1007 (5th Cir. 1992)). The Fifth Circuit has held that "[t]he confidentiality of a client's communications may be compromised either through the publication of evidence of the communications themselves or through the publication of evidence of attorney statements or documents that disclose the client's confidential communications." *Indus. Clearinghouse, Inc.*, 953 F.2d at 1007. In the e-mails between Mason and Pitts, Mason made no effort to protect the attorney-client privilege. Accordingly, the Court concludes that, even if some or all of the Documents were privileged, Mason has waived the privilege as to the communications between Pitts and himself.

> **b.     The e-mails between Pitts and Freeman should not be sealed under the attorney-client privilege.**

Although Freeman (one of YAP's attorneys) and Pitts communicated via e-mails, some of which are reproduced in the Documents, his status as YAP's attorney alone does not necessitate the sealing of those documents containing their communications. Based upon this Court's review of the Documents, several reasons justify not sealing the Documents. First, Pitts did not seek legal advice from Freeman, as she was an independent contractor of YAP and not Freeman's client. Second, Freeman did not provide legal advice to Pitts. Third, his communications with Pitts—an independent contractor—are not entitled to protection under the attorney-client privilege. *See El Paso Co.*, 682 F.2d at 539 (listing the requisite elements of the attorney-client privilege). YAP has failed to identify which documents in the voluminous set provided to this Court are e-mails between

Pitts and Freeman deserving protection under the attorney-client privilege.[18]  YAP should have

identified the purportedly privileged e-mails by date and briefly described why each are privileged.

When a request to seal a large number of documents is made, the movant has the burden to prove

with specificity which documents are entitled to protection and why.  *See El Paso Co.*, 682 F.2d at

539; *see Cipollone v. Liggett Group, Inc.*, 785 F.2d 1108, 1122 (3d Cir. 1986) (Even when there is

an umbrella protective order, "the burden of justifying the confidentiality of each and every

document sought to be covered by a protective order remains on the party seeking the protective

order.").

       For example, YAP should have identified to this Court if certain of the Documents contained

legal advice or communications between Freeman and Pitts or were prepared in anticipation of

litigation because those documents would fall under the privilege protection.  *See Fair Isaac Corp.*

*v. Texas Mut. Ins. Co.*, 2006 WL 3484283, at *4 (S.D. Tex. Nov. 30, 2006) (holding that a set

documents was protected by the attorney-client privilege and work product protections because the

documents were created in anticipation of litigation); *see also LaSalle Bank N.A. v. Mobile Hotel*

*Props., LLC*, 2004 WL 902169, at *7 (E.D. La. Apr. 23, 2004) (holding that a litigation committee's

document that revealed opinions, thought processes and recommendations of counsel prepared in

anticipation of litigation is "protected by both the work product and attorney-client privileges").

However, YAP failed to meet its burden to identify which e-mails contain communications protected

by a privilege.  Based upon this Court's independent review of the Documents, the e-mails between

Pitts and Freeman do not contain privileged communications.  Alternatively, even if the e-mails

contained privileged communications, Pitts is not an employee, and therefore YAP, through the

---

[18] The Court notes that YAP failed to Bates-stamp the Documents for ease of reference.

actions of its attorney, Freeman, waives any privilege that may exist by communicating with Pitts, an independent contractor. Therefore, the Court concludes that the Documents should not be sealed under the attorney-client privilege.

### 2.    The work product privilege does not necessitate the sealing of the Documents.

"[T]he work product doctrine insulates a lawyer's research, analysis of legal theories, mental impressions, notes, and memoranda of witnesses' statements from an opposing counsel's inquiries." *Dunn v. State Farm Fire & Cas. Co.*, 927 F.2d 869, 875 (5th Cir. 1991) (citing *Upjohn*, 449 U.S. at 400). "The work product privilege applies to documents 'prepared in anticipation of litigation.'" *In re Kaiser Aluminum & Chem. Co.*, 214 F.3d 586, 593 (5th Cir. 2000) (quoting Fed. R. Civ. P. 26(b)(3)). According to the Fifth Circuit, the work product privilege applies even when litigation is not imminent, "'as long as the primary motivating purpose behind the creation of the document was to aid in possible future litigation.'" *Id.* (quoting *El Paso Co.*, 682 F.2d at 542).

Here, the Documents that YAP seeks to seal do not appear to be work product of an attorney or legal assistant. There may be an argument for a protection if the conversations between Pitts and Mason were in "anticipation of litigation." *See In re Kaiser Aluminum & Chem. Co.*, 214 F.3d at 593. However, YAP failed to identify which e-mails were prepared in anticipation of litigation. "The burden of establishing that a document is work product is on the party who asserts the claim, but the burden of showing that the materials that constitute work product should nonetheless be disclosed is on the party who seeks their production." *Hodges, Grant & Kaufman v. U.S. Gov't, Dept. of Treasury, I.R.S.*, 768 F.2d 719, 721 (5th Cir. 1985). Thus, YAP has the initial burden of proving that the Documents are work product, and, if YAP satisfies this burden, Acord and Ortega have the burden of proving that the work product should nonetheless be disclosed. YAP failed to

prove to this Court which documents were work product.  However, even if YAP had met its burden, the Court would still conclude that Mason's communications with Pitts waived any available protections.  This Court's review of the documents has revealed that even though some of the e-mails between Pitts and Mason appear to be drafted and sent in anticipation of litigation, Mason has waived any protections to these communications through his e-mail communications with Pitts, an independent contractor.  *See supra* Part IV.E.1.a (discussing waiver of privilege).

### 3.     The privilege has been waived because the Documents were the subject of YAP's subpoena in another federal court.

Acord argues that because the Documents were obtained from Pitts through issuance of a subpoena in another case before another federal court, then YAP, through its counsel, waived any right to attorney-client privilege or work product immunity because Pitts produced the Documents to both YAP and Acord.[19]  The Court agrees.  Production of records, documents, or evidence, in compliance with a subpoena waives any claim to attorney-client privilege or work product immunity. *Westinghouse Elec. Corp. v. Republic of the Philippines*, 951 F.2d 1414, 1427 & n.14 (3d Cir. 1991) ("[U]nder traditional waiver doctrine a voluntary disclosure to a third party waives the attorney-client privilege even if the third party agrees not to disclose the communications to anyone else.").  By subpoenaing its own records, the Court concludes that YAP, through its counsel, voluntarily waived any claim to work product immunity or attorney-client privilege.

---

[19] The subpoena was issued out of the Bankruptcy Court for the District of Arizona.  A review of the docket sheet in this adversary proceeding reveals that YAP failed to file notice of the issuance of the Pitts Subpoena as required by Federal Rule of Civil Procedure 45 (Rule 45) which is applicable to this proceeding under Bankruptcy Rule 9016. Fed. R. Civ. P. 45(b)(1) ("If the subpoena commands the production of documents, electronically stored information, or tangible things . . . , then before it is served, a notice must be served on each party.").  Rios, counsel for the Trustee, received a copy of the Pitts Subpoena at his office on January 17, 2008. [Finding of Fact No. 31.]

As an aside, YAP asserts that it did not raise privilege objections as soon as Acord received the Documents (and prior to Acord attaching the Documents to the Motion to Strike on July 7, 2008) because the Documents were not obtained through the normal discovery channels. [Finding of Fact No. 20.] YAP alleges that Pitts, as a disgruntled former employee of YAP, turned over the Documents to Acord unbeknownst to YAP. YAP argues that, if the Documents had been produced to Acord through proper discovery, then privilege objections could have been made before Acord attached the Documents to his Motion to Strike. The Court notes that the timeliness of YAP's privilege objections are of no import to the question of whether the privilege has been waived with respect to the Documents.

The Court agrees with the Third Circuit's decision in *Westinghouse* that disclosure through a subpoena waives privilege protections. *Westinghouse*, 951 F.2d at 1427 & n.14. Therefore, YAP's January 2008 subpoena waived any privilege protections on the Documents. *See, e.g.*, *United States v. Rockwell*, 897 F.2d 1255, 1265 (3d Cir. 1990) ("The attorney-client privilege does not apply to communications that are intended to be disclosed to third parties or that in fact are so disclosed."); *see also S.E.C. v. Brady*, 238 F.R.D. 429, 444 (N.D. Tex. 2006) ("Waiver of work product protection only results if the work product is disclosed to an adversary or treated in a manner that substantially increases the likelihood that an adversary will come into possession of that material.")[20] (citing *Ferko v. Nat'l Ass'n for Stock Car Auto Racing, Inc.*, 218 F.R.D. 125, 136 (E.D. Tex. 2006)). Accordingly, the Court concludes that the subpoena eliminates any privilege that may have existed and provides this Court with yet another reason to conclude that the Documents should not be sealed.

---

[20] The Court recognizes that the use of the word "only" in *Brady* is limiting, but nevertheless the Court finds YAP has waived the privilege protections.

4.    **YAP's concerns over what the jury may think of the Documents at trial are unfounded.**

Any concerns YAP may have regarding whether the jury will see these documents and be improperly influenced is unfounded.  YAP has the option of protecting itself at trial in the District Court by objecting to the introduction of any of these documents into evidence.  The only issue presently before this Court is whether to seal these documents for purposes of pretrial discovery.

For all the reasons set forth above, this Court concludes that the Motions to Seal should be denied.

**F.    The Motion for Protective Order**

On March 17, 2009, YAP filed the Motion for Protective Order to preclude Defendants from using or disclosing YAP's proprietary business information and communications produced by Mason or Pitts to further Defendants' own business interests or to gain any competitive business advantage. [Finding of Fact No. 37.]  "Ample precedent exists for limiting disclosure of highly sensitive, confidential or proprietary information to outside attorneys and experts, particularly when there is some risk that a party might use the information or disseminate it to others who might employ it to gain a competitive advantage over the producing party." *Asch/Grossbardt, Inc. v. Asher Jewelry Co.*, No. 02 Civ. 5914 (SAS), 2003 WL 660833, at *2 (S.D.N.Y. Feb. 28, 2003) (citing *Westside-Marrero Jeep Eagle, Inc. v. Chrysler Corp.*, No. Civ. A. 97-3012, 1998 WL 186728, at *2 (E.D. La. Apr. 17, 1998)).

Because this Court has denied the Motions to Seal, this Court realizes that the Defendants may attempt to use the Documents in any manner they see fit.  In YAP's Motion for Protective

41

Order, it did not mention § 107 in support of its arguments. However, this Court concludes that § 107 provides the applicable law for protective orders.

Federal Rule of Bankruptcy Procedure 9018 sets forth the procedure governing § 107, which authorizes this Court to issue an order to protect any entity[21] in the manner YAP set forth in the Motion for Protective Order. Specifically, Rule 9018 provides:

> On motion or on its own initiative, with or without notice, the court may make any order which justice requires (1) to protect the estate or any entity in respect of a trade secret or other confidential research, development, or commercial information, (2) to protect any entity against scandalous or defamatory matter contained in any paper filed in a case under the Code, or (3) to protect governmental matters that are made confidential by statute or regulation. If an order is entered under this rule without notice, any entity affected thereby may move to vacate or modify the order, and after a hearing on notice the court shall determine the motion.

Fed. R. Bankr. P. 9018.

"There is no true privilege against discovery of trade secrets or other 'confidential' business information, but the courts nevertheless will exercise their discretion to avoid unnecessary disclosure of such information, particularly where the action is between competitors." *United States v. United Fruit Co.*, 410 F.2d 553, 557 (5th Cir. 1969).

To prevent the unnecessary disclosure of the Documents, this Court will grant the Motion for Protective Order to prevent the Defendants from using the Documents outside this adversary proceeding and to prevent the Defendants from using the Documents to further their own business interests or to gain any competitive business advantage.

---

[21] Although § 107(b)(2) requires a bankruptcy court to only protect a "person" with respect to scandalous or defamatory filings, Rule 9018(2) authorizes the Court to protect "any entity." According to the definition set forth in § 101(15), "[t]he term 'entity' includes person, estate, trust, governmental unit, and United States trustee." 11 U.S.C. § 101(15).

## V. CONCLUSION

For all the reasons set forth herein, the Court hereby concludes that the unresolved portion of the Motion in Limine regarding suppression of evidence of defamatory or derogatory statements made by YAP or Mason against the Defendants should be granted. The Court further concludes that the Motions to Seal should be denied. Finally, the Court concludes that the Motion for Protective Order should be granted.

An order consistent with this Opinion will be entered on the docket simultaneously with the entry on the docket of this Opinion.

Signed on this 8th day of July, 2009.

_____

Jeff Bohm
United States Bankruptcy Judge